IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In the Matter of the Arbitration of Certain Controversies between<br><br>**GETMA INTERNATIONAL**,<br><br>Petitioner,<br><br>and<br><br>**THE REPUBLIC OF GUINEA**,<br><br>Respondent. | Civil Action No. 1:14-cv-01616-RBW |

## RESPONDENT THE REPUBLIC OF GUINEA'S MOTION TO STAY THIS PROCEEDING

Respondent The Republic of Guinea, through its undersigned counsel, hereby moves this Court pursuant to Article VI of the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 21 U.S.T. 2517, T.I.A. S. No. 6997, implemented by 9 U.S.C. § 201, *et seq*., for entry of an Order staying this action pending conclusion of annulment proceedings at the seat of arbitration.  In support hereof, Respondent submits the accompanying Memorandum of Points and Authorities and the Declarations of Laurent Jaeger and Jeffrey M. Prokop dated March 2, 2015.

WHEREFORE, Respondent respectfully requests that the Court stay this action pending conclusion of proceedings at the seat of arbitration challenging the validity of the arbitral award that is the subject of this action.

In accordance with Local Rule 7(m), Respondent states that Petitioner does not consent to the relief requested herein.

Date: March 2, 2015

Respectfully submitted,

/s/ Jeffrey M. Prokop
Jeffrey M. Prokop (D.C. Bar. No. 992687)
Brooke Daley (D.C. Bar. No. 1013387)
ORRICK HERRINGTON & SUTCLIFFE LLP
1152 15th St. N.W.
Washington, D.C. 20005
Telephone: (202) 339-8400
Fax: (202) 339-8500
jprokop@orrick.com
bdaley@orrick.com

Jamie L. Shookman (admitted *pro hac vice*)
51 West 52nd Street
New York, NY 10019-6142
Telephone: (212) 506-5141
Fax: (212) 506-5151
jshookman@orrick.com

*Attorneys for Respondent*
*The Republic of Guinea*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

In the Matter of the Arbitration of Certain
Controversies between

**GETMA INTERNATIONAL**,

Petitioner,

and

**THE REPUBLIC OF GUINEA**,

Respondent.

Civil Action No. 1:14-cv-01616-RBW

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
THE REPUBLIC OF GUINEA'S MOTION TO STAY THIS PROCEEDING**

Jeffrey M. Prokop (D.C. Bar. No. 992687)
Brooke Daley (D.C. Bar. No. 1013387)
ORRICK HERRINGTON & SUTCLIFFE LLP
1152 15th St. N.W.
Washington, D.C. 20005
Telephone: (202) 339-8400
Fax: (202) 339-8500

Jamie L. Shookman (admitted *pro hac vice*)
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019-6142
Telephone: (212) 506-5141
Fax: (212) 506-5151

*Attorneys for Respondent
The Republic of Guinea*

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ........................................................................................1

II.    STATEMENT OF FACTS ..........................................................................2

    A.    The Annulment Proceedings Before the CCJA ................................2

III.   ARGUMENT ..............................................................................................3

    A.    The Applicable Law ........................................................................3

    B.    The CCJA is a "Competent Authority" for Purposes of Article VI of the Convention ................................................................................5

    C.    The Facts Here Present a Compelling Case For a Stay Under the Europcar Factors and Relevant Case Law ........................................6

        1.    *Europcar* Factor No. 1: The general objectives of arbitration—the expeditious resolution of disputes and the avoidance of protracted and expensive litigation ..............................6

        2.    *Europcar* Factor No. 2: The status of the foreign proceedings and the estimated time for those proceedings to be resolved ............................8

        3.    *Europcar* Factor No. 3: Whether the award sought to be enforced will receive greater scrutiny in the foreign proceedings under a less deferential standard of review ..............................9

        4.    *Europcar* Factor No. 4: The characteristics of the foreign proceedings ........................................................................10

        5.    *Europcar* Factor No. 5: Balance of the possible hardships ....................13

        6.    *Europcar* Factor No. 6: Other Considerations .........................................14

IV.   CONCLUSION .........................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Alto Mar Girassol V. Lumbermens Mut. Cas. Co.*,
　No. 04 C 7731, 2005 U.S. Dist. LEXIS 7479 (N.D. Ill. Apr. 12, 2005) ................................... 8

*Caribbean Trading and Fidelity Corp. v. Nigerian Nat'l Petroleum Corp.*,
　No. 90 Civ. 4169, 1990 U.S. Dist. LEXIS 17198 (S.D.N.Y. Dec. 18, 1990) ........................ 12

*Continental Transfert Technique Ltd. v. Fed. Gov't of Nigeria*,
　697 F. Supp. 2d 46 (D.D.C. 2010) ............................................................................................. 5

*\*CPConstruction Pioneers Baugesellschaft Anstalt v. Gov't of the Republic of Ghana*,
　578 F. Supp. 2d 50 (D.D.C. 2008) ................................................................................. 7, 11, 12

*DRC, Inc. v. Republic of Honduras*,
　774 F. Supp. 2d 66 (D.D.C. 2011) ....................................................................................... 5, 12

*DRC, Inc. v. Republic of Honduras*,
　999 F. Supp. 2d 1, No. 10-0003, 2012 U.S. Dist. LEXIS 189641 (D.D.C. June 11, 2012) .... 12

*\*Europcar Italia, S.P.A. v. Maiellano Tours*,
　156 F.3d 310 (2d. Cir. 1998) ..................................................................................... 4, 10, 13

*Fertilizer Corp. of India v. IDI Mgmt., Inc.*,
　517 F. Supp. 948 (S.D. Ohio 1981) ....................................................................................... 13

*Higgins v. SPX Corp.*,
　No. 1:05-CV-846, 2006 U.S. Dist. LEXIS 20771 (W.D. Mich. April 18, 2006) ................... 12

*Interdigital Communs. Corp. v. Samsung Elecs. Co.*,
　528 F. Supp. 2d 340 (S.D.N.Y. 2007) .................................................................................... 10

*\*Jorf Lasfar Energy Co., S.C.A. v. AMCI Export Corp.*,
　No. 05-0423, 2005 U.S. Dist. LEXIS 34969 (W.D. Pa. Dec. 22, 2005) .............. 7, 8, 9, 14, 15

*Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*,
　364 F.3d 274 (5th Cir. 2004), *cert. denied*, 543 U.S. 917 (2004) ............................................. 4

*Nedagro B.V. v. Konversbank*,
　No. 02 Civ. 3946, 2003 U.S. Dist. LEXIS 787 (S.D.N.Y. Jan. 21, 2003) .............................. 12

*Spier v. Calzaturificio Tecnica, S.p.A.,*
663 F. Supp. 871 (S.D.N.Y. 1987) ............................................................5, 12, 13

*In re Telcordia Techs., Inc. v. Telkom SA, Ltd.,*
95 Fed. Appx. 361 (D.C. Cir. 2004) ......................................................................3

*Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15, 22 (2d. Cir
1997) .......................................................................................................4, 6, 7

**Treaties, Statutes and Rules**

*Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 21
U.S.T. 2517, T.I.A. S. No. 6997, 9 U.S.C. § 201 (1958) .........................................1

Article V .............................................................................................1, 2, 5, 14

Article V(1)(e) ........................................................................................3, 4, 5

Article VI ..........................................................................................1, 2, 3, 5, 7

*Arbitration Rules of the Common Court of Justice and Arbitration .................2, 3, 4, 5, 6, 8, 14

Article 29 ...................................................................................................2

Article 30 ...................................................................................................6

Article 30.2 .............................................................................................3, 14

Article 30.6 .............................................................................................2, 9

Article 31 ...........................................................................................5, 6, 11

Treaty on the Harmonisation of Business Law in Africa ....................................5, 6, 11

Article 25 ...................................................................................................5

**Other Authorities**

Albert Jan van den Berg, The New York Convention of 1958: An Overview.............................5

G. Kenfack Douajni, "La notion d'ordre public international dans l'arbitrage
OHADA," Rev. Cam. Arb., No. 29 April-June 2005, p. 3, Ohadata D-08-58 ......................10

BENOIT LE BARS, International Arbitration and Corporate Law, AN OHADA
PRACTICE (2014)...........................................................................................9

The Republic of Guinea ("Guinea"), through its undersigned counsel, hereby submits this Memorandum of Points and Authorities in support of its motion, pursuant to Article VI of the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 21 U.S.T. 2517, T.I.A. S. No. 6997, implemented by 9 U.S.C. § 201, *et seq*. (the "Convention" or "Conv."), to stay this case pending the conclusion of proceedings at the arbitral seat to annul the arbitral award that Getma seeks to confirm in this Court (the "Award").[1]

## I.    **INTRODUCTION**

As set out in Guinea's Opposition, there are numerous grounds upon which the Court should deny the Petition in accordance with Article V of the Convention.  Alternatively, pursuant to Article VI of the Convention, the Court may stay this case pending the conclusion of proceedings before the CCJA in which Guinea seeks to annul the Award pursuant to the CCJA Rules.  Indeed, the applicable law makes clear that such a stay would be particularly appropriate under the circumstances here.

The parties agreed that the Concession Agreement and any disputes in connection therewith would be governed by OHADA law and that any such disputes would be subject to arbitration under the CCJA Rules.  The Award was rendered in Ivory Coast, an OHADA member state, and Guinea's Annulment Petition raises serious and substantial issues of corruption concerning a public contract in Guinea, another OHADA member state, as well as serious breaches of the CCJA Rules by the Tribunal.  The Award cannot be enforced in any OHADA member state pending the outcome of the proceedings before the CCJA, which are almost complete.  Under these circumstances, and particularly where the parties and the dispute

---

[1] Unless otherwise noted, all capitalized terms herein have the meaning ascribed to them in Guinea's Memorandum of Points and Authorities in Opposition to Getma's Petition to Confirm the Award (the "Opposition"), which is submitted concurrently herewith.

have no connection to the United States, the Court should exercise its discretion under Article VI of the Convention to stay this action and permit the CCJA to complete its work.  Were the Court to proceed and confirm the Award prior to the CCJA's ruling, although such a ruling would not be warranted under Article V of the Convention, it would not only undermine Guinea's right to seek annulment of the Award at the arbitral seat, but would also create the potential for inconsistent judgments and protracted litigation should the CCJA ultimately annul the Award, as Guinea expects it will.

## II.    STATEMENT OF FACTS

A full recitation of the facts concerning the parties' dispute and the Award is set out in the Statement of Facts in the Opposition, to which Guinea respectfully refers the Court and which is incorporated by reference as if fully set forth herein.  Below, Guinea sets forth additional facts pertinent to its motion to stay.

### A.    The Annulment Proceedings Before the CCJA

On July 23, 2014, in accordance with Article 29 of the CCJA Rules, Guinea filed the Annulment Petition with the CCJA.[2]  *See* Exhibit 52 annexed to the Declaration of Laurent Jaeger dated March 2, 2015 ("Jaeger Decl.").[3]  In the Annulment Petition, Guinea requests that the CCJA invalidate the Award on the grounds that (i) it is contrary to international public policy because it gives effect to a contract procured by corruption.  *See* Jaeger Decl. ¶ 40, Ex. 52 at ¶¶ 49-105; (ii) the Tribunal breached Guinea's due process rights by refusing to examine evidence of corruption in the procurement of the Concession Agreement and denying Guinea's request for

---

[2] Article 30.6 of the CCJA Rules specifies that the CCJA may invalidate an arbitral award if (i) the tribunal ruled without a valid arbitration agreement; (ii) the tribunal failed to fulfill its assigned duties; (iii) the principle of adversarial procedure was not respected; or (iv) the award is contrary to international public policy.  Jaeger Decl. ¶ 3, Ex. 3 at Art. 30.6.

[3] Hereinafter, "Jaeger Ex." shall refer to exhibits annexed to the Jaeger Declaration.

further proceedings on the issue of corruption (*id.* at ¶¶ 106-163); and (iii) the arbitrators breached their duties by failing to comply with the CCJA Rules, which mandate that the CCJA fixes the arbitrators' fees and preclude arbitrators from seeking payment of fees directly from the parties (*id* at ¶¶ 164-214).

Getma filed its response to the Annulment Petition on December 23, 2014.  Jaeger Decl. ¶ 41.  On January 26, 2015 the CCJA granted Guinea's request to file a reply to Getma's December 23, 2014 submission.  *Id.*  Guinea filed its reply submission on February 10, 2015.  *Id.* Guinea expects that Getma will be permitted to file a reply by the beginning of April 2015, which will complete the parties' written submissions concerning the Annulment Petition.  *Id.* Thereafter, the parties may request a hearing before the CCJA.  Guinea anticipates that such a hearing, if granted by the CCJA, would take place a few months after Getma's reply submission. *Id.*  Guinea anticipates the CCJA to issue a ruling by the end of 2015 or early 2016.  *Id.* at ¶ 42. Once the CCJA issues its ruling, Guinea has no right of appeal or further recourse before the CCJA with respect to the Award.  While the Annulment Petition is pending before the CCJA, the Award is not enforceable in any of the OHADA member states.  *Id.* at ¶ 3, Ex. 2 at Art. 30.2 (stating that an order of exequatur renders an award enforceable in the member states).

## III.   ARGUMENT

### A.   The Applicable Law

Article VI of the Convention provides that, "[i]f an application for the setting aside or suspension of the award has been made to a competent authority referred to in article V(1)(e), the authority before which the award is sought to be relied upon may, if it considers it proper, adjourn the decision on the enforcement of the award…".  Conv. Art. VI.[4]  Article V(1)(e) of the

---

[4] The D.C. Circuit has construed "adjourn" to mean to stay or dismiss without prejudice.  *In re Telcordia Techs., Inc. v. Telkom SA, Ltd.*, 95 Fed. Appx. 361, 363 (D.C. Cir. 2004).

Convention provides that enforcement of an arbitral award may be refused where the award "has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made."[5]   Conv. Art. V(1)(e).

The leading case concerning the exercise of a court's discretion to stay proceedings pursuant to Article VI of the Convention is the Second Circuit's ruling in *Europcar Italia, S.P.A. v. Maiellano Tours*, 156 F.3d 310 (2d. Cir. 1998).  In *Europcar*, the Second Circuit stated that "where a parallel proceeding is ongoing in the originating country and there is a possibility that the award will be set aside, a district court may be acting improvidently by enforcing the award prior to the completion of the foreign proceedings." *Id.* at 317.  Accordingly, the Court set out the following non-exhaustive list of factors that courts should consider in balancing the interest in enforcement of arbitral awards with concerns of international comity:

(1)     the general objectives of arbitration--the expeditious resolution of disputes and the avoidance of protracted and expensive litigation;

(2)     the status of the foreign proceedings and the estimated time for those proceedings to be resolved;

(3)     whether the award sought to be enforced will receive greater scrutiny in the foreign proceedings under a less deferential standard of review;

(4)     the characteristics of the foreign proceedings including (i) whether they were brought to enforce an award (which would tend to weigh in favor of a stay) or to set the award aside (which would tend to weigh in favor of enforcement); (ii) whether they were initiated before the underlying enforcement proceeding so as to raise concerns of international comity; (iii) whether they were initiated by the party now seeking to enforce the award in federal court; and (iv) whether they were initiated under

---

[5] Under the Convention, the courts at the site of the arbitration (here, the CCJA in Ivory Coast) have "primary jurisdiction" over the award and only those courts may annul (as opposed to merely refuse to enforce) the award. *See Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 287 (5th Cir. 2004), *cert. denied*, 543 U.S. 917 (2004); *see also Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15, 22 (2d. Cir 1997) ("under the Convention, the power and authority of the local courts of the rendering state remain of paramount importance.").

circumstances indicating an intent to hinder or delay resolution of the
dispute;

(5)     a balance of the possible hardships to each of the parties, keeping in mind
        that…under Article V of the Convention, an award should not be enforced
        if it is set aside or suspended in the originating country; and

(6)     any other circumstances that could tend to shift the balance in favor of or
        against adjournment.

*Id.* at 317-318.  Courts in this Circuit have adopted the *Europcar* factors.  *See, e.g.*, *DRC, Inc. v.
Republic of Honduras*, 774 F. Supp. 2d 66, 74 (D.D.C. 2011); *Continental Transfert Technique
Ltd. v. Fed. Gov't of Nigeria*, 697 F. Supp. 2d 46, 60 (D.D.C. 2010).

As set out below, federal courts across the country routinely defer to the courts at the seat
of arbitration under similar circumstances and typically will only refuse to grant a stay when the
set-aside proceedings in the rendering jurisdiction are "transparently frivolous."  *Spier v.
Calzaturificio Tecnica, S.p.A.*, 663 F. Supp. 871, 875 (S.D.N.Y. 1987).  Here, the Annulment
Petition asserts compelling grounds for the CCJA to annul the Award and the *Europcar* factors
tip decidedly in favor of a stay.

**B.      The CCJA is a "Competent Authority" for Purposes of Article VI of the
         Convention**

As set out above, Article VI of the Convention is implicated when an application for
setting aside the award has been made to a "competent authority of the country in which, or
under the law of which, that award was made."  Conv. Art. V(1)(e); *see id.*, Art. VI.  The term
"competent authority" normally refers to "a court having jurisdiction to entertain an action for
setting aside in the country of origin."  Albert Jan van den Berg, The New York Convention of
1958: An Overview, p. 17.

There is no dispute that the CCJA is such a "competent authority."  Under Article 25 of
the OHADA Treaty, which the parties expressly agreed in Article 31 of the Concession

Agreement would apply, the CCJA has exclusive jurisdiction over any proceeding seeking an order of exequatur (the equivalent of an application to confirm under the FAA) concerning an arbitral award rendered under the Treaty or, as is the case here, a proceeding seeking an order denying exequatur and annulling an award.  Jaeger Decl. n.1, Ex. 1 at Art. 25 ("Only the Common Court of Justice and Arbitration has jurisdiction to pronounce an order of Exequatur."); *see id.* at ¶ 3, Ex. 3 at Arts. 29-30 (setting forth the rules governing recognition and enforcement of an award rendered under the OHADA Treaty and CCJA Rules).  Accordingly, there can be no dispute that the CCJA is a "competent authority" for purposes of Article VI of the Convention. Indeed, in the pending proceedings before the CCJA, Getma has never claimed that the CCJA does not have jurisdiction, and, indeed, has asked that the CCJA enforce the Award in accordance with Article 30 of the CCJA Rules.  Jaeger Decl. ¶ 41.

### C.    The Facts Here Present a Compelling Case For a Stay Under the *Europcar* Factors and Relevant Case Law

#### 1.    *Europcar* Factor No. 1: The general objectives of arbitration—the expeditious resolution of disputes and the avoidance of protracted and expensive litigation

Issuing a stay under the circumstances here is entirely consistent with the objectives of arbitration.

*First,* it is important to note that annulment proceedings before the CCJA pursuant to the OHADA Treaty and the CCJA Rules are an integral part of the dispute resolution process that the parties contractually agreed would govern their disputes.  *See* Concession Agreement at Art. 31; Jaeger Decl. ¶ 1, Ex. 1 at Art. 25; *id.* at ¶ 3, Ex. 3 at Arts. 29-30.  Moreover, "the power and authority of the local courts of the rendering state" are of "paramount importance" in the enforcement scheme envisaged by the Convention, as made clear in Article V(1)(e) thereof.  *See Yusuf Ahmed Alghanim & Sons*, 126 F.3d at 22.

U.S. courts have recognized the special significance of annulment proceedings at the arbitral seat by routinely ordering adjournments pursuant to Article VI of the Convention.  The Court's decision in *CPConstruction Pioneers Baugesellschaft Anstalt v. Government of the Republic of Ghana*, 578 F. Supp. 2d 50 (D.D.C. 2008), which has similar facts to those here, is particularly instructive in this regard.  The petitioner, a Liechtenstein company, contracted with the government of Ghana to construct a road in Ghana.  *Id.* at 51.  Shortly after the contract was executed, a new Ghanaian government took power and launched an investigation into alleged fraud surrounding the previous government's dealings with the petitioner and suspended payments under the contract.  *Id*. at 52.  The petitioner commenced arbitration proceedings in Ghana under the Rules of the International Court of Arbitration of the International Chamber of Commerce, and prevailed.  *Id*. at 53.  Ghana filed an appeal to set aside the award in the Ghanaian courts and while that appeal was pending, the petitioner sought to confirm the award in this district.  *Id.*  The Court adjourned the case pursuant to Article VI of the Convention.  In response to the petitioner's assertion that adjournment was "fundamentally at odds with the expedited nature of arbitration confirmation proceedings," the Court explained that, to the contrary, "adjournments pending the completion of set-aside proceedings are an integral part of such proceedings."  *Id*. at 54.

*Second,* issuing a stay avoids the potential for protracted and expensive litigation if the Court were to confirm the Award and the CCJA subsequently annuls it.  For example, in *Jorf Lasfar Energy Company, S.C.A. v. AMCI Export Corporation*, No. 05-0423, 2005 U.S. Dist. LEXIS 34969 (W.D. Pa. Dec. 22, 2005), the petitioner commenced proceedings in United States District Court to enforce an award rendered in Paris, France on the same day that the respondent

filed an appeal of the arbitral award in the appropriate French court.  *Id*. at *3-4.  The Court

ordered a stay pending the conclusion of the proceedings in France, stating:

> The delay that will be caused immediately is likely shorter than the possible delay
> that would occur if this court were to confirm the award and the French court then
> set it aside. More expensive litigation involving more complex issues would result
> from such a situation…
>
> The claims defendant raised in the French action mirror the defenses asserted
> before this court.  As a result, there is also a very real risk of inconsistent
> judgments.

*Id*. at *8; *accord Alto Mar Girassol v. Lumbermens Mut. Cas. Co.*, No. 04 C 7731, 2005 U.S.

Dist. LEXIS 7479, *12 (N.D. Ill. Apr. 12, 2005) ("Waiting for the French court to rule will also

likely aid in the avoidance of more expensive additional litigation that could arise.").

Accordingly, this factor weighs heavily in favor of a stay pending resolution of the

proceedings before the CCJA.

## 2. *Europcar* Factor No. 2*: The status of the foreign proceedings and the estimated time for those proceedings to be resolved*

The annulment proceedings before the CCJA are almost complete, which weighs heavily

in favor of a stay.  *See* Jaeger Decl. ¶ 41.  Guinea expects that, by early April 2015, Getma will

have filed its reply brief with the CCJA, which will be the last written submission in the

proceeding.  Although there is not a deadline for the CCJA to rule on the Annulment Petition, the

CCJA typically takes approximately one and a half years from the date the annulment petition is

filed to render a decision.  *Id.* at ¶ 42.   Here, the Annulment Petition was filed on July 23, 2014.

*Id.* at ¶ 40.  Accordingly, Guinea anticipates that the CCJA will likely rule on the Annulment

Petition before the end of 2015 or early 2016.  *Id.* at ¶ 42.  Given that written submissions in this

proceeding will not be complete until April 13, 2015, any stay would likely cause little, if any,

delay in the resolution of Getma's Petition.  *See, e.g., Jorf Lasfar Energy Co., S.C.A.*, 2005 U.S.

Dist. LEXIS 34969, at *8-9 (ordering stay where "a decision is expected from the French court before the end of next year.").

3.  ***Europcar* Factor No. 3: Whether the award sought to be enforced will receive greater scrutiny in the foreign proceedings under a less deferential standard of review**

Article 30.6 of the CCJA Rules provides the grounds upon which the CCJA may invalidate an arbitral award. *See, supra*, n.2; Jaeger Decl. ¶ 3, Ex. 3 at Art. 30.6. Although such grounds are similar to those set out in Article V of the Convention, there is reason to believe that the CCJA will closely scrutinize the Award, given the serious allegations of corruption and lack of due process at issue here, as well the CCJA's repeated criticism of the Tribunal's conduct during the proceeding.

Indeed, as set out in Guinea's Annulment Petition, a series of decisions by the French courts have held that a court ruling on a petition to invalidate an arbitral award based on a violation of international public policy, including awards involving allegations of public corruption, must conduct a substantive review of the evidence. *See* Jaeger Decl. ¶ 40, Ex. 52 at ¶¶ 62-71.[6] Moreover, as one prominent commentator has described, the CCJA plays a prominent role in combatting the scourge of corruption in the OHADA member states:

> [T]he Common Court of Justice and Arbitration should not recognize an award that upholds a contract whose purpose is to encourage religious or racial discrimination, human trafficking, corruption, etc.
>
> With respect to corruption in particular, the Common Court of Justice and Arbitration should be vigilant in fighting this scourge on a continent whose countries are regularly cited as among the most corrupt in the world.
>
> Comparative law is filled with examples of instructive reasoning, like that cited above of a decision of the Paris Court of Appeals, according to which, "a

---

[6] Because OHADA law "is based on French law," French cases are often cited as persuasive authority in OHADA proceedings. BENOIT LE BARS, International Arbitration and Corporate Law, AN OHADA PRACTICE 2 (2014). Indeed, both parties have cited to French authorities in their submissions to the CCJA.

> *contract having its cause and its object the exercise of influence peddling through the payment of bribes is contrary to French international public policy....'*
>
> *On the basis of similar reasoning inspired by the theory of transnational (or truly international) public policy set forth above, the Common Court of Justice and Arbitration would have the right to refuse to recognize an award upholding an agreement obtained by corruption, thus contributing to defeating against corruption in the OHADA zone.*

G. Kenfack Douajni, "La notion d'ordre public international dans l'arbitrage OHADA,"[7] Rev. Cam. Arb., No. 29 April-June 2005, p. 3; *see* Paul-Gérard Pougoué, Jean-Maris Tchakoua, and Alain Fénéon, "Droit de l'arbitrage dans l'espace OHADA," Presses universitaires d'Afrique, Gaoundé, 2000, p. 281 (stating that when reviewing annulment petitions based on alleged violations of international public law, the CCJA may conduct an in-depth examination of the merits of the dispute).[8]

Accordingly, this factor weighs in favor of a stay or, at most, is neutral.[9]

### 4.   *Europcar* Factor No. 4: The characteristics of the foreign proceedings

This factor weighs in favor of a stay because (i) Getma's Petition raise serious concerns of international comity and (ii) the Annulment Petition does not evince any intent to hinder resolution of the dispute.

Guinea, the party opposing enforcement of the Award here, commenced annulment proceedings at the arbitral seat.  While that fact would ordinarily tip in favor of enforcement under this *Europcar* factor*, Europcar* also teaches that the sequence of the competing

---

[7] An English translation of this article is annexed as Exhibit 3 to the Declaration of Jeffrey M. Prokop, dated March 2, 2015 (the "Prokop Declaration").

[8] An English translation of the relevant excerpts of this book is annexed as Exhibit 1 to the Prokop Declaration.

[9] Indeed, as one court has held, the possibility that a reviewing court at the arbitral seat will set aside the award tilts this factor in favor of adjournment.  *See Interdigital Communs. Corp. v. Samsung Elecs. Co.*, 528 F. Supp. 2d 340, 361 (S.D.N.Y. 2007) ("due to the possibility that the foreign proceeding at issue here will effectively set aside the dictates of the Award, this factor mildly favors adjourning enforcement of the Award pending resolution of the Samsung III Arbitration.").

proceedings is crucial in analyzing this factor.  *See Europcar*, 156 F.3d at 317-18.  Here, Getma

did not file the Petition until two months *after* Guinea commenced annulment proceedings in the

CCJA on July 23, 2014 (and did not serve the Petition for another two months thereafter), raising

serious concerns of international comity.  *See* Jaeger Decl. ¶ 40; Petition to Confirm Arbitration

Award and to Enter Judgment, ECF No. 1, September 23, 2014; Return of Service, ECF No. 15.

Those concerns militate heavily in favor of a stay.

Concerns of international comity are particularly significant here because the CCJA has a

much closer relationship to the Award than this Court—indeed, the parties' dispute has no

connection to the United States whatsoever—as well as a more significant interest in the

corruption and arbitrator misconduct issues at the heart of the Annulment Petition.  The

underlying events, including the negotiation of the Concession Agreement, occurred in Guinea,

an OHADA member state, and that agreement is governed by the OHADA Treaty and the

OHADA Uniform Acts.  Concession Agreement at Art. 31; Award, ¶ 5.  The seat of arbitration is

in an OHADA member state (Ivory Coast), the arbitration was conducted under the CCJA Rules,

and the Annulment Petition raises serious issues concerning corruption in an OHADA member

state and the conduct of the Tribunal under the CCJA Rules.  Under these circumstances, the

CCJA should be permitted, in the first instance, to resolve issues of OHADA law concerning

conduct that took place entirely within the OHADA zone.  Courts in this Circuit and elsewhere

routinely order stays where, as here, annulment proceedings are pending before a foreign court

that has a closer connection to the underlying arbitration.

For example, as noted above, in the *CPConstruction Pioneers Baugesellschaft Anstalt*

case, a Liechtenstein company sought to confirm an ICC arbitration award against the Ghanaian

government.  The award at issue there was rendered by an arbitral tribunal in Ghana and was the

subject of ongoing proceedings in the Ghanaian courts. *CPConstruction Pioneers Baugesellschaft Anstalt,* 578 F. Supp. at 52-53. Judge Oberdorfer ordered a stay pending conclusion of the proceedings in Ghana because, otherwise, the court "would have to decide an intricate point of Ghana law that is more properly decided by a Ghana court." *Id.* at 54. Similarly, in *DRC, Incorporated v. Republic of Honduras*, Judge Friedman ordered a stay due to concerns over international comity because "the Award was rendered in the Republic of Honduras by Honduran arbitrators under Honduran law" and the Court thought it would be "acting improvidently by enforcing the award prior to the completion of the foreign proceedings." 774 F. Supp at 74, 76.[10]

Courts outside the D.C. Circuit have also ordered stays in circumstances very similar to those here. *See, e.g.*, *Higgins v. SPX Corp.*, No. 1:05-CV-846, 2006 U.S. Dist. LEXIS 20771, at *10-11 (W.D. Mich. April 18, 2006) (granting stay where arbitration took place in Brazil, a pending proceeding to set aside the award in Brazil depended upon the interpretation of Brazilian law, and the Brazilian court had a much more direct and significant relationship with the case); *Nedagro B.V. v. Konversbank*, No. 02 Civ. 3946, 2003 U.S. Dist. LEXIS 787, at *22-23 (S.D.N.Y. Jan. 21, 2003) (ordering stay of proceedings to confirm an arbitration award pending ongoing court proceedings in Moscow concerning a contract between Russian and Dutch parties governed by Russian law); *Caribbean Trading and Fidelity Corp. v. Nigerian Nat'l Petroleum Corp.*, No. 90 Civ. 4169, 1990 U.S. Dist. LEXIS 17198, at *20-21 (S.D.N.Y. Dec. 18, 1990) (granting stay pending resolution of proceedings to vacate an arbitral award in Nigeria where "[t]he contract is governed by the law of Nigeria, and the Nigerian courts are better equipped

---

[10] Judge Friedman later vacated the stay after learning that neither party had actually commenced proceedings in Honduras to set aside the arbitral award (*see DRC, Incorporated v. Republic of Honduras*, 999 F. Supp. 2d 1, 5 (D.D.C. June 11, 2012), but his reasoning in issuing the stay is directly applicable here.

than this Court to determine the proper application of that law."); *Spier*, 663 F. Supp. at 875 (granting stay pending proceedings in Italy because "it is better to permit the validity of this Italian arbitral award to be first tested under Italian law by Italian courts" which "is preferable to an American court seeking to apply the law of the foreign country where the award was made, and entering an order enforcing an award later condemned by the courts of that foreign country."); *Fertilizer Corp. of India v. IDI Mgmt., Inc.*, 517 F. Supp. 948, 962 (S.D. Ohio 1981) (ordering a stay pending a challenge to an arbitral award in India involving a contract governed by Indian law "in order to avoid the possibility of an inconsistent result.").

Moreover, although Getma disputes the basis of Guinea's claim before the CCJA that the Award should be invalidated, there is no evidence that Guinea initiated the annulment proceedings with an intent to hinder or delay resolution of the dispute.  Indeed, far from being "transparently frivolous," Guinea's Annulment Petition (and the Opposition here) raises serious and substantial issues with respect to corruption in the procurement of the Concession Agreement and the manner in which the Tribunal conducted the arbitration.  Indeed, the CCJA repeatedly reprimanded the Tribunal during the course of the arbitration.  *See* Opposition at 19-21.  Guinea filed the Annulment Petition in accordance with the deadlines set out in the CCJA Rules and has not sought any adjournments in that proceeding.  Accordingly, this factor weighs decisively in favor of a stay.

### 5.  *Europcar* Factor No. 5: Balance of the possible hardships

Under the circumstances here, the balance of the parties' hardships weighs strongly in favor of a stay.  As the Second Circuit explained in *Europcar*, a court should balance the parties' respective hardships "keeping in mind that…under Article V of the Convention, an award should not be enforced if it is set aside or suspended in the originating country."  *Europcar*, 156 F.3d at 318.  If the Court were to proceed and find that confirmation under the Convention is appropriate

13

before the CCJA proceedings are complete, Guinea would suffer tremendous prejudice.  Such a ruling may well render the CCJA proceedings moot, because Getma could immediately seek to enforce the judgment against Guinea, thereby undermining Guinea's right to seek annulment of the Award before the CCJA.

On the other hand, any hardship to Getma from a stay of this proceeding is *de minimis* given that the annulment proceedings before the CCJA are almost complete.  At most, the proceedings before this Court would likely be delayed a few months.  *See* Section III.C.2, *supra*.  Moreover, Getma's own delay in commencing this proceeding shows that such a minor delay does not amount to any hardship, and, even if it did, certainly not any hardship that would exceed the prejudice to Guinea if the CCJA proceedings were not permitted to conclude before the Court addresses the merits of Getma's Petition.  Any claim of hardship by Getma is further undermined by the fact that the Award, if it is ultimately confirmed, provides for prejudgment interest.  *See* Award, ¶ 271.  Accordingly, this factor weighs heavily in favor of a stay.  *See Jorf Lasfar Energy Co.*, 2005 U.S. Dist. LEXIS 34969 at *10 (finding that hardship to the plaintiff was outweighed by the "very real harm to defendant were we to confirm the award…and the French court were to later determine that the award was improper.").

### 6. *Europcar* Factor No. 6: Other Considerations

In addition to the foregoing, an additional consideration that tips in favor of a stay is that the Award cannot be enforced in any of the OHADA member states while the Annulment Petition is pending before the CCJA.  Jaeger ¶ 3, Ex. 3 at Art. 30.2.  While the unenforceability of the Award in the OHADA zone does not necessarily preclude enforcement elsewhere under the Convention, it underscores the significance of the CCJA's role, under both OHADA law and Article V of the Convention, in ruling on the Annulment Petition.  Indeed, in the *Jorf Lasfar Energy Company* case, the Court found it "especially significant that under French law,

14

defendant's appeal of the Arbitral Award automatically stayed execution of the award in that jurisdiction."   2005 U.S. Dist. LEXIS 34969, at *9.  While the court acknowledged that the stay of execution of the award in France was not binding on it, the court found it "highly relevant to a consideration of the overall nature and circumstances of the French proceeding" and concluded that it weighed in favor of a stay pending the conclusion of the annulment proceedings in France. *Id*.  The Court's reasoning in *Jorf Lasfar Energy Company* is directly applicable here, and also counsels in favor of a stay pending the conclusion of the CCJA proceedings.

## IV.   <u>CONCLUSION</u>

For the reasons set out in Guinea's Opposition to Getma's Petition to Confirm, the Court should deny the Petition in its entirety.  Alternatively, for the reasons set out above, the Court should stay this case pending the conclusion of annulment proceedings before the CCJA.  Guinea respectfully requests oral argument on its motion to stay.

Dated: March 2, 2015
      Washington, D.C.

ORRICK, HERRINGTON & SUTCLIFFE LLP


By:     /s/ Jeffrey M. Prokop          

Jeffrey M. Prokop (D.C. Bar. No. 992687)
Brooke Daley (D.C. Bar. No. 1013387)
1152 15th St. N.W.
Washington, D.C. 20005
Telephone: (202) 339-8400
Fax: (202) 339-8500
jprokop@orrick.com
bdaley@orrick.com

Jamie L. Shookman (admitted *pro hac vice*)
51 West 52nd Street
New York, NY 10019-6142
Telephone: (212) 506-5141
Fax: (212) 506-5151
jshookman@orrick.com

*Attorneys for Respondent*
*The Republic of Guinea*

## CERTIFICATE OF SERVICE

I, Jeffrey M. Prokop, hereby certify that on this 2nd day of March, 2015, I electronically filed the

foregoing Motion to Stay This Proceeding via the Court's CM/ECF system, which will

automatically serve counsel of record as follows:

Allen Barksdale Green
Ivan W. Bilaniuk
MCKENNA, LONG & ALDRIDGE, LLP
1900 K Street, NW
Suite 100
Washington, DC 20006-1110

/s/ Jeffrey M. Prokop
Jeffrey M. Prokop (D.C. Bar. No. 992687)
jprokop@orrick.com
ORRICK HERRINGTON & SUTCLIFFE LLP
1152 15th St. N.W.
Washington, D.C. 20005
Telephone: (202) 339-8400
Fax: (202) 339-8500
jprokop@orrick.com

*Attorney for Respondent*
*The Republic of Guinea*