# **EXHIBIT 2**

Case 1:14-cv-01616-RBW   Document 18-3   Filed 03/02/15   Page 1 of 16

Grosses délivrées **REPUBLIQUE FRANCAISE**

aux parties le : AU NOM DU PEUPLE FRANCAIS

## COUR D'APPEL DE PARIS

### Pôle 1 - Chambre 1

### ARRET DU 04 MARS 2014

(n° , 5 pages)

Numéro d'inscription au répertoire général : **12/17681**

Décision déférée à la Cour : Sentence du 31 Juillet 2012 rendue par le tribunal arbitral de Paris composé de MM. Molfessis et Lévy, arbitres, et de M. Hanotiau, président

**DEMANDERESSE AU RECOURS** :

**Société GULF LEADERS FOR MANAGEMENT AND SERVICES HOLDING COMPANY société de droit saoudien**

prise en la personne de ses représentants légaux

Sheikh Abdullah Al Angari Street

Al-Worood District, Riyadd 11563

ROYAUME D'ARABIE SAOUDITE

représentée par Me Jean-Claude CHEVILLER, avocat postulant du barreau de PARIS, toque : D0945

assistée de Me Anne-Marie LACOSTE, substituant Me Philippe PINSOLLE, avocat plaidant du barreau de PARIS, toque : L55

**DÉFENDERESSE AU RECOURS :**

**S.A. CRÉDIT FONCIER DE FRANCE**

prise en la personne de ses représentants légaux

19 rue des Capucines

75001 PARIS

représentée par Me Luca DE MARIA de la SELARL PELLERIN - DE MARIA - GUERRE, avocat postulant du barreau de PARIS, toque : L0018

assistée de Me Carole MALINVAUD, avocat plaidant du barreau de PARIS, toque : T 03

**COMPOSITION DE LA COUR :**

L'affaire a été débattue le 30 janvier 2014, en audience publique, le rapport entendu, devant la Cour

1

composée de :

Monsieur ACQUAVIVA, Président

Madame GUIHAL, Conseillère

Madame DALLERY, Conseillère

qui en ont délibéré

**Greffier,** lors des débats **:** Madame PATE

**ARRET :**

- CONTRADICTOIRE

- prononcé par mise à disposition de l'arrêt au greffe de la Cour, les parties en ayant été préalablement avisées dans les conditions prévues au deuxième alinéa de l'article 450 du code de procédure civile.

- signé par Monsieur ACQUAVIVA, président et par Madame PATE, greffier présent lors du prononcé.

Le 10 juillet 2008 a été conclu entre le CREDIT FONCIER DE FRANCE (CFF), société anonyme de droit français, et la GULF LEADERS FOR MANAGEMENT AND SERVICES HOLDING COMPANY (GULF LEADERS), société de droit saoudien, un contrat de prêt d'une somme de 157.500.000 USD pour le financement partiel d'un hôpital à Dammam en Arabie saoudite.

Un différend étant survenu entre les parties, le CFF a formé une demande d'arbitrage en application de la clause compromissoire stipulée par le contrat.

Par une sentence rendue à Paris le 31 juillet 2012 sous l'égide de la Chambre de commerce international, le tribunal arbitral composé de MM. Molfessis et Lévy, arbitres, et de M. Hanotiau, président, statuant en application du droit français, a :

- déclaré la demande de nullité du contrat recevable mais non fondée,

- condamné GULF LEADERS à rembourser au CFF la somme de 110 millions USD en principal, outre les intérêts, pénalités et frais,

- déclaré irrecevable la demande de dommages-intérêts pour résistance abusive présentée par le CFF,

- rejeté les demandes reconventionnelles de GULF LEADERS,

- condamné la défenderesse aux frais,

- ordonné l'exécution provisoire.

GULF LEADERS a formé un recours contre cette sentence le 3 octobre 2012.

Suivant conclusions signifiées le 22 octobre 2013, elle en sollicite l'annulation et la condamnation de CFF au paiement de la somme de 50.000 euros en application de l'article 700 du code de procédure civile. Elle invoque la contrariété de la sentence à l'ordre public international (article 1520 5° du code de procédure civile).

2

Suivant conclusions signifiées le 13 novembre 2013, le CFF demande à la cour de déclarer le recours irrecevable, dans la mesure où il tend à la révision au fond de la sentence, et subsidiairement mal fondé, et de condamner GULF LEADERS à lui payer la somme de 150.000 euros en application de l'article 700 du code de procédure civile.

**SUR QUOI** :

**Sur le moyen unique tiré de la violation de l'ordre public international (article 1520 5° du code de procédure civile)** :

GULF LEADERS soutient que la sentence donne effet à un contrat obtenu par corruption, que les indices de cette corruption sont apparus au cours de la procédure arbitrale mais que le tribunal a refusé d'en tenir compte en prétendant que la corruption ne serait pas prouvée et enfin, que le CFF lui a fait financer l'opération de corruption en lui facturant une commission d' 'underwriting' qui ne correspondait à aucune contrepartie.

Considérant que par un contrat du 10 juillet 2008, le CFF a consenti à GULF LEADERS un prêt de 157.500.000 USD pour la conception, l'édification et la gestion d'un hôpital à Dammam (Arabie Saoudite), dont GULF LEADERS devait financer l'équivalent de 100 millions USD sur ses fonds propres; qu'il était prévu que les sommes prêtées seraient versées en trois tranches; que les deux premiers versements de 60 millions et 50 millions USD ont eu lieu, quoique toutes les conditions préalables, tenant notamment à la constitution de garanties et à l'apport de fonds propres sur un compte bancaire dédié au projet, n'aient pas été entièrement remplies; que le CFF, en considération de ces inexécutions, ainsi que de modifications du projet qui avaient conduit GULF LEADERS à demander un prêt supplémentaire, a refusé le versement de la dernière tranche, prononcé la résiliation et réclamé la restitution des sommes versées;

Considérant que devant le tribunal arbitral, saisi par le CFF en application de la clause compromissoire stipulée au contrat, GULF LEADERS a invoqué sur le fondement de la convention de l'OCDE de 1996 et des articles 445-1 et 445-2 du code pénal français, un moyen tiré de l'illicéité de la cause du contrat du 10 juillet 2008 qui avait été obtenu par corruption; que GULF LEADERS a prétendu avoir été alertée par un article de presse sur l'existence d'une commission occulte de 4,5 millions USD versée par le CFF à la société de droit panaméen Riveroca Associated Corp., dont le gérant, M. Majed Al Rayyes était un proche de son président directeur général, le Sheikh Faysal; que GULF LEADERS a fait valoir que la corruption était établie par le fait que le contrat d'intermédiaire lui avait été dissimulé, qu'il n'était justifié d'aucune prestation réelle correspondant à la commission en cause et que le CFF avait refusé de déférer à la demande du tribunal arbitral de produire un rapport d'inspection interne sur le paiement de cette commission; que GULF LEADERS a ajouté que la commission de 4,5 millions USD avait été mise à sa charge par la stipulation d'une commission d'underwriting qui ne correspondait à aucune réalité; que GULF LEADERS a déduit de l'ensemble de ces circonstances que le contrat de prêt était 'le fruit et l'instrument d'un pacte de corruption', que ce contrat était donc nul et que l'exception d'indignité faisait obstacle à toute restitution;

Considérant que, pour juger que la corruption n'était pas matériellement établie, le tribunal arbitral a retenu, en substance, en premier lieu, que l'intervention de M. Al Rayyes n'était nullement occulte puisqu'il était présent aux côtés du représentant de CFF lors des réunions tenues avec GULF LEADERS, en deuxième lieu, que cette intervention était justifiée par l'expertise de l'intéressé en matière d'opérations de financement en Arabie Saoudite, expertise dont attestait la banque genevoise Dresdner qui avait recommandé M. Al Rayyes au CFF, en troisième lieu, qu'il n'y avait aucune conclusion à tirer du défaut de production du rapport d'inspection interne, dès lors que le directeur de l'inspection générale du groupe BPCE avait déclaré sous serment que si ce rapport avait un caractère confidentiel qui s'opposait à ce qu'il fût versé aux débats, il ne contenait aucun élément permettant d'étayer un soupçon de corruption, enfin, que la similitude entre la commission payée à Riveroca et le montant facturé au titre d' 'underwriting fees' ne suffisait pas à établir que les sommes versées au

titre du contrat de prêt aient servi à rémunérer l'intermédiaire, et que du reste ces 'fees' étaient conformes à la pratique bancaire dans la mesure où le prêt était conçu pour être 'syndiqué' entre plusieurs prêteurs;

Considérant que le tribunal arbitral a, en conséquence, rejeté la demande d'annulation du contrat de prêt, jugé que la résiliation par le CFF était fondée et condamné l'emprunteuse à restituer les fonds avec les intérêts et les frais;

Considérant que GULF LEADERS a formé un recours contre la sentence en invoquant la violation de l'ordre public international;

Considérant que lorsqu'il est prétendu qu'une sentence donne effet à un contrat obtenu par corruption, il appartient au juge de l'annulation, saisi d'un recours fondé sur l'article 1520 5° du code de procédure civile, de rechercher en droit et en fait tous les éléments permettant de se prononcer sur l'illicéité alléguée de la convention et d'apprécier si la reconnaissance ou l'exécution de la sentence viole de manière effective et concrète l'ordre public international;

Considérant que la corruption dans la conclusion d'un contrat de droit privé suppose que soit consenti, directement ou indirectement, le don ou la promesse d'un avantage à une personne qui exerce, dans le cadre d'une activité professionnelle ou sociale, une fonction de direction ou un travail pour une personne physique ou morale, afin d'obtenir qu'elle accomplisse ou s'abstienne d'accomplir un acte de son activité ou de sa fonction, ou facilité par son activité ou sa fonction, en violation de ses obligations contractuelles ou professionnelles;

Considérant qu'en l'espèce, il est constant que le CFF a versé à la société panaméenne Riveroca une commission de 4,5 millions USD afin d'être assistée par son gérant M. Al Rayyes dans la conclusion d'un contrat de prêt avec GULF LEADERS; que cette dernière prétend que la cause du paiement de la commission n'était pas la compétence de M. Al Rayyes, mais sa proximité avec le Sheikh Fayçal;

Considérant, toutefois, qu'il n'est nullement allégué ni que M. Al Rayyes ait exercé une fonction de direction ou un travail pour GULF LEADERS, ni que le Sheikh Faysal, actionnaire à 95 % et président directeur général de GULF LEADERS ait reçu quelque commission ou avantage que ce soit directement ou indirectement;

Qu'il apparaît, dès lors, que les éléments caractéristiques de la corruption ne sont pas démontrés, ni même invoqués, par GULF LEADERS;

Considérant, par surcroît, que contrairement à ce que soutient GULF LEADERS, d'une part, l'activité d'intermédiaire de M. Al Rayyes n'était nullement occulte puisque l'intéressé avait participé, aux côtés des dirigeants du CFF aux négociations contractuelles avec les représentants de GULF LEADERS, d'autre part, qu'il apparaissait pertinent que le CFF, dépourvu de contacts au Proche-Orient, s'adjoigne les services d'un spécialiste de cette zone qui lui était conseillé par une autre banque; que ces circonstances suffisent à établir que les éléments invoqués par GULF LEADERS ne sont pas des présomptions sérieuses, peu important le refus de production par le CFF d'un rapport d'inspection interne, enfin qu'il n'est nullement démontré que les 'underwriting fees' ne correspondent pas à une pratique bancaire;

Considérant que le moyen tiré de ce que la sentence donnerait effet à un contrat conclu par corruption manque donc en fait et sera écarté;

Considérant qu'il résulte de ce qui précède que le recours doit être rejeté;

Considérant que GULF LEADERS, qui succombe, ne saurait bénéficier des dispositions de l'article 700 du code de procédure civile; qu'elle sera condamnée, sur ce fondement à payer au CFF la somme

4

de 100.000 euros;

**PAR CES MOTIFS** :

Rejette le recours en annulation de la sentence rendue le 31 juillet 2012 entre les parties.

Condamne la société GULF LEADERS FOR MANAGEMENT AND SERVICES HOLDING COMPANY aux dépens qui seront recouvrés conformément aux dispositions de l'article 699 du code de procédure civile.

Condamne la société GULF LEADERS FOR MANAGEMENT AND SERVICES HOLDING COMPANY à payer à la société CREDIT FONCIER DE FRANCE la somme de 100.000 euros en application de l'article 700 du code de procédure civile.

LA GREFFIÈRE LE PRÉSIDENT

# Translation

Execution Copy delivered
to the parties on:

# FRENCH REPUBLIC

IN THE NAME OF THE FRENCH PEOPLE

## PARIS COURT OF APPEALS

### Division 1 – Chamber 1

### DECISION DATED 4 MARCH 2014

(No. , 5 pages)

Registration number in the general register: **12/17681**

Decision referred to the Court: Award dated 31 July 2012 rendered by the arbitral tribunal of Paris, composed of Messrs. Molfessis and Lévy, arbitrators, and Mr. Hanotiau, President

**PETITIONER ON APPEAL:**

**GULF LEADERS FOR MANAGEMENT AND SERVICES HOLDING COMPANY, a company organized under Saudi law**

Represented by its legal representatives

Sheikh Abdullah Al Angari Street

Al-Worood District, Riyadd 11563

KINGDOM OF SAUDI ARABIA

Represented by Mr. Jean-Claude CHEVILLER, attorney at the PARIS Bar, mailbox no. D0945

Assisted by Ms. Anne-Marie LACOSTE, replacing Mr. Philippe PINSOLLE, Attorney at the PARIS Bar, mailbox no. L55

**RESPONDENT ON APPEAL:**

**S.A. CREDIT FONCIER DE FRANCE**

Represented by its legal representatives

19 rue des Capucines

75001 PARIS

represented by Mr. Luca DE MARIA of the SELARL PELLERIN – DE MARIA – GUERRE, Attorney at the PARIS Bar, mailbox no. L0018

assisted by Ms. Carole MALINVAUD, Attorney at the PARIS Bar, mailbox no. T 03

**COMPOSITION OF THE COURT:**

The case was argued on 30 January 2014, at a public hearing, the report heard, before the Court

composed of:

Mr. ACQUAVIVA, President

Ms. GUIHAL, Judge

Ms. DALLERY, Judge

who deliberated

**Clerk,** during oral arguments: Ms. PATE

**DECISION:**

**-** IN THE PRESENCE OF BOTH PARTIES

- pronounced by filing the decision with the Clerk's Office of the Court, the parties having been informed in advance pursuant to Article 450, paragraph 2 of the French Code of Civil Procedure.

- signed by Mr. ACQUAVIVA, President, and by Ms. PATE, the clerk present when the decision was rendered.

On 10 July 2008, CREDIT FONCIER DE FRANCE (CFF), a French limited liability corporation (*société anonyme*), and GULF LEADERS FOR MANAGEMENT AND SERVICES HOLDING COMPANY (GULF LEADERS), a Saudi company, entered into a loan agreement for the amount of USD 157,500,000, for the partial financing of a hospital in Dammam, Saudi Arabia.

A dispute having arisen between the parties, CFF filed a petition for arbitration pursuant to the agreement's arbitration clause.

In an award rendered in Paris on 31 July 2012 under the aegis of the International Chamber of Commerce, the arbitral tribunal composed of Messrs. Molfessis and Lévy, arbitrators, and Mr. Hanotiau, President, ruling pursuant to French law:

- ruled that the petition for annulment of the agreement was admissible but unfounded;

- ordered GULF LEADERS to repay CFF the amount of USD 110 million in principal, plus interest, penalties and costs;

- declared CFF's claim for damages for abusive resistance inadmissible;

- rejected GULF LEADERS' counterclaims;

- ordered the defendant to pay costs;

- ordered provisional enforcement.

GULF LEADERS appealed against the award on 3 October 2012.

Pursuant to pleadings served on 22 October 2013, it seeks annulment and an order against CFF to pay the amount of €50,000 pursuant to Article 700 of the French Code of Civil Procedure. It claims that the award contravenes international public policy (Article 1520 5th of the French Code of Civil Procedure).

Pursuant to pleadings served on 13 November 2013, CFF asks the Court to declare the appeal inadmissible because it petitions for a review of the merits of the award, and, in the alternative, is unfounded, and to order GULF LEADERS to pay it the amount of €150,000 pursuant to Article 700 of the French Code of Civil Procedure.

**ACCORDINGLY**:

**On the sole grounds for appeal, violation of international public policy (Article 1520 5th of the French Code of Civil Procedure):**

GULF LEADERS argues that the award gives effect to a contract obtained by corruption, that indications of corruption appeared during the arbitral procedure but that the tribunal refused to take them into account, claiming that corruption had not been proven, and, lastly, that CFF forced it to finance the corrupt transaction by charging it an "underwriting" commission that did not correspond to any service provided.

Whereas, in an agreement dated 10 July 2008, CFF provided GULF LEADERS a loan of USD 157,500,000 for the design, construction and management of a hospital in Dammam, Saudi Arabia, for which GULF LEADERS was required to finance the equivalent of USD 100 million from its own capital; whereas, it was provided that the loan would be disbursed in three tranches; that the first two tranches of USD 60 million and USD 50 million were disbursed even though all of the conditions precedent, relating in particular to obtaining guarantees and depositing funds into a dedicated bank account, had not been fully satisfied; that CFF, due to these breaches, as well as to changes in the project that had led GULF LEADERS to request an additional loan, refused to disburse the third tranche, terminated the agreement and demanded restitution of the amounts disbursed;

Whereas, GULF LEADERS argued to the arbitral tribunal, before which CFF had brought the dispute in accordance with the agreement's arbitration clause, that based on the 1996 OECD Convention and on Articles 445-1 and 445-2 of the French Penal Code, that the agreement dated 10 July 2008 had an illegal cause and had been obtained by corruption; whereas, GULF LEADERS claimed to have been alerted by an article in the press of the existence of a hidden commission of USD 4.5 million paid by CFF to the Panamanian company Riveroca Associated Corp., of which the manager, Mr. Majed Al Rayyes, was a close associate of its Chairman and CEO, Sheikh Faysal; whereas, GULF LEADERS asserted that corruption was established by the fact that the agency agreement had been hidden from it, that no real service had been shown to correspond to the commission in question, and that CFF had refused to comply with the arbitral tribunal's request to produce its report on the internal inquiry into the payment of this commission; whereas, GULF LEADERS added that the USD 4.5 million commission had been passed on to it through the inclusion of an underwriting commission that did not correspond to any real service provided; whereas, GULF LEADERS deduced from all of these circumstances that the loan agreement was the fruit and the instrument of a corrupt agreement, that this agreement was therefore null and void, and that the defense of unworthiness should block restitution;

Whereas, in order to find that corruption had not been sufficiently established, the arbitral tribunal found, in substance, first, that Mr. Al Rayyes' intervention was not at all hidden, since he was present along with CFF representative at the meetings held with GULF LEADERS; second, that this involvement was justified by the expertise of the party in question in financing transactions in Saudi Arabia, expertise that was attested to by the Dresdner Bank of Geneva, which had recommended Mr. Al Rayyes to CFF; third, that there was no conclusion to be drawn from the failure to produce an internal inquiry report, since the director of the BPCE group's general inspectorate had stated under oath that while the report was confidential and could therefore not be produced in the arbitration, it contained no information to support a suspicion of corruption, and finally, that the similarity between the commission paid to Rivercoa and the amount billed as "underwriting fees" did not suffice to establish that the amounts paid

3

pursuant to the loan agreement had been used to compensate the intermediary, and that, moreover, these "fees" were in accordance with banking practice, since the loan was intended to be "syndicated" among several lenders;

Whereas, as a result, the arbitral tribunal rejected the claim for annulment of the loan agreement, ruled that termination by CFF was justified, and ordered the borrower to return the funds, plus interest and costs;

Whereas, GULF LEADERS filed an appeal against the award, claiming a violation of international public policy;

Whereas, when it is claimed that an award gives effect to a contract obtained by corruption, it is the responsibility of the court hearing a claim for annulment based on Article 1520 5th of the French Code of Civil Procedure to examine, as a matter of law and of fact, all information needed to rule on the alleged illegality of the agreement and to evaluate whether recognition or enforcement of the award effectively and concretely violates international public policy;

Whereas, corruption is present in the conclusion of a contract where a gift or the promise of a benefit is granted to a person who, in connection with a professional or social activity, manages or works for a legal entity or a natural person, in order to induce that person to perform or refrain from performing an act relating to his activity or position, or facilitated by his activity or position, in violation of his contractual or professional obligations;

Whereas, in this case, it is clear that CFF paid the Panamanian company Rivercoa a commission of USD 4.5 million to obtain the assistance of its manager, Mr. Al Rayyes, in entering into a loan agreement with GULF LEADERS; whereas, the latter claims that the reason for payment of the commission was not Mr. Al Rayyes's skills, but rather his closeness to Sheik Fayçal;

Whereas, however, it is not alleged either that Mr. Al Rayyes was in a management or employment position with GULF LEADERS or that Sheikh Faysal, the 95% shareholder and Chairman and CEO of GULF LEADERS, had received any commission or advantage, either directly or indirectly;

Whereas, it appears, therefore, that the characteristic elements of corruption have not been shown, or even alleged, by GULF LEADERS;

Whereas, moreover, contrary to GULF LEADERS's assertions, first, Mr. Al Rayyes's actions as an intermediary were not hidden, since he had participated alongside CFF's executives in the contractual negotiations with GULF LEADERS's representatives; and second, it appears reasonable that CFF, which lacked contacts in the Middle East, would call on the services of a specialist in that region who had been recommended by another bank; whereas, these circumstances suffice to establish that the GULF LEADERS's allegations are not serious claims, despite CFF's refusal to produce an internal inquiry report; and whereas, lastly, it has not been shown that the "underwriting fees" did not correspond to a banking practice;

Whereas, the argument that the award gives effect to a contract entered into through corruption therefore fails and will be rejected;

Whereas, as a result of the preceding, the appeal must be rejected;

Whereas, GULF LEADERS, as the losing party, may not obtain the benefit of Article 700 of the French Code of Civil Procedure; whereas, it will be ordered, on that basis, to pay CFF the amount

4

of €100,000;

**ON THESE GROUNDS:**

Rejects the petition for annulment of the award rendered on 31 July 2012 between the parties.

Orders GULF LEADERS FOR MANAGEMENT AND SERVICES HOLDING COMPANY to pay costs, which shall be recovered in accordance with Article 699 of the French Code of Civil Procedure.

Orders GULF LEADERS FOR MANAGEMENT AND SERVICES HOLDING COMPANY to pay CREDIT FONCIER DE FRANCE the amount of €100,000 pursuant to Article 700 of the French Code of Civil Procedure.

THE CLERK          THE PRESIDENT

5

# Certification

**Jennifer Bader**
**ATA Certified Translator FR>EN**
**CLASS Translations, LLC**
**3305 Labyrinth Road**
**Baltimore, MD 21215**
**1-443-739-7823**

CERTIFICATE OF ACCURACY

I, Jennifer Bader, hereby certify that I translated the documents listed in Annex A attached hereto from French into English and that, to the best of my ability, they are true and correct translations. I further certify that I am competent in both French and English to render and certify such translations.

_Jennifer Bader_
Jennifer Bader

_Victoria Denise Byrne_                    VICTORIA DENISE BYRNE
Notary Public                              NOTARY PUBLIC STATE OF MARYLAND
                                           My Commission Expires July 28, 2018
March 02, 2015

## Annex A

## List of Documents

Email from CCJA to Tribunal dated May 19, 2014

Minutes from the PAC December 31, 2009 and January 2, 2009 Meeting

Getma Financial Offer

July 23 2014 Petition to Challenge Validity

Minutes from the initial arbitral proceeding dated March 12, 2012

Transcript from the July 8, 2013 hearing

Letter from Guinea's counsel to the Tribunal dated November 4, 2013

Complaint against named persons on counts of corruption and influence peddling

Letter from Guinea's counsel to the Tribunal dated December 14, 2013

Witness statement of Mr. Demba Kourouma

Witness statement of Mr. Ibrahima Laminzana Conde

Tribunal Procedural Order dated November 7, 2013

Tribunal Procedural Order dated December 2, 2013

Letter from Guinea's counsel to Getma's counsel dated December 16, 2013

Transcript from December 16, 2013 hearing

Tribunal Procedural Order dated January 8, 2014

Letter from Guinea's counsel to the Tribunal dated January 15, 2014

Letter from the Tribunal to the Parties dated March 17, 2014

CCJA Decision dated October 3, 2013

Transcript of May 27, 2013 hearing

Letter from the Tribunal to the CCJA dated June 3, 2014

Email from the CCJA to the Tribunal dated May 19, 2014

Letter from the Tribunal to the Parties dated April 22, 2013

Email from the Tribunal to the Parties dated May 6, 2013

Letter from the Tribunal to the Parties dated May 10, 2013

Email from the Tribunal to the Parties dated May 23, 2013

Email from the Tribunal to Guinea's counsel dated June 25, 2013

Email from Guinea's counsel to the Tribunal dated June 28, 2013

CCJA Decision dated August 1, 2013

Letter from the Tribunal to the Parties dated April 30, 2014

Letter from the CCJA to Mr. Fischer dated May 20, 2014

Letter from Getma's counsel to the CCJA dated May 23, 2014

CCJA Decision dated March 12, 1999

Witness statement of Mr. Sory Camara

Letter from Getma's counsel to the tribunal dated May 30, 2013

Email from the Tribunal to Guinea's counsel dated September 5, 2013

Email from Mr. Fischer to the Tribunal dated September 6, 2013

Composition of the CCJA

Excerpt from Call for Tenders for the Award of a Concession for the Container Terminal of the Port of Conakry

Decision of the Paris Court of Appeals dated March 4, 2014

P.-G. Pougoué, Arbitration in the OHADA Zone

G. Kenfack Douajni, The Notion of International Public Policy in OHADA Arbitration