# <u>EXHIBIT 5 – Part 2</u>

- **Dire et juger** régulière et fondée la résiliation sans indemnité de la Convention portant mise en concession du Terminal à conteneurs du Port de Conakry et de son Avenant n° 1 ;

- **Rejeter** l'ensemble des demandes formées par la société Getma International à l'encontre de l'Etat Guinéen en toutes fins qu'elles comportent ;

- **Condamner** la société Getma International à indemniser l'Etat guinéen du préjudice qu'il a subi du fait des irrégularités dans la conclusion de la Convention et des manquements du concessionnaire à ses obligations, pour un montant qui sera déterminé au cours de la procédure d'arbitrage ;

- **Condamner** la société Getma International à prendre en charge la totalité des coûts du présent arbitrage, y compris les honoraires d'avocats et toutes autres dépenses engagées par l'Etat guinéen pour les besoins de sa défense.

L'Etat guinéen se réserve le droit de présenter ultérieurement au Tribunal Arbitral toute autre demande qu'il considérera appropriée.

## VII - Points litigieux à résoudre

[20] Les arbitres sont saisis des demandes sus-visées.

[21] Les points litigieux à résoudre par le Tribunal arbitral sont ceux qui résultent des mémoires des Parties, y compris les mémoires qui seront ultérieurement déposés. Toute demande nouvelle sera traitée conformément à l'article 18 du Règlement de la Cour Commune de Justice et d'Arbitrage de l'OHADA.

## VIII - Siège de l'arbitrage

[22] Conformément à l'article 31 (8) de la Convention de Concession, le siège de l'arbitrage est Abidjan, République de Côte d'Ivoire.

[23] Le Tribunal arbitral peut néanmoins tenir des audiences et réunions en tout autre endroit qu'il estimera opportun, après avoir consulté les Parties.

[24] Le Tribunal arbitral peut délibérer en tout endroit qu'il considère opportun.

17

## IX - Langue de l'arbitrage

[25] Conformément à l'article 31(8) de la Convention de Concession, la langue de l'arbitrage est le français.

## X - Droit applicable à la Convention de concession

[26] Conformément à l'article 31 (2) de la Convention de Concession, le traité OHADA et ses actes uniformes subséquents s'appliquent au contrat de concession. En outre, conformément à l'article 5 du Cahier des charges, outre les stipulations de la Convention et les prescriptions du Cahier des Charges, la Concession reste soumise aux lois, règlements et conventions en vigueur en République de Guinée.

## XI - Règles de Procédure

[27] Conformément à l'article 31 de la Convention de Concession, le Tribunal arbitral appliquera le Règlement de la Cour Commune de Justice et d'Arbitrage (CCJA) de l'OHADA du 11 mars 1999. Dans le silence de celui-ci, le Tribunal appliquera les règles qu'il estime appropriées.

[28] Les Parties autorisent le Tribunal arbitral à prendre des ordonnances de procédure sur toutes questions de procédure susceptibles de se poser dans le cours du présent arbitrage. Ces ordonnances peuvent être signées par le Président seul, après concertation avec ses co-arbitres.

[29] Le Président peut prendre seul toutes les décisions relatives à une bonne administration de l'arbitrage. Il consultera ses co-arbitres pour toute décision affectant la procédure ou le fond.

18

## II - Présentation des Mémoires et des Pièces

[30] Les paragraphes des mémoires seront numérotés de manière consécutive. Les mémoires contiendront une table des matières et une liste de pièces communiquées. Cette liste sera mise à jour au fur et à mesure.

[31] Les pièces communiquées par la Demanderesse seront identifiées : C.1, C.2, C.3. Celles de la Défenderesse seront   identifiées : R.1, R.2, R.3. La numérotation sera continue d'un mémoire à l'autre.

[32] Les écritures des Parties doivent exposer les moyens de fait et de droit avec suffisamment de précision. Chaque Partie devra répondre, dans ses écritures, aux moyens de l'autre Partie, sans pour autant que ceci ne limite son droit de développer librement son argumentation.

[33] Les mémoires suivants seront récapitulatifs (incluant l'exposé initial et les réponses) pour faciliter la tâche du Tribunal.

[34] Les Pièces seront présentées sur papier et sur CD-ROM, de manière séparée des Mémoires. Elles seront elles-mêmes séparées par des onglets et détachables des classeurs. Elles seront numérotées en continu avec une liste régulièrement mise à jour avec les références "C-n°.." pour la Demanderesse et "R-n°.." pour la Défenderesse. Les Mémoires indiqueront, pour chaque pièce citée, son numéro.

## XIII - Communication des Pièces

[35] La communication des pièces sera réglée entre les Parties. Elles en référeront au Tribunal arbitral en cas de difficultés.

Le Tribunal tranchera les différents relatifs à la communication de pièces dans les meilleurs délais.

19

[36] En dehors du calendrier procédural, les Parties sont invitées à ne pas communiquer par lettres ou mémoires non sollicités par le Tribunal arbitral, sauf requête pour mesures urgentes ou provisoires et sauf incident de communication de pièces.

## XIV - Témoins et Experts

[37] Toute personne peut être témoin, y compris les Parties, leurs organes et/ou leurs représentants.

[38] Les Parties joindront à leurs Mémoires les déclarations écrites des personnes qu'elles souhaitent présenter comme témoins ou experts. Ces déclarations préciseront le nom et prénom du témoin, sa profession, son adresse, ses qualifications professionnelles et les relations qu'il a pu avoir, le cas échéant, avec une des Parties et contiendront une affirmation de la sincérité de la déclaration. Celle-ci sera en outre datée et signée.

[39] Au plus tard dans les 10 jours qui suivront le dernier mémoire avant l'audience d'audition des témoins et experts, chaque Partie désignera les témoins et experts qu'elle souhaite faire entendre par le Tribunal, indépendamment de la Partie qui les a présentés.

[40] Lors de leur audition, les témoins et experts seront invités à confirmer leurs déclarations écrites. Cette confirmation tiendra lieu d'interrogatoire direct, sauf complément limité dans le temps à la demande de la Partie qui a produit la déclaration écrite. Les représentants légaux des Parties seront entendus avant les autres témoins. Ces derniers ne pourront demeurer dans la salle d'audience qu'après qu'ils auront été entendus.

[41] Les déclarations écrites des témoins et experts dont l'audition n'est pas requise seront admissibles comme preuves et soumises à l'appréciation du Tribunal.

20

Toutefois, le Tribunal se réserve la possibilité d'ordonner l'audition d'un témoin ou d'un expert, même si celle - ci n'est pas requise par l'une des Parties.

## XV - Mémoires produits par les Parties avant la signature de ce Procès Verbal

[42] La demande d'arbitrage, en date du 10 mai 2011 et 19 pièces.

## XVI - Calendrier prévisionnel de la Procédure

[43] Le calendrier prévisionnel de la Procédure, arrêté avec l'accord des Parties, est annexé au présent procès-verbal. Il pourra être modifié par le Tribunal Arbitral.

[44] Toute demande d'extension de délai (et l'ajustement correspondant au calendrier de procédure si nécessaire) devra être soumise au Tribunal arbitral avant l'expiration du délai concerné. Sauf cas urgents, l'autre Partie aura la possibilité de se prononcer sur la demande de prolongation.

[45] Si des mesures urgentes doivent être prises, le Tribunal arbitral établira un calendrier de procédure spécifique par une ou plusieurs ordonnances de procédure.

## XVII – Clôture des débats

[46] Après la présentation de l'état des frais, le Tribunal rendra une ordonnance de clôture des débats, lorsqu'il estimera que l'affaire est en état d'être jugée. Il pourra, durant son délibéré, rapporter cette ordonnance s'il estime utile d'interroger à nouveau les Parties.

## XVIII - Traductions et Interprétations

[47] Si des documents sont soumis dans une langue autre que le français, ils devront être traduits en langue française. Une partie qui produit des documents volumineux,

21

des documents techniques ou des documents très nombreux dans une langue autre que le français est autorisée à traduire seulement les parties pertinentes, sauf décision contraire du Tribunal, prise de son propre chef ou à la demande de l'autre partie.

[48] Si des personnes sont amenées à témoigner dans une langue autre que le français, leurs témoignages devront être interprétés en langue française. La Partie qui a produit le témoignage écrit d'un témoin qui s'exprime en une langue étrangère retient les services d'un interprète et en avance le coût à titre provisoire.

## XIX - Transcriptions

[49] Les audiences feront l'objet d'une sténotypie. Les parties prendront en temps utile les dispositions nécessaires pour la réservation des salles et des sténotypistes et le paiement de leurs frais et coûts

## XX - Coûts

[50] Le Tribunal statuera dans sa sentence finale sur la répartition définitive de tous les coûts de l'arbitrage.

## XXI - Sentence

[51] Le Tribunal arbitral règlera ce litige par une ou plusieurs sentences, en conformité avec les articles 15.4 et 22 du Règlement.

## XXII – TVA

[52] Dans le cas où les honoraires de l'arbitre seraient soumis à la TVA conformément au droit fiscal applicable, les Parties signataires s'engagent, chacune pour ce qui la concerne, à payer ladite TVA entre les mains de la CCJA (OHADA), à première demande du Tribunal Arbitral.

22

## XXIII – Archives

[53] Une fois la sentence finale notifiée aux Parties signataires, les arbitres conserveront les pièces fournies par les Parties pendant un délai de deux mois. Passé ce délai, si les Parties n'ont pas exprimé leur souhait de les récupérer, les arbitres pourront les détruire.

Le 12 mars 2012
En 7 originaux

Les Parties

La Société GETMA INTERNATIONAL                    L'ETAT GUINEEN

Tiago Duarte

23

Le Tribunal Arbitral

Monsieur Juan Antonio CREMADES

Arbitre

Monsieur Eric TEYNIER

Arbitre

Monsieur le Professeur Ibrahim Fadlallah

Président du Tribunal Arbitral

Annexes: 1. Calendrier Procédural

2. Feuille de présences

24

**GETMA INTERNATIONAL**
**c. /**
**ETAT GUINEEN**
**ANNEXE AU PROCES VERBAL DE LA REUNION DU 12 mars 2012**
**CCJA (OHADA) n° 001/2011/ARB**
<u>**Calendrier prévisionnel de la Procédure**</u>

| | |
|---|---|
| 1er Mémoire de la Demanderesse | Lundi 18 juin 2012 |
| Mémoire en réponse et demande reconventionnelle du Défendeur | Jeudi 18 octobre 2012 |
| 2ème Mémoire et Réponse à la demande reconventionnelle de la Demanderesse. | Lundi 7 janvier 2013 |
| Mémoire en duplique sur les demandes principales et réplique sur la demande reconventionnelle du Défendeur | Vendredi 22 mars 2013 |
| Mémoire en duplique, limitée à la demande reconventionnelle, de la Demanderesse | Lundi 22 avril 2013 |
| Audience d'audition de témoins et d'experts | Lundi 27 au vendredi 31 mai 2013 |
| Audience de Plaidoiries | Mardi 25 et mercredi 26 juin 2013 |
| Présentation de l'état des frais | Vendredi 12 juillet 2013 |
| | |



25

# GETMA INTERNATIONAL
## c. /
## ETAT GUINEEN
## CCJA (OHADA) n° 001/2011/ARB
### Audience du mardi 12 mars 2012
### Feuille de présence

| NOM | SIGNATURE |
| --- | --- |
| Cédric FISHER<br>Avocat GETMA INTERNATIONAL | |
| Elisabeth MAHE<br>Avocat GETMA INTERNATIONAL | |
| Tiago DUARTE<br>Avocat GETMA INTERNATIONAL | T. Duarte |
| Jean-Daniel LITTLER<br>Directeur Juridique NCT NECOTRANS | |
| | |
| Laurent JAEGER<br>Avocat République de GUINEE | |
| Pascal AGBOYIBOR     Agnès<br>Avocat République de GUINEE  Bizard<br>Cabinet Orrick | |
| Romain SELLEM<br>Avocat République de GUINEE | |
| | |
| Juan- Antonio CREMADES<br>Co-Arbitre | |
| Eric TEYNIER<br>Co-Arbitre | |
| Ibrahim FADLALLAH<br>PRESIDENT | |
| Marie SFEIR SLIM<br>Secrétaire du Tribunal Arbitral | |

# Translation

**Translation of "Procès-verbal de la première session du Tribunal Arbitral du 12/03/12"**

**GETMA INTERNATIONAL**
**v.**
**GOVERNMENT OF GUINEA**
**CCJA (OHADA) No. 001/2011/ARB**
**MINUTES OF THE MEETING OF 12 March 2012**

Persons Present:

Cédric FISCHER, Esq.

Elisabeth MAHE, Esq.

Tiago DUARTE, Esq.

Counsel to GETMA INTERNATIONAL, Claimant

Mr. Jean-Daniel LITTLER, General Counsel of the Group NTC NECOTRANS

Laurent JAEGER, Esq.

Romain SELLEM, Esq.

Counsel to the Government of Guinea, Respondent.

Professor Ibrahim FADLALLAH, President of the Arbitral Tribunal

Mr. Eric TEYNIER, Arbitrator

Mr. Juan Antonio CREMADES, Arbitrator

Marie SFEIR SLIM, Esq., Secretary of the Arbitral Tribunal

(Attendance sheet annexed hereto)

This arbitration is governed by the provisions of Title IV of the OHADA Treaty, the Arbitration Rules of the Common Court of Justice and Arbitration of the OHADA dated 11 March 1999, the Internal Rules of the Court, their annexes and the arbitration fee scale as in effect on 10 May 2011 (Art. 10.1 of the Rules).

These minutes have been prepared in accordance with Article 15 of the Rules of the Common Court of Justice and Arbitration (CCJA) of the OHADA dated 11 March 1999.

[…]

[six sets of initials]

[…]

## 2. Summary of the Respondent's Claims

*The concession for the container terminal at the Port of Conakry was awarded to Getma International under manifestly illegal circumstances, both during the tender process and during the drafting and signature of the concession agreement (the "Agreement").*

*The irregular circumstances under which this contract was awarded, in the unstable political context of the end of President Lansana Conté's term, resulted in entry into an agreement that granted exorbitant privileges to the concessionaire. They also foreshadowed the shortcomings in the concessionaire's performance of the contract, as the concessionaire lacked the skills and experience claimed in its bid.*

*These irregularities justified termination of the Agreement without indemnification, which had been sought by the relevant authorities and bodies since the signature date and throughout the performance period. Moreover, the Government of Guinea reserves the right to seek reparation for other illegal acts that may be revealed in the course of this arbitration.*

### 1.1. *Irregularities in Awarding the Concession to Getma International*

*(i)     The sidelining of the Administration et Contrôle des Grands Projets [Major Projects Administration and Control Office] (ACGP)*

   *The Administration et Contrôle des Grands Projets [Major Projects Administration and Control Office] (ACGP) did not participate in the drafting and approval of the Call for Tenders, in violation of its legal mission.*

[six sets of initials]

*Moreover, in its capacity as rapporteur of the* Commission Nationale des Grands Marchés (*National Large Contract Commission*)*, the AGCP generally must host the sessions at which bids are opened and evaluated, as well as the negotiation and drafting of the agreements. In this case, it was totally sidelined from the tender process.*

*(ii)*   <u>*The sidelining of the Autonomous Port of Conakry ("PAC")*</u>

*The Autonomous Port of Conakry ("PAC"), an autonomous legal entity, is the legal property custodian for all of the public land and waters made available to it. As such, it should have played a preponderant role in the negotiation of and entry into the Agreement.*

*Instead, the PAC was completely sidelined from the negotiation of the Agreement, in violation of its legal mission and contrary to standard practices for awarding port concessions.*

*(iii)*   <u>*The abnormal circumstances under which the Agreement was negotiated*</u>

*In theory, the entity that appoints the contractor must be separate from the entity that then negotiates the terms of the agreement. Here, the Bid Evaluation Commission, which had awarded the contract, was reconvened to draft and negotiate the Agreement with the company that it had itself chosen.*

*The negotiations, from which the PAC was carefully excluded, were thus conducted behind closed doors, in the space of a mere two weeks, by the same entity that had already selected Getma International in the call for tenders.*

**1.2.**   <u>**The Irregularities in the Agreement**</u>

*(i)*   <u>*The lack of authority of the signatory to the agreement*</u>

*Pursuant to Decree 051/PRG/SGG/88 organizing the functioning of the Autonomous Port of Conakry, the PAC is the legal property custodian for all of the public waters made available to it, of which the container terminal is a part.*

*Therefore, as the grantor of the concession, the PAC should have been the signatory to the Agreement entered into with Getma International. Instead, the Agreement was signed by the then-Minister of Transportation.*

[six sets of initials]

*The sidelining of the PAC, therefore, not only affected the legality of the process of awarding the contract and negotiating the Agreement. It also resulted in the Agreement being signed by a person who lacked the authority to do so.*

*(ii)*     <u>*The exorbitant privileges granted to Getma International*</u>

*The Agreement includes numerous provisions granting exorbitant benefits to Getma International to the detriment of the Government of Guinea, such as an exemption from the corporation tax for nearly the entire term of the Agreement.*

**1.3**     <u>***The Concessionaire Breached its Obligations***</u>

*In connection with the call for tenders, Getma International stated that it had significant experience in managing container terminals in its own name and under its own responsibility. It also stated that it had the technical and financial capacity to carry out the objectives of the call for tenders.*

*In reality, it turned out that the concessionaire did not even come close to satisfying the required criteria. In particular, it demonstrated itself to be incapable of making the investments planned for the first two years of the concession.*

*Getma International was supposed to invest massively over the course of this crucial period in order to rehabilitate the existing terminal and to extend it by building a new, 300-meter dock and developing surface area of 120,000 square meters. This construction work was the principal objective and the whole reason for granting a terminal concession.*

*However, Getma International invested only minimally during this period, and the investment program was considerably delayed. When the Agreement was terminated, the investment program for the extension of the terminal through the construction of a new dock and the development of a pier had only reached the stage of the call for tenders. The rehabilitation of the existing structures had hardly begun.*

*In addition, Getma International continually breached its obligations, in particular by not allowing the Government of Guinea to take an*

14
[six sets of initials]

*equity stake in the share capital of the company operating the terminal, as well as by modifying that share capital without the prior consent of the entity granting the concession.*

**1.4** **_The Termination of the Agreement was Proper and Justified_**

*Getma's failure to perform its obligations is not surprising, given the irregular circumstances under which the concession was awarded.*

*These irregularities were objected to as soon as the Agreement was signed, in particular by the Minister Secretary General to the Presidency of the Republic in December 2008 and by the PAC's Board of Directors, which sought the Agreement's annulment at an extraordinary meeting held on 31 December 2008 and 2 January 2009.*

*However, the Agreement remained in force under the provisional government of Captain Dadis Camara, after having been suspended between January and April 2009 and then modified by Amendment No. 1 on 7 November 2009.*

*On 11 February 2011, a new extraordinary meeting of the PAC's Board of Directors was held in order to conduct an overall examination of the conditions under which the contract had been awarded and was being performed. The numerous breaches and irregularities that were found convinced the PAC to seek termination of the Agreement from the new President democratically elected in December 2010, Mr. Alpha Condé.*

➢ *As a result of the foregoing, in a completely legitimate and justified manner, the President of the Republic of Guinea issued a Decree dated 8 March 2011 terminating the Agreement.*

[…]

[six sets of initials]

**GETMA INTERNATIONAL**

**V.**

**GOVERNMENT OF GUINEA**

**ANNEX TO THE MINUTES OF THE MEETING OF 12 MARCH 2012**

**CCJA (OHADA) No. 001/2011/ARB**

**Projected Procedural Calendar**

| | |
|---|---|
| Claimant's First Memorial | Monday 18 June 2012 |
| Respondent's Reply and Counterclaim Memorial | Thursday 18 October 2012 |
| Claimant's 2nd Memorial and Reply to Counterclaim | Monday 7 January 2013 |
| Respondent's Rejoinder and Reply to Counterclaim | Friday 22 March 2013 |
| Claimant's Rejoinder, limited to the counterclaim | Monday 22 April 2013 |
| Hearing: witness and expert testimony | Monday 27 through Friday 31 May 2013 |
| Hearing: oral arguments | Tuesday 25 and Wednesday 26 June 2013 |
| Presentation of costs | Friday 12 July 2013 |
| | |

[seven sets of initials]

# Certification

**Jennifer Bader**
**ATA Certified Translator FR>EN**
**CLASS Translations, LLC**
**3305 Labyrinth Road**
**Baltimore, MD 21215**
**1-443-739-7823**

<u>CERTIFICATE OF ACCURACY</u>

I, Jennifer Bader, hereby certify that I translated the documents listed in <u>Annex A</u> attached hereto from French into English and that, to the best of my ability, they are true and correct translations. I further certify that I am competent in both French and English to render and certify such translations.

*Jennifer Bader*
Jennifer Bader

*Victoria Denise Byrne*
Notary Public

VICTORIA DENISE BYRNE
NOTARY PUBLIC STATE OF MARYLAND
My Commission Expires July 28, 2018

March, 02, 2015

## Annex A

## List of Documents

Email from CCJA to Tribunal dated May 19, 2014

Minutes from the PAC December 31, 2009 and January 2, 2009 Meeting

Getma Financial Offer

July 23 2014 Petition to Challenge Validity

Minutes from the initial arbitral proceeding dated March 12, 2012

Transcript from the July 8, 2013 hearing

Letter from Guinea's counsel to the Tribunal dated November 4, 2013

Complaint against named persons on counts of corruption and influence peddling

Letter from Guinea's counsel to the Tribunal dated December 14, 2013

Witness statement of Mr. Demba Kourouma

Witness statement of Mr. Ibrahima Laminzana Conde

Tribunal Procedural Order dated November 7, 2013

Tribunal Procedural Order dated December 2, 2013

Letter from Guinea's counsel to Getma's counsel dated December 16, 2013

Transcript from December 16, 2013 hearing

Tribunal Procedural Order dated January 8, 2014

Letter from Guinea's counsel to the Tribunal dated January 15, 2014

Letter from the Tribunal to the Parties dated March 17, 2014

CCJA Decision dated October 3, 2013

Transcript of May 27, 2013 hearing

Letter from the Tribunal to the CCJA dated June 3, 2014

Email from the CCJA to the Tribunal dated May 19, 2014

Letter from the Tribunal to the Parties dated April 22, 2013

Email from the Tribunal to the Parties dated May 6, 2013

Letter from the Tribunal to the Parties dated May 10, 2013

Email from the Tribunal to the Parties dated May 23, 2013

Email from the Tribunal to Guinea's counsel dated June 25, 2013

Email from Guinea's counsel to the Tribunal dated June 28, 2013

CCJA Decision dated August 1, 2013

Letter from the Tribunal to the Parties dated April 30, 2014

Letter from the CCJA to Mr. Fischer dated May 20, 2014

Letter from Getma's counsel to the CCJA dated May 23, 2014

CCJA Decision dated March 12, 1999

Witness statement of Mr. Sory Camara

Letter from Getma's counsel to the tribunal dated May 30, 2013

Email from the Tribunal to Guinea's counsel dated September 5, 2013

Email from Mr. Fischer to the Tribunal dated September 6, 2013

Composition of the CCJA

Excerpt from Call for Tenders for the Award of a Concession for the Container Terminal of the Port of Conakry

Decision of the Paris Court of Appeals dated March 4, 2014

P.-G. Pougoué, Arbitration in the OHADA Zone

G. Kenfack Douajni, The Notion of International Public Policy in OHADA Arbitration