# **<u>EXHIBIT 36</u>**



REPUBLIQUE DE GUINEE
Travail - Justice - Solidarité

Conakry, le **1 3 DEC. 2013** ...........................201......

**PRESIDENCE DE LA REPUBLIQUE**
*L'AGENCE JUDICIAIRE DE L'ETAT*

**L'AGENT JUDICIAIRE DE L'ETAT**

A Re 13-12-2013
Cons à tié Soo

N° **0365** ............................../PRG/AJE/201.......

*A MONSIEUR LE PROCUREUR DE LA REPUBLIQUE*
*PRES LE TRIBUNAL DE PREMIERE INSTANCE DE CONAKRY*

---

**PLAINTE CONTRE PERSONNES DENOMMEES DES CHEF DE CORRUPTION ET TRAFIC D'INFLUENCE**

---

**L'Etat Guinéen**, représenté par l'Agent Judiciaire de l'Etat

### A l'honneur de vous exposer ce qui suit :

La présente plainte déposée par **l'Etat Guinéen** (l'« Etat ») porte sur les conditions dans lesquelles la société de droit français **Getma International SAS** (« Getma ») a obtenu en 2008 la concession du terminal à conteneurs de Port de Conakry.

Cette concession a été attribuée à Getma dans des conditions manifestement irrégulières qui ont permis de masquer des agissements frauduleux de Getma et ses représentants, lesquels sont susceptibles de constituer les délits de corruption et trafic d'influence.

1. <u>**Historique de la signature de la convention de concession**</u>

Le 13 février 2008, l'Etat a émis un appel d'offre en vue de concéder le terminal à conteneurs du Port Autonome de Conakry (« PAC »). Sur neuf candidats qui ont manifesté leur intérêt au départ, seuls quatre offres ont été retenues. Getma a finalement été sélectionnée.

Dès le lendemain de sa signature, la Convention a été dénoncée par les représentants du PAC, qui ont sollicité son annulation lors d'une session extraordinaire des 31 décembre 2008 et 2 janvier 2009. Quelques jours avant son décès le Président Lansana Conté avait sollicité la suspension de la Convention pour réexamen.

Sous le gouvernement provisoire du capitaine Dadis Camara, la Convention a été suspendue entre janvier et avril 2009. Le 7 novembre 2009, la Convention a été modifiée par un Avenant n°1. Au lieu de rééquilibrer les termes de la Convention, cet avenant a eu pour effet de favoriser encore davantage les intérêts de Getma.

Lors d'une session extraordinaire du Conseil d'administration du PAC en date du 11 février 2011, le PAC a sollicité une nouvelle fois la résiliation de la Convention, auprès du nouveau Président démocratiquement élu en décembre 2010, Monsieur Alpha Condé .

Par un Décret en date du 8 mars 2011, le Président de la République a résilié la Convention pour manquement du concessionnaire à ses obligations.

Par la suite il a été découvert que Getma avait obtenu la concession au Terminal à conteneurs du port de Conakry au moyens d'acte frauduleux, dans le contexte d'une procédure d'attribution émaillée de nombreuses irrégularités.

## 2.   **Les irrégularités dans l'attribution de la concession**

### (i)   *La mise à l'écart de l'Administration et Contrôle des Grands Projets*

L'Administration et Contrôle des Grands Projets (ACGP) n'a pas participé à l'élaboration et à l'approbation du Dossier d'Appel d'Offres, en violation de ses attributions conférées par le Décret n° D/2000/071/PRG/SGG du 24 août 2000.

En outre, en sa qualité de rapporteur de la Commission Nationale des Grands Marchés, l'ACGP aurait dû normalement abriter les séances d'ouverture et d'analyse des offres ainsi que les travaux de négociation et d'élaboration des conventions. En l'espèce, elle a été totalement écartée du processus d'appel d'offres. Toutes ces activités se sont déroulées au seul niveau du Maître d'Ouvrage (Ministère des Travaux Publics).

### (ii)   *La mise à l'écart du Port Autonome de Conakry (PAC)*

Aux termes du Décret 051/PRG/SGG/88, le PAC est le dépositaire foncier légal de l'ensemble du domaine public maritime et terrestre mis à sa disposition, ce qui comprend notamment le terminal à conteneurs du port de Conakry. Le PAC aurait dû à ce titre jouer un rôle prépondérant dans le processus d'attribution de la concession.

Or le PAC a été complètement marginalisé et mis en minorité tant dans la composition de la Commission d'évaluation des offres que dans celle de l'équipe de négociation de la Guinée. La mise à l'écart du PAC constitue une violation des attributions qui lui sont conférées par le Décret n° D/2000/071/PRG/SGG du 24 août 2000 ainsi des pratiques en matière d'attribution de concessions portuaires.

En outre, il appartenait au PAC de signer la Convention en qualité de concédant. La mise à l'écart du PAC a été totale puisque c'est le Ministre des transports qui a signé la Convention pour le compte de l'Etat Guinéen, alors qu'il n'avait pas qualité pour le faire.

### (iii)   *Les conditions anormales de négociation*

La bonne pratique dans les procédures d'attribution des marchés publics veut que l'entité qui désigne l'adjudicataire soit distincte de celle qui négocie ensuite les termes de la convention à conclure. Or en l'espèce, la Commission d'évaluation des offres qui avait désigné l'adjudicataire a été reconduite pour élaborer et négocier la Convention avec la société qu'elle avait elle-même choisie.

Les négociations, dont le PAC a été soigneusement écarté, ont été menées à huis clos, en l'espace de seulement deux semaines, par la même entité que celle qui avait déjà retenu la candidature de Getma au stade de l'appel d'offres.

Elles ont conduit à la signature d'une Convention de concession accordant des avantages exorbitants à Getma, avec en particulier une exonération d'impôt sur les sociétés pendant quasiment toute la durée de la Convention (25 ans).

De plus, le Directeur Général du PAC, M. Mamadoubha Sankon, qui avait été exclu des négociations, avait sollicité un audit de la convention par le cabinet FFA Ernst & Young. Dans un avis juridique du 11 septembre 2008, celui-ci souligne :

> « *En cumulant la phase d'investissement et la phase d'exploitation, le Concessionnaire bénéficiera d'un régime fiscal et douanier retenu privilégié et exonéré d'impôt sur les sociétés pendant quasiment toute la durée de la convention, soit vingt-cinq 25 ans.*
>
> *Cette situation ne nous semble pas avantageuse pour le Concédant et constitue à nos yeux une clause léonine* ».

Pourtant il n'a été tenu aucun compte de cet avis et la Convention signée le 22 septembre 2008 a conservé l'intégralité des avantages exorbitants octroyés à Getma.

## 3.   La découverte de faits de corruption

Lors de l'attribution de la Convention de concession, un certain nombre d'articles de presse ont dénoncé des faits de corruption qui ont permis à Getma d'obtenir la concession contre des concurrents ayant une expérience et une capacité financière largement supérieure à la sienne.

Dans le cadre de la procédure d'arbitrage opposant l'Etat Guinéen à Getma International à la suite de la résiliation de la Convention, le cabinet Orrick, conseil de la République de Guinée, a mandaté M. Steven Fox, Directeur Général de la société Veracity Worldwide LLC pour enquêter sur les conditions dans lesquelles la concession du Terminal à conteneurs du port de Conakry a été octroyée à Getma en 2008.
M. Steven Fox est un spécialiste reconnu des questions de lutte contre la corruption. La société qu'il dirige a effectué plus de 850 missions incluant des investigations complexes.

Le 14 novembre 2013, M. Steven Fox a rendu une attestation portant sur le résultat des investigations réalisées sur les conditions d'octroi à Getma de la concession du Terminal à conteneurs du port de Conakry en 2008. Cette attestation, annexée à la présente plainte, fournit des informations précises et circonstanciées qui mettent nommément en cause les personnes ayant participé aux faits de corruption, avec les montants perçus pour chacun.

La corruption aurait été orchestrée par le représentant de Getma, M. Richard Talbot, qui occupait alors les fonctions de Président Directeur Général de la société NCT Necotrans.

Son représentant en Guinée chargé de mettre en œuvre la corruption était M. Gamal Challoub, Directeur Général de la société TRANSCO S.A. En contrepartie de ses services, Monsieur Chaloub devait se voir attribuer 35 % du capital de la société d'exploitation du terminal. Il a été exclu de cette société à la suite d'un différend ultérieur avec Getma.

3

M. Talbot aurait fourni à M. Challoub un budget d'un montant total de 3,3 millions US$ avec des fonds provenant d'un compte ouvert à Zoug en Suisse.

Sur ces fonds, les paiements suivants auraient été effectués par M. Challoub :

- 1 million de US$ au Ministre des transports de l'époque, M. Mohamed Cheickh Touré.
- 200.000 US$ au Ministre de l'Economie et des Finances de l'époque, M. Ousmane Doré.
- Six des huit membres de la Commission d'évaluation des offres ont reçu un montant de 100.000 US$ chacun :
  - M. Ansoumane Camara (DNMP/MEF)
  - M. Demba Kourouma (ACGP/PRG)
  - M. Ibrahima Lamizana Condé (DNPIP/MPC)
  - M. Saifoulaye Barry (DNPPE/MEF)
  - M. Mohamed Check Fofana (DNMM/MT)
  - M. Mamadou Diallo (BEP/MT)
- Le solde, soit 1,5 millions US$ aurait été distribué à d'autres personnes qui ont eu une influence dans la décision d'octroyer la concession à Getma.

## 4. <u>Les délits de corruption et trafic d'influence sont constitués</u>

Si l'enquête démontre que les faits susvisés sont avérés, ils seraient susceptibles de constituer les délits de corruption et de trafic d'influence, prévus et réprimés aux articles 191 et suivants du Code pénal de la République de Guinée.

Le délit de corruption est prévu par l'article 191 du Code pénal de la République de Guinée qui dispose :

> « *La corruption est une infraction dite passive lorsqu'elle résulte du fait par une personne d'être corrompue, et active lorsqu'elle résulte du fait de corrompre* ».

En ce qui concerne la <u>corruption passive</u>, l'article 192 du Code pénal de la République de Guinée dispose :

> « *Sera puni d'un emprisonnement de 1 à 5 ans et d'une amende double de la valeur des promesses agréées ou des choses reçues ou demandées sans que ladite amende puisse être inférieure à 100.000 francs guinéens, quiconque aura sollicité ou agréé des offres ou promesses, sollicité ou reçu des dons ou présents pour :*
>
> *1 - Etant investi d'un mandat électif, fonctionnaire public de l'ordre administratif ou judiciaire, militaire ou assimilé, agent ou préposé d'une Administration publique ou citoyen chargé d'un ministère de service public, faire ou s'abstenir de faire un acte de ses fonctions ou de son emploi, juste ou non, mais non sujet à salaire ;*
> *2 - Etant arbitre ou expert nommé soit par le Tribunal, soit par les parties, rendre une décision ou donné une opinion favorable ou défavorable à une partie ;*

*3 - Etant Médecin, Chirurgien, Dentiste, Sage-femme, certifier faussement ou dissimuler l'existence de maladies ou d'infirmité ou un état de grossesse ou fournir des indications mensongères sur l'origine d'une maladie ou infirmité ou la cause d'un décès ».*

En ce qui concerne la <u>corruption active</u>, l'article 194 du Code pénal de la République de Guinée dispose que:

« ***Quiconque, pour obtenir****, soit **l'accomplissement** ou l'abstention **d'un acte**, soit une des faveurs ou un des avantages prévus aux articles 192 et 193 aura usé des voies de fait ou menaces, de promesses, offres, dons ou présents ou cédé à des sollicitations tendant à la corruption, même s'il n'en a pas pris l'initiative sera, **que la contrainte ou la corruption ait ou non produit son effet, puni des mêmes peines que celles prévues auxdits articles contre la personne corrompue** ».*

Enfin l'article 195 du Code pénal de la République de Guinée relatif au <u>trafic d'influence</u> dispose :

*« Sera punie d'un emprisonnement de 1 à 5 ans et de l'amende prévue par le premier alinéa de l'article 192 toute personne qui aura sollicité ou agréé des offres ou promesses, sollicité ou reçu des dons ou présents pour faire obtenir ou tenter de faire obtenir des décorations, médailles, distinctions ou récompenses, des places, fonctions ou emplois ou des faveurs quelconques accordées par l'Autorité publique, des marchés, entreprises ou autres bénéfices résultant de traités conclus avec l'Autorité publique ou avec l'Administration placée sous le contrôle de la puissance publique ou, de façon générale, une décision favorable d'une telle Autorité ou Administration et aura ainsi abusé d'une influence réelle ou supposée. Toutefois, lorsque le coupable est une des personnes visées au paragraphe premier du premier alinéa de l'article 192 et qu'il a abusé de l'influence réelle ou supposée que lui donne son mandat ou sa qualité, la peine d'emprisonnement sera de 2 à 10 ans ».*

\*

\*   \*

En conséquence, l'Etat Guinéen est bien fondé à déposer plainte entre vos mains des chef de corruption et trafic d'influence, délits prévus et réprimé par les articles 191 et suivants du Code pénal de la République de Guinée contre :

- M. Gamal Challoub

- M. Mohamed CheickhTouré

- M. Ousmane Doré

- M. Ansoumane Camara

- M. Demba Kourouma

- M. Ibrahima Lamizana

- M. Saifoulaye Barry

- M. Mohamed Check Fofana (DNMM/MT)
- M. Mamadou Diallo (BEP/MT)

Ainsi que contre toute personne dont l'enquête relèvera qu'elle est intervenue, comme auteur ou comme complice dans le cadre des faits susvisés.

Fait à Conakry, le 13 décembre 2013

**Pour l'Etat Guinéen**
**M. Goureissy Sow, Agent Judiciaire de l'Etat**

**Pièce jointe à la plainte :**

Attestation de M. Steven Fox et traduction en français

6

# Translation

**Translation of "Plainte contre personnes dénommées des chef de corruption et trafic d'influence"**



**PRESIDENCY OF THE REPUBLIC**
*STATE JUDICIAL AGENCY*

No. [stamp: 0365] / PRG/AJE201....

REPUBLIC OF GUINEA
Work – Justice – Solidarity

Conakry, the [stamp: 13 DEC. 2013] 201....

**THE STATE JUDICIAL AGENT**

[handwritten: 13-12-2013]
[handwritten: [illegible] = 588]

*To the State Prosecutor for the District Court of Conakry [Stamp: Court of Appeals of Conakry – RG – District Court of Kaloum]*

---

## COMPLAINT AGAINST NAMED PERSONS ON COUNTS OF CORRUPTION AND INFLUENCE PEDDLING

---

**The Government of Guinea,** represented by the State Judicial Agent

### Has the honor of setting forth the following:

This complaint filed by the **Government of Guinea** (the "**Government**") relates to the circumstances under which the French company **Getma International SAS** ("**Getma**") obtained the Port of Conakry container terminal concession in 2008.

Getma was awarded the concession under circumstances that were clearly illegal and masked the fraudulent actions of Getma and its representatives, which may constitute the crimes of corruption and influence peddling.

**1.    History of the Concession Agreement**

On 13 February 2008, the Government issued a call for tenders to award a concession for the container terminal at the Port of Conakry ("PAC"). Of the nine candidates indicating interest at the start, only four bids remained following the tender process. Getma was finally selected.

Beginning the day after it was signed, the PAC's representatives objected to the Agreement. They sought to have it annulled at an extraordinary meeting held on 31 December 2008 and 2 January 2009. A few days before his death, President Lansana Conté had sought a suspension of the Agreement for reexamination.

Under the provisional government of Captain Dadis Camara, the Agreement was suspended between January and April of 2009. On 7 November 2009, the Agreement was modified by Amendment No. 1. Instead of reestablishing balance in the terms of the Agreement, the amendment had the effect of favoring Getma's interests even more.

At an extraordinary meeting of the PAC's Board of Directors on 11 February 2011, the PAC sought once again to terminate the Agreement, this time petitioning Mr. Alpha Condé, the new President democratically elected in December 2010.

By decree dated 8 March 2011, the President of the Republic terminated the Agreement for the breach by the concessionaire of its obligations.

Later, it was discovered that Getma had obtained the Port of Conakry container terminal concession through acts of fraud, in a tender process that was filled with numerous irregularities.

**2.       The Irregularities in the Award of the Concession**

*(i)       The sidelining of the* Administration et Contrôle des Grands Projets [*Major Projects Administration and Control Office]*

The *Administration et Contrôle des Grands Projets* [Major Projects Administration and Control Office] (ACGP) did not participate in the drafting and approval of the Call for Tenders, in violation of the mission conferred on it by Decree No. D/2000/071/PRG/SGG dated 24 August 2000.

Moreover, in its capacity as rapporteur of the *Commission Nationale des Grands Marchés* [National Large Contract Commission], the AGCP should have hosted the sessions at which the bids were opened and evaluated, as well as the negotiation and drafting of the agreements. Instead, it was totally excluded from the tender process. All of these activities took place at the level of the Contracting Authority (the Ministry of Public Works).

*(ii)       The sidelining of the Autonomous Port of Conakry (PAC)*

Pursuant to the terms of Decree 051/PRG/SGG/88, the PAC is the legal property custodian for all of the public land and waters made available to it, including the container terminal of the Port of Conakry. As such, the PAC should have played a preponderant role in the process of awarding the concession.

Instead, the PAC was completely marginalized and placed in the minority, with respect to both the composition of the Bid Evaluation Commission and the composition of Guinea's negotiating team. The sidelining of the PAC constitutes a violation of the mission conferred on it by Decree D/2000/071/PRG/SGG dated 24 August 2000, as well as of standard practices in the awarding of port concessions.

Moreover, the PAC should have signed the Agreement in its capacity as grantor of the concession. The sidelining of the PAC was complete, as the Minister of Transportation signed the Agreement on behalf of the Government of Guinea, despite lacking the authority to do so.

*(iii)       The abnormal conditions under which the Agreement was negotiated*

Good practices in procedures for awarding government contracts require the entity that selects the contractor to be separate from the entity that negotiates the terms of the agreement. Here, however, the Bid Evaluation Commission, which had selected the contractor, was reconvened to draft and negotiate the Agreement with the company that it had itself chosen.

2

The negotiations, from which the PAC was carefully excluded, were conducted behind closed doors, in the space of a mere two weeks, by the same entity that had selected Getma at the stage of the call for tenders.

The negotiations led to the signature of a Concession Agreement that granted exorbitant benefits to Getma, including an exemption from the corporation tax for nearly the entire term of the Agreement (25 years).

Furthermore, the Pac's Managing Director, Mr. Mamadoubha Sankon, who had been excluded from the negotiations, had asked FFA Ernst & Young to conduct an audit of the Agreement. In a legal opinion dated 11 September 2008, the auditing firm noted:

> *"By combining the investment and operational phases, the Concessionaire will benefit from a privileged tax and customs regime and will be exempt from the corporation tax for nearly the entire term of the agreement, which is 25 years.*
>
> *This situation does not seem to us to be beneficial for the Grantor of the concession, and in our view constitutes an unconscionable clause."*

However, this opinion was not heeded, and the Agreement signed on 22 September 2008 retained all of the exorbitant benefits granted to Getma.

3.     <u>The Discovery of the Acts of Corruption</u>

At the time that the Concession Agreement was awarded, a number of articles in the press reported that Getma had obtained the concession through acts of corruption, winning the award against competitors with much greater experience and financial capacities.

In connection with the arbitration between the Government of Guinea and Getma International following the termination of the Agreement, Orrick, the law firm acting as counsel to the Republic of Guinea, hired Mr. Steven Fox, the CEO of Veracity Worldwide LLC, to investigate the circumstances surrounding the 2008 decision to award Getma the concession for the Port of Conakry container terminal.  Mr. Fox is a well-known expert in the anti-corruption field. His company has conducted more than 850 assignments, including complex investigations.

On 14 November 2013, Mr. Fox delivered a statement on the results of his investigation into the circumstances surrounding the award of the concession for the Port of Conakry container terminal to Getma in 2008. That statement, which is attached as an annex to this complaint, provides specific and detailed information, including the names of people who participated in the acts of corruption and the amounts received by each.

The corruption is alleged to have been orchestrated by Getma's representative, Mr. Richard Talbot, who served at the time as Chairman and CEO of NCT Necotrans.

Mr. Gamal Challoub, CEO of TRANSCO S.A., was Mr. Talbot's representative in Guinea, charged with carrying out the bribes. In return for his services, Mr. Chaloub was supposed to receive 35% of the share capital of the terminal's operating company. However, he was excluded from the company following a later dispute with Getma.

Mr. Talbot is alleged to have provided Mr. Challoub with a total budget of USD 3.3 million, with funds originating in an account in Zoug, Switzerland.

Mr. Challoub is alleged to have made the following payments out of these funds:

- USD 1 million to the then-Minister of Transportation, Mr. Mohamed Cheickh Touré.

- USD 200,000 to the then-Minister of the Economy and Finances, Mr. Ousmane Doré.

- Six of the eight members of the Bid Evaluation Commission received USD 100,000 each:

    – Mr. Ansoumane Camara (DNMP/MEF)

    – Mr. Demba Kourouma (ACGP/PRG)

    – Mr. Ibrahima Lamizana Condé (DNPIP/MPC)

    – Mr. Saifoulaye Barry (DNPPE/MEF)

    – Mr. Mohamed Check Fofana (DNMM/MT)

    – Mr. Mamadou Diallo (BEP/MT)

- The remaining USD 1.5 million is alleged to have been distributed to other people with the ability to influence the decision to award the concession to Getma.

**4.    The Elements of the Crimes of Corruption and Influence Peddling Have Been Satisfied**

If the investigation were to show that the above-referenced acts took place, they would constitute the crimes of corruption and influence peddling as set forth and made punishable in Articles 191 et seq. of the Penal Code of the Republic of Guinea.

The crime of corruption is described in Article 191 of the Penal Code of the Republic of Guinea, which provides as follows:

> "***Corruption is an infraction*** *that includes passive corruption, which applies to the person being corrupted, and* ***active corruption, which applies to the person who corrupts the other.***"

With respect to <u>passive corruption</u>, article 192 of the Penal Code of the Republic of Guinea provides as follows:

> "*A person who solicits or accepts offers or promises, or who solicits or accepts donations or gifts, as set forth below shall be punished by imprisonment of 1 to 5 years and a fine equal to twice the value of the promises accepted or items received or requested, provided, that such fine may not be lower than GNF 100,000:*
>
> *1 – A holder of an elected office, a public official in the administrative, judicial, military or related branches, or an appointee as an agent or representative of an executive department or as a citizen charged with a public ministry, who performs or refrains from performing any act within his duties or employment, whether justly or not, but not subject to salary;*
> *2 – An arbitrator or Court-appointed or party-appointed expert who renders a decision or gives an opinion that is favorable or unfavorable to a party;*

4

> *3 – A Doctor, Surgeon, Dentist, or Midwife who falsely certifies or hides the existence of illness, infirmities or a pregnancy, or who provides false information about the origin of an illness or infirmity or about the cause of a death."*

With respect to <u>active corruption</u>, Article 194 of the Penal Code of the Republic of Guinea provides a follows:

> *"**Whosoever, in order to induce** a person either **to perform** or to refrain from performing **an act**, or to **obtain** one of the favors or benefits set forth in Articles 192 and 193, shall have used assault or threats, promises, offers, donations or gifts or shall have acceded to solicitations to engage in corruption, even if he did not take the initiative, **and whether or not the coercion or corruption shall or shall not have produced its effect, shall be incur the same penalties as those provided for in such Articles against the person who was corrupted.**"*

Finally, Article 195 of the Penal Code of the Republic of Guinea relative to <u>influence peddling</u> provides as follows:

> *"Any person who shall have solicited or accepted offers or promises, solicited or received donations or gifts to obtain or attempt to obtain decorations, medals, distinctions or rewards, placements, positions or employment or any favors whatsoever granted by the public authorities, or any contracts, businesses or other benefits resulting from agreements entered into with the public authorities or with the administrative department under the control of the public authorities, or, more generally, a favorable decision from such authority or department and who shall have thus abused his real or presumed influence, shall be punished by imprisonment of 1 to 5 years and the fine provided for in the first section of Article 192. However, where the guilty party is one of the persons referred to in the first paragraph of the first section of Article 192 and such person has abused his real or presumed influence pursuant to his office or capacity, the term of imprisonment shall be from 2 to 10 years."*

\*

\*   \*

As a result, the Government of Guinea has grounds to file a complaint before you on charges of corruption and influence peddling, crimes that are set forth and sanctioned by Articles 191 et seq. of the Penal Code of the Republic of Guinea, against the following persons:

- Mr. Gamal Challoub

- Mr. Mohamed Cheick Touré

- Mr. Ousmane Doré

- Mr. Ansoumane Camara

- Mr. Demba Kourouma

- Mr. Ibrahima Lamizana

- Mr. Saifoulaye Barry

-      Mr. Mohamed Check Fofana (DNMM/MT)

-      Mr. Mamadou Diallo (BET/MT)

As well as against any person who may be revealed by the investigation to have participated as a principal or an accomplice in connection with the above-referenced acts.

Made in Conakry, 13 December 2013

                    [stamp: Republic of Guinea – Presidency of the Republic – State Judicial Agent]

[Signature]

_____
**For the Government of Guinea**
**Mr. Goureissy Sow, State Judicial Agent**

**Annex to the complaint:**

Statement of Mr. Steven Fox and translation into French

6

# Certification

**Jennifer Bader**
**ATA Certified Translator FR>EN**
**CLASS Translations, LLC**
**3305 Labyrinth Road**
**Baltimore, MD 21215**
**1-443-739-7823**

<u>CERTIFICATE OF ACCURACY</u>

I, Jennifer Bader, hereby certify that I translated the documents listed in <u>Annex A</u> attached hereto from French into English and that, to the best of my ability, they are true and correct translations. I further certify that I am competent in both French and English to render and certify such translations.

*Jennifer Bader*
Jennifer Bader

*Victoria Denise Byrne*
Notary Public

VICTORIA DENISE BYRNE
NOTARY PUBLIC STATE OF MARYLAND
My Commission Expires July 28, 2018

march, 02, 2015

Annex A

List of Documents

Email from CCJA to Tribunal dated May 19, 2014

Minutes from the PAC December 31, 2009 and January 2, 2009 Meeting

Getma Financial Offer

July 23 2014 Petition to Challenge Validity

Minutes from the initial arbitral proceeding dated March 12, 2012

Transcript from the July 8, 2013 hearing

Letter from Guinea's counsel to the Tribunal dated November 4, 2013

Complaint against named persons on counts of corruption and influence peddling

Letter from Guinea's counsel to the Tribunal dated December 14, 2013

Witness statement of Mr. Demba Kourouma

Witness statement of Mr. Ibrahima Laminzana Conde

Tribunal Procedural Order dated November 7, 2013

Tribunal Procedural Order dated December 2, 2013

Letter from Guinea's counsel to Getma's counsel dated December 16, 2013

Transcript from December 16, 2013 hearing

Tribunal Procedural Order dated January 8, 2014

Letter from Guinea's counsel to the Tribunal dated January 15, 2014

Letter from the Tribunal to the Parties dated March 17, 2014

CCJA Decision dated October 3, 2013

Transcript of May 27, 2013 hearing

Letter from the Tribunal to the CCJA dated June 3, 2014

Email from the CCJA to the Tribunal dated May 19, 2014

Letter from the Tribunal to the Parties dated April 22, 2013

Email from the Tribunal to the Parties dated May 6, 2013

Letter from the Tribunal to the Parties dated May 10, 2013

Email from the Tribunal to the Parties dated May 23, 2013

Email from the Tribunal to Guinea's counsel dated June 25, 2013

Email from Guinea's counsel to the Tribunal dated June 28, 2013

CCJA Decision dated August 1, 2013

Letter from the Tribunal to the Parties dated April 30, 2014

Letter from the CCJA to Mr. Fischer dated May 20, 2014

Letter from Getma's counsel to the CCJA dated May 23, 2014

CCJA Decision dated March 12, 1999

Witness statement of Mr. Sory Camara

Letter from Getma's counsel to the tribunal dated May 30, 2013

Email from the Tribunal to Guinea's counsel dated September 5, 2013

Email from Mr. Fischer to the Tribunal dated September 6, 2013

Composition of the CCJA

Excerpt from Call for Tenders for the Award of a Concession for the Container Terminal of the Port of Conakry

Decision of the Paris Court of Appeals dated March 4, 2014

P.-G. Pougoué, Arbitration in the OHADA Zone

G. Kenfack Douajni, The Notion of International Public Policy in OHADA Arbitration