# **EXHIBIT 5 –  Part 1**

# GETMA INTERNATIONAL
## c. /
## ETAT GUINEEN
## CCJA (OHADA) n° 001/2011/ARB
## PROCES VERBAL DE LA REUNION DU 12 mars 2012

Personnes Présentes:

Maître Cédric FISCHER

Maître Elisabeth MAHE

Maître Tiago DUARTE

Conseils de la Société GETMA INTERNATIONAL, Demanderesse

M. Jean-Daniel LITTLER, Directeur Juridique du Groupe NTC NECOTRANS

Maître Laurent JAEGER

Maître Romain SELLEM

Conseils de l'Etat Guinéen, Défendeur.

Monsieur le Professeur Ibrahim FADLALLAH, Président du Tribunal Arbitral.

Monsieur Eric TEYNIER, Arbitre

Monsieur Juan Antonio CREMADES, Arbitre

Me Marie SFEIR SLIM, Secrétaire du Tribunal Arbitral

(Feuille de présence en annexe)

Cet arbitrage est régi par les dispositions du Titre IV du Traité de l'OHADA, le Règlement d'arbitrage de la Cour Commune de Justice et d'Arbitrage de l'OHADA du 11 mars 1999, le Règlement intérieur de la Cour, leurs annexes et le barème des frais d'arbitrage dans leur rédaction en vigueur au 10 mai 2011 (art 10.1 du Règlement).

Le présent procès-verbal est établi en conformité avec l'article 15 du Règlement de la Cour Commune de Justice et d'Arbitrage (CCJA) de l'OHADA du 11 mars 1999.



1

## I - Noms et Adresses des Parties

## [1] Demanderesse

La Société GETMA INTERNATIONAL

SAS au capital de 16.000.000.00 €, immatriculée au Registre du commerce et des Sociétés  RCS de Paris le 6 mars 1991, sous le n° B 350 701 272,  dont le siège est sis au 40, Avenue George V, 75008, Paris

Ci-après dénommée la « Demanderesse » ou « GETMA »

Assistée et représentée par :

Maître Cédric Fischer

Maître Elisabeth Mahé,

FISCHER, TANDEAU DE MARSAC, SUR & ASSOCIES

67, Bd Malesherbes,

75008, Paris

France

Tél : +33 (0) 1 47 23 47 24

E-mails : cfischer@ftms-a.com

emahe@ftms-a.com


Et


Maître José Miguel JUDICE

Maître Tiago DUARTE

PLMJ A.M. PEREIRA, SARAGGA LEAL, OLIVEIRA MARTINS, JUDICE e ASSOCIADOS, RL

Avenida da Liberdade,

224, 1250-148, Lisbonne,

Portugal

Tel: + 351 213 197 300

Fax: + 351 213 197 400

E-mails : josemiguel.judice@plmj.pt

tiago.duarte@plmj.pt


## [2] Défendeur

L'ETAT GUINEEN

Représenté par l'Agent Judiciaire de l'Etat, faisant élection de domicile au :

BP 1005, Conakry, République de Guinée


Ci-après dénommé le « Défendeur » ou « LA GUINEE »

Assisté et représenté par :


Maître Pascal AGBOYIBOR

Maître Laurent JAEGER

Maître Romain SELLEM

Cabinet ORRICK RAMBAUD MARTEL

31, Avenue Pierre 1$^{er}$ de Serbie

75782, Paris, Cedex 16

France.

Tel: +33 1 53 53 75 00

Fax: + 33 1 53 53 75 01

pagboyibor@orrick.com

ljaeger@orrick.com

rsellem@orrick.com


Maître Mamadou TRAORE

Maître Edasso Rodrigue BAYALA,

Cabinet d'Avocats MAMADOU S. TRAORE

11 Place Naba Koom.

11 BP 721 CMS Ouagadougou

3

BURKINA FASO
Tel: (00226) 50 31 62 79
Fax: (00226) 50 31 62 67
E-mail : rodensi@yahoo.fr

Le Tribunal arbitral a reçu les pouvoirs des deux Parties.

## II - Clause d'arbitrage et antécédents de la procédure

[3] Le présent arbitrage est né d'un litige lié à une Convention de Concession conclue entre la société GETMA INTERNATIONAL et L'Etat Guinéen, représenté par le Ministre des Transports et le Ministre de l'Economie et des Finances le 22 septembre 2008 dont l'objet est la concession du service public de gestion et d'exploitation du Terminal à conteneurs du port de Conakry pour une durée de 25 ans et par l'Avenant n°1 à ce contrat en date du 7 novembre 2009.

[4] Sur la base de cette Convention de Concession, la société GETMA INTERNATIONAL a introduit une demande d'arbitrage en date du 10 mai 2011 à l'encontre de l'ETAT GUINEEN. Le Secrétariat de la Cour Commune de Justice et d'Arbitrage de l'OHADA en a accusé réception le 10 mai 2011.

[5] Cette demande est fondée sur l'article 31 de la Convention de Concession, intitulé « Règlement des différends et litiges ».

L'article 31 stipule:

« *La présente clause survivra à la résiliation de la convention.*

*Le traité OHADA et ses actes uniformes subséquents s'appliquent à la présente convention.*

*Tout différend ou litige découlant de la présente convention ou de ses avenants sera réglé à l'amiable.*

4

A défaut d'un règlement amiable dans les 3 (trois) mois suivant la contestation, les Parties pourront recourir à l'arbitrage de la manière stipulée ci-après :

Le grief, différend ou litige sera tranché définitivement et irrévocablement aux termes d'une procédure arbitrale soumise au Règlement d'arbitrage de la Cour Commune de Justice et d'Arbitrage OHADA (« le Règlement d'arbitrage CCJA »).

La commission arbitrale sera composée de 3 (trois) arbitres, l'un désigné par le Concédant, le second par le Concessionnaire, et le troisième d'un commun accord par les deux arbitres. Si une Partie ne nomme pas un arbitre dans un délai de trente (30) jours à compter de la réception d'une demande à cette fin émanant de l'autre Partie, ou si les deux arbitres ne s'accordent pas sur le choix du troisième arbitre dans un délai de trente (30) jours (à compter de la désignation la plus tardive des deux), la Cour Commune de Justice et d'Arbitrage se substituera aux Parties conformément au Règlement d'arbitrage CJCA.

Chacune des Parties supportera le coût de l'arbitre qu'elle désigne. Les autres coûts engendrés par l'arbitrage seront partagés à égalité entre les Parties.

L'arbitrage sera conduit en langue française à Abidjan, République de Côte d'Ivoire.

L'Autorité Concédante renonce expressément à se prévaloir pour elle-même et pour ses biens de toute immunité souveraine afin de faire échec à l'exécution d'une sentence rendue par une commission arbitrale constituée conformément à la présente clause ».


### III - Constitution du  Tribunal Arbitral

[6] Le Tribunal arbitral a été constitué comme suit :

Dans la demande d'arbitrage, en date du 10 mai 2011, la Demanderesse a désigné comme arbitre :

Monsieur Juan Antonio CREMADES
Calle Antonio Maura, N°10

28014, Madrid,

Espagne

Tel : +34 915 316 949

Fax : +34 915 212 582

E-mail : jac@jacremades.com


Le Défendeur a désigné comme arbitre :


Monsieur Eric TEYNIER

SCP Teynier, Pic & Associés

56, rue de Londres

75008, Paris

France

Tel : +33 1 53 45 97 00

Fax : +33 1 40 15 01 08

E-mail : eric.teynier@teynier.com


Par la décision n° 65/2011 en date du 28 novembre 2011, la Cour Commune de Justice et d'Arbitrage de l'OHADA a confirmé la désignation de M. Juan Antonio Cremades par la société GETMA INTERNATIONAL. Elle a également confirmé la désignation de M. Eric Teynier par l'Etat de la Guinée par la décision n°68/2011 en date du 7 décembre 2011.


[7] Le 25 janvier 2012, la Cour Commune de Justice et d'Arbitrage de l'OHADA, par la décision n°001/2012  a confirmé Monsieur le Professeur Ibrahim Fadlallah, dans les fonctions de Président du Tribunal arbitral, sur désignation conjointe des co-arbitres.


Monsieur Le Professeur Ibrahim Fadlallah

61, rue la Boétie

75008, Paris

Tel: 01 40 76 00 40

6

Fax: 01 40 76 02 50

ibrahim.fadlallah@wanadoo.fr

[8] Le Secrétariat de la Cour Commune de Justice et d'Arbitrage de l'OHADA a transmis le dossier de l'affaire au Président du Tribunal arbitral et aux arbitres par courrier en date du 27 janvier 2012.

[9] Par courrier en date du 27 janvier 2012, la Cour Commune de Justice et d'Arbitrage de l'OHADA a informé les Parties que le Tribunal Arbitral déjà constitué a été saisi du dossier, en application des dispositions de l'alinéa 2 de l'article 8 du Règlement d'arbitrage de la Cour Commune de Justice et d'Arbitrage de l'OHADA.

[10] Par la signature de ce procès-verbal, les arbitres confirment qu'ils acceptent leur mission.

[11] Par la signature de ce procès-verbal, les Parties confirment la régularité de la composition et de la saisine du Tribunal arbitral.

## IV - Secrétaire du Tribunal

[12] Les Parties confient au Président du Tribunal arbitral le soin de désigner, à sa convenance, un Secrétaire du Tribunal Arbitral. Celui-ci a désigné Me Marie SFEIR SLIM et en a informé les Parties, qui n'ont exprimé aucune objection.

## V - Notifications et communications

[13] Toutes notifications et communications écrites relatives au présent arbitrage devront être envoyées simultanément à chacune des Parties et au Tribunal Arbitral par e-mail. Celui-ci sera confirmé par un accusé de réception électronique. Toutefois, pour les mémoires et les pièces jointes, la communication devra avoir lieu par e-mail (en formats WORD et PDF) et par courrier avec accusé de réception, ou par courrier spécial (porteur).

[14] Les communications tardives peuvent être écartées des débats à la seule appréciation du Tribunal Arbitral.

[15] Chaque Partie veillera à envoyer simultanément et dans les mêmes formes à l'autre Partie et au Secrétariat de la CCJA (OHADA) copie de toutes communications ou notifications faites au Tribunal arbitral, et vice versa.

[16] Les communications seront faites aux Conseils et aux arbitres indiquées aux sections I et III ci-dessus, ainsi que, pour la CCJA (OHADA) au :

**Secrétaire Général du Centre d'Arbitrage**
Avenue Dr Jamot, angle Bd CADRE, en face de l'immeuble « les Harmonies »
Plateau,
01 BP 8702, Abidjan 01,
Côte d'Ivoire.
Tel : (225) 20 30 33 91/ 20 30 33 97/98
Fax : (225) 20 33 60 53
assie_ccja@yahoo.fr

[17] Les mémoires et pièces envoyés par courrier, conformément au point [13], pourront n'être communiqués, pour les Parties, qu'à un seul Conseil, soit, pour la Demanderesse, Maîtres Cédric FISCHER et Elisabeth MAHE (Fischer, Tandeau de Marsac, Sur & Associés) et pour la Défenderesse, Maître Laurent JAEGER (Orrick, Rambaud, Martel), sans préjudice de son envoi par e-mail à tous les conseils indiqués en I.

[18] Tout changement de nom, adresse, téléphone, téléfax ou e-mail sera immédiatement notifié par la Partie ou l'arbitre concerné aux autres destinataires mentionnés dans cette section, ainsi qu'au Secrétariat de la CCJA (OHADA). A défaut,

les communications et notifications envoyées conformément à la présente section demeurent pleinement valides.

## VI - Exposé sommaire des prétentions des Parties

[19] Les exposés ci-après reposent sur les prétentions et demandes adressées respectivement au Tribunal Arbitral par la Demanderesse et le Défendeur le 24 février 2012.

Elles sont reproduites ci-après, sans préjudice de tous autres arguments éventuels qui seront développés dans les mémoires déjà déposés ou qui le seront tout au long de la procédure.

Aucune déclaration ou omission dans l'exposé ci-après des prétentions d'une Partie ne peut être interprétée comme une renonciation en droit ou en fait.

### 1.   Exposé sommaire des prétentions de la Demanderesse

*1.      En 2008, le gouvernement de la République de Guinée a décidé de concéder l'exploitation du terminal à conteneurs du port de Conakry (le « **Terminal** ») et, à cet effet, a lancé un appel d'offres international. A l'issue du dépouillement des quatre offres reçues par l'État guinéen, Getma International a été déclarée adjudicataire à titre provisoire (pièce n° C3).*

*2.      A l'issue de discussions et de négociations ayant duré plus de trois semaines, l'État guinéen, représenté par le Ministre des Transports et en présence du Ministre de l'Économie et des Finances (le « **Concédant** »), a conclu avec Getma International (le « **Concessionnaire** ») une convention de concession (la « **Convention de concession** ») (pièce n° C2), attribuant à Getma International pour une durée de 25 ans :*

*« La concession du service public de gestion et d'exploitation du terminal à conteneurs du port de Conakry, avec pour obligations pour le Concessionnaire de procéder à :*
*Sa réhabilitation, son équipement et sa maintenance ;*
*Son extension par la construction d'un nouveau quai de 300m de long, avec une profondeur de 13m ZP devant le quai et l'aménagement d'une superficie d'environ 120.000 m2 ;*
*L'aménagement d'une plateforme de stockage d'environ 11.000 m2 au niveau de la gare ferroviaire. »*

3.      *En raison d'un retard dans la mise à disposition par le Concédant des biens concédés au profit du Concessionnaire, et ce en raison de troubles politiques et d'une suspension, par la suite rapportée, de la Convention de concession, le Concédant et le Concessionnaire ont conclu, le 7 novembre 2009, un avenant n°1 à la Convention de concession (l'« **Avenant n°1** ») (pièce n° C4), afin de préciser certaines obligations tant du Concédant que du Concessionnaire et convenir d'un nouveau calendrier des paiements et de réalisation des travaux.*

4.      *En conformité avec ses obligations, découlant de la Convention de concession, le Concessionnaire a, notamment :*
   - *constitué le 20 novembre 2008, une société d'exploitation de droit guinéen la Société du Terminal à Conteneurs de Conakry (« **STCC** » ou le « **Mandataire du concessionnaire** ») (pièce n° C5) ;*
   - *procédé aux investissements contractuellement prévus (paiement du ticket d'entrée, réalisation des travaux, achat des matériels…) (pièces n° C6 et C7)*
   - *opéré le Terminal à la satisfaction des autorités et des usagers (pièces n° C8 et C9) ;*
   - *Lancé, par l'intermédiaire de sa filiale de droit français NCT Logistique & Infrastructure, un appel d'offres international afin de réaliser la construction du nouveau quai et l'aménagement d'une superficie de 120.000 m².*

5.      *L'exécution par le Concessionnaire de ses obligations n'a suscité de la part du Concédant, ou même du Port Autonome de Conakry (le « **Mandataire du concédant** »), aucune remarque ni critique ; bien au contraire, le Concédant a reçu,*

10

le 25 janvier 2011, les félicitations du directeur de la marine marchande de la République de Guinée (pièce n° C10).

6.     Par décret du 8 mars 2011 (pièce n° C11), qui ne sera notifié au Concessionnaire que le 18 mars 2011 (pièce n° C12) pour la première fois, le Président de la République de Guinée a décidé de résilier « pour manquement aux obligations du concessionnaire » la Convention de concession (le « **Décret de résiliation** »).

7.     Cette résiliation était « à effet immédiat et sans indemnité, aux frais, risques et torts des sociétés Getma International Sas ».

8.     Par un second décret en date du 9 mars 2011 (pièce n° C13), qui, lui aussi, ne sera notifié pour la première fois au Concessionnaire que le 18 mars suivant (le « **Décret de réquisition** ») (pièce n° C11), le Président de la République de Guinée a, au nom de l'Etat guinéen, décidé de :

> « Réquisitionner, pendant une durée de soixante jours ou plus […] les immeubles et actifs qu'il jugera nécessaires, appartenant à la société Getma International et à la Société du Terminal à Conteneurs de Conakry, qu'ils se trouvent sur le terminal à conteneurs de Conakry ou ailleurs sur le territoire national de la République de Guinée ».

9.     A nouveau, le 22 mars 2011, le ministre des transports, représentant la République de Guinée, a fait procéder à la notification du Décret de résiliation et du Décret de réquisition (pièce n° C14).

10.    L'Etat guinéen a immédiatement fait concéder le Terminal, ainsi que l'ensemble des installations portuaires, à la société de droit français Bolloré et interdire aux salariés et agents du Concessionnaire et du Mandataire du concessionnaire l'accès tant au Terminal qu'aux bureaux administratifs (pièces n° C15 et C16).

11



11.    Le 9 mars 2011, le Concessionnaire a procédé à la « **Notification Préliminaire de Changement de Loi** » exigée par l'article 32.5 de la Convention de concession (pièce n° C17).

12.    Par un courrier en date du 18 mars 2011, le Ministre d'État chargé des Travaux Publics et des Transports de la République de Guinée agissant en qualité de représentant du Concédant a expressément indiqué qu' « aucune indemnité n'est exigible de la part de Getma International SAS » (pièce n° C11).

## 2. Exposé sommaire des prétentions du Défendeur

La concession du terminal à conteneurs du Port de Conakry a été attribuée à la société Getma International dans des conditions manifestement irrégulières, tant au stade de l'appel d'offre que celui de l'élaboration et la signature de la convention relative à cette concession (la « Convention »).

Les conditions anormales de passation de ce marché, dans le contexte politique instable de la fin du mandat du Président Lansana Conté, ont conduit à la conclusion d'une convention octroyant des prérogatives exorbitantes au concessionnaire. Elles ont également préfiguré les carences dans l'exécution du marché par le concessionnaire, qui ne possédait pas les capacités et l'expérience dont il s'était prévalu dans son offre.

Ces irrégularités ont justifié la résiliation sans indemnité de la Convention, qui avait été sollicitée par les autorités et organismes concernés depuis sa signature et tout au long de sa période d'exécution. L'Etat Guinéen se réserve en outre le droit de demander réparation au titre d'autres agissements illicites qui pourraient être révélés au cours de la présente procédure d'arbitrage.

### 1.1. *Les irrégularités dans l'attribution de la concession à Getma International*

(i) _La mise à l'écart de l'Administration et Contrôle des Grand Projets (ACGP)_

L'Administration et Contrôle des Grands Projets (ACGP) n'a pas participé à l'élaboration et à l'approbation du Dossier d'Appel d'Offres, en violation de ses attributions légales.

12

*En outre, en sa qualité de rapporteur de la Commission Nationale des Grands Marchés, l'ACGP doit normalement abriter les séances d'ouverture et d'analyse des offres ainsi que les travaux de négociation et d'élaboration des conventions. En l'espèce, elle a été totalement écartée du processus d'appel d'offres.*

*(ii) La mise à l'écart du Port Autonome de Conakry (PAC)*

*Le Port Autonome de Conakry (« PAC »), personne morale autonome, est le dépositaire foncier légal de l'ensemble du domaine public maritime et terrestre mis à sa disposition. Il aurait dû à ce titre jouer un rôle prépondérant dans le processus de négociation et de conclusion de la Convention.*

*Pourtant le PAC a été totalement mis à l'écart des négociations relatives à la Convention, en violation de ses attributions légales et contrairement aux pratiques en matière d'attribution de concessions portuaires.*

*(iii) Les conditions anormales de négociation de la Convention*

*En principe, l'entité qui désigne l'adjudicataire doit être distincte de celle qui négocie ensuite les termes de la convention à conclure. Or en l'espèce, la Commission d'évaluation des offres qui avait désigné l'adjudicataire a été reconduite pour élaborer et négocier la Convention avec la société qu'elle avait elle-même choisie.*

*Les négociations, dont le PAC a été soigneusement écarté, ont ainsi été menées à huis clos, en l'espace de seulement deux semaines, par la même entité que celle qui avait déjà retenu la candidature de Getma International au stade de l'appel d'offres.*

**1.2.** **Les irrégularités affectant la Convention**

*(i) Le défaut de qualité du signataire de la Convention*

*Aux termes du Décret 051/PRG/SGG/88 fixant l'organisation des conditions de fonctionnement du Port Autonome de Conakry, le PAC est le dépositaire foncier légal de l'ensemble du domaine public maritime mis à sa disposition, dont le terminal à conteneurs fait partie.*

*Il revenait donc au PAC de signer en qualité de concédant la Convention conclue avec Getma International. Or celle-ci a été signée par le Ministre des Transports de l'époque.*

13

*La mise à l'écart du PAC n'a donc pas seulement affecté la régularité du processus d'attribution du marché et de négociation de la Convention. Elle a conduit à ce que la Convention soit signée par une personne qui n'avait pas qualité pour le faire.*

*(ii)  Les prérogatives exorbitantes accordées à Getma International*

*La Convention comporte de nombreuses stipulations conférant des avantages exorbitants à Getma International, au détriment de l'Etat Guinéen, tels qu'une exonération d'impôt sur les sociétés pendant quasiment toute la durée de la Convention.*

**1.3.   Les manquements du concessionnaire à ses obligations**

*Dans le cadre de l'appel d'offre, Getma International a déclaré avoir une expérience significative de la gestion des terminaux à conteneurs en son nom propre et sous sa propre responsabilité. Elle a également déclaré disposer des capacités techniques et financières pour réaliser les objectifs de l'appel d'offre.*

*En réalité, il est apparu que le concessionnaire était loin de remplir les critères requis. Il s'est en particulier montré incapable de réaliser les investissements fermes prévus au cours des deux premières années de la concession.*

*Getma International était censée investir massivement au cours de cette période cruciale afin de procéder à la réhabilitation du terminal existant et à son extension par la construction d'un nouveau quai de 300 mètres de long et l'aménagement d'une superficie de 120.000 mètres carrés. Ces travaux constituaient les principaux objectifs et la raison d'être de la mise en concession du terminal.*

*Or Getma International n'a que très faiblement investi sur cette période, et le programme ferme d'investissement accusait un retard considérable. A la date de la résiliation de la Convention, le programme d'investissement ferme relatif aux travaux d'extension du terminal par la construction d'un nouveau quai et l'aménagement d'un terre-plein n'en était qu'au stade de l'appel d'offre. La réhabilitation des infrastructures existantes avait pour sa part à peine été entamée.*

*Par ailleurs, Getma International a manqué de façon constante à ses obligations, notamment en ne permettant pas à l'Etat guinéen de prendre une*

14

*participation dans le capital de la société d'exploitation du terminal, et en modifiant ce capital sans l'accord préalable du concédant.*

### 1.4. <u>*La résiliation de la Convention est régulière et fondée*</u>

*Les carences de Getma dans l'exécution de ses obligations ne sont pas surprenantes compte tenu des conditions irrégulières dans lesquelles la concession lui a été attribuée.*

*Ces irrégularités ont été dénoncées dès la signature de la Convention, notamment par le Ministre Secrétaire Général à la Présidence de la République en décembre 2008 et par le Conseil d'administration du PAC, qui a sollicité son annulation lors d'une session extraordinaire des 31 décembre 2008 et 2 janvier 2009.*

*La Convention a cependant été maintenue sous le gouvernement provisoire du capitaine Dadis Camara, après avoir fait l'objet d'une suspension entre janvier et avril 2009, puis a été modifiée par un Avenant n°1 le 7 novembre 2009.*

*Le 11 février 2011, une nouvelle session extraordinaire du Conseil d'administration du PAC s'est tenue, afin de procéder à une évaluation globale des conditions d'attribution et d'exécution du marché. Les nombreux manquements et irrégularités constatés ont conduit le PAC à solliciter auprès du nouveau Président démocratiquement élu en décembre 2010, Monsieur Alpha Condé, la résiliation de la Convention.*

➢ *C'est dans ces conditions que, de façon parfaitement légitime et fondée, le Président de la République de Guinée a pris un Décret en date du 8 mars 2011, portant résiliation de la Convention.*

### 1. <u>**Exposé des demandes de la Demanderesse**</u>

*La Demanderesse entend demander au tribunal arbitral de :*

➢ *Dire et juger irrégulière, nulle et de nul effet la résiliation de la Convention de concession décrétée par le Président de la République de Guinée ;*

15

➢ *Constater que, du fait de la nouvelle convention de concession consentie le 11 mars 2011 à une société « Bolloré », ou à toute autre société du groupe Bolloré, le retour au « statu quo ante bellum » est désormais impossible ;*

➢ *Condamner le Défendeur à payer à la Demanderesse, les sommes suivantes sauf à parfaire ou actualiser :*
   - *20.894.966 € au titre de l'indemnité forfaitaire de résiliation ;*
   - *2.508.214,00 € au titre de l'indemnité de résiliation ;*
   - *14.201.096,00 € au titre de l'indemnité égale au montant non amorti du ticket d'entrée ;*
   - *13.606.721,00 € au titre de l'indemnité due au titre des biens propres réquisitionnés ;*
   - *1.361.305,00 € au titre de l'indemnité due au titre des frais d'établissement et de constitution ;*
   - *110.557,00 € au titre de l'indemnité due à des contrats en cours ;*
   - *806.959,00 € au titre de l'indemnité due à la non perception de l'actif net réalisable ;*
   - *87.124,00 € au titre de l'indemnité due au titre des frais de rapatriement du personnel ;*
   - *279.863,00 € au titre de l'indemnité due au titre des dépenses liées à la gestion de crise ;*
   - *Une indemnité, à quantifier, au titre du préjudice complémentaire visé au § 3.3.2 de la demande d'arbitrage ;*
   - *Les intérêts au taux légal sur toutes les sommes précédentes à compter de la Notification Préliminaire de Changement de Loi.*

*Laisser à la charge du Défendeur l'ensemble des frais, dépens et honoraires supportés par le Demandeur.*

## 2. <u>Exposé des demandes du Défendeur</u>

*Le Défendeur demande au Tribunal Arbitral de :*

16