IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

In the Matter of the Arbitration of Certain
Controversies between

**GETMA INTERNATIONAL**,

Petitioner,

and

**THE REPUBLIC OF GUINEA**,

Respondent.

Civil Action No. 1:14-cv-01616-RBW

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT
OF THE REPUBLIC OF GUINEA'S MOTION TO STAY THIS PROCEEDING**

Jeffrey M. Prokop (D.C. Bar. No. 992687)
Brooke Daley (D.C. Bar. No. 1013387)
ORRICK HERRINGTON & SUTCLIFFE LLP
1152 15th Street N.W.
Washington, D.C. 20005
Telephone: (202) 339-8400
Fax: (202) 339-8500

Jamie L. Shookman (admitted *pro hac vice*)
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019-6142
Telephone: (212) 506-5141
Fax: (212) 506-5151

*Attorneys for Respondent
The Republic of Guinea*

**TABLE OF CONTENTS**

Page

I.   INTRODUCTION .................................................................................................1

II.  ARGUMENT ......................................................................................................2

A.   *Europcar* Factor No. 1: Getma Improperly Disregards the Significance of Annulment Proceedings and Ignores That a Stay Here Avoids the Potential for Protracted and Expensive Litigation ................................................................3

B.   *Europcar* Factor No. 2: The Status and Timing of the CCJA Proceeding Weighs Heavily in Favor of a Stay........................................................................6

C.   *Europcar* Factor No. 3: Getma Mischaracterizes Guinea's Position That the Award may Receive Greater Scrutiny by the CCJA .......................................9

D.   *Europcar* Factor No. 4: Getma Ignores the Voluminous Case Law Ordering Stays Based on Concerns of Comity and Efficiency That Are Present Here......................................................................................................11

1.   Guinea Did Not Mischaracterize *Europcar* Factor No. 4........................12

2.   Getma Cannot Sidestep Obvious and Significant International Comity Concerns ........................................................................................12

3.   There Is No Evidence That Guinea Intends to Hinder or Delay Resolution of the Dispute ........................................................................17

E.   *Europcar* Factor No. 5: Getma Ignores the Hardship to Guinea and Vastly Overstates Its Own Potential Hardship................................................................18

F.   *Europcar* Factor No. 6: Getma Improperly Disregards That the Award Is Unenforceable in the OHADA States.................................................................21

III. CONCLUSION ..................................................................................................22

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alto Mar Girassol v. Lumbermens Mut. Cas. Co.*,
  No.-04-C-7731, 2005 U.S. Dist. Lexis 7479 (N.D. Ill. April 12, 2005)................................. 6

*Autotech Techs. LP v. Integral Research & Dev. Corp.*,
  499 F.3d 737 (7th Cir. 2007) ...........................................................................................21

*Baker Marine, Ltd. V. Chevron, Ltd.*,
  181 F. 3d 194 (2d Cir. 1999) ........................................................................................3, 4

*Caribbean Trading & Fid. Corp. v. Nigerian Nation Petroleum Corp.*,
  No. 90 Civ. 4169, 1990 U.S. Dist. LEXIS 17198 (S.D.N.Y. Dec. 18, 1990)................................. 15, 16

*Caribbean Trading and Fid. Corp. v. Nigerian National Petroleum Corp.*,
  948 F.2d 111 (2d Cir.1991) ............................................................................................21

*Chevron Corp.v. Republic of Ecuador*,
  949 F. Supp. 2d 57 (D.D.C. 2013)..................................................................................5, 19

*Chromalloy Aeroservices v. Arab Republic*,
  939 F. Supp. 907 (D.D.C. 1996)...........................................................................................4

*Continental Transfert Technique Ltd. v. Fed. Gov't of Nigeria*,
  697 F. Supp. 2d 46 (D.D.C. 2010)........................................................................................18

*\*CPConstruction Pioneers Baugesellschaft Anstalt v. Gov't of the Republic of Ghana*,
  578 F. Supp. 2d 48 (D.D.C. 2008)............................................................... 3, 4, 13, 14, 15

*Dist. No. 1, Pac. Coast Dist., Marine Eng'rs' Beneficial Ass'n, AFL-CIO v. Liberty Mar. Corp.*,
  No. 11-1795, 2014 U.S. Dist. LEXIS 138971 (D.D.C. Sept. 30, 2014)............................................4. 5

*\*DRC, Inc. v. Republic of Honduras*,
  774 F. Supp. 2d 66 (D.D.C. 2011), *vacated* 999 F. Supp. 2d 1 (D.D.C. 2012)...................................20

*\*Europcar Italia, S.P.A. v. Maiellano Tours*,
  156 F. 3d 310 (2d. Cir. 1998) ..............................................................................*passim*

*\*Fertilizer Corp. of India v. IDI Mgmt.*,
  517 F. Supp. 948 (S.D. Ohio 1981) .................................................................................. 15, 16

*First Options of Chicago, Inc. v. Kaplan*,
  514 U.S. 938 (1995) ...........................................................................................................4

*G.E. Transp. S.p.A. v. Republic of Albania*,
  693 F. Supp. 2d 132 (D.D.C. 2010)........................................................................................5

*Higgins v. SPX Corp.,
   No. 1:05-CV-846, 2006 U.S. Dist. LEXIS 20771 (W.D. Mich. Apr. 18, 2006) ............................ 3, 15

*Jorf Lasfar Energy Co., S.C.A. v. AMCI Exp. Corp.,
   No. 05-0423, 2005 U.S. Dist. Lexis 34969 (W. D. Pa. Dec. 22, 2005).................................... 6, 19, 22

MGM Production Group, Incorporated v. Aeroflot Russian Airlines,
   573 F. Supp. 2d 772 (S.D.N.Y. 2003) ..................................................................................... 7, 8, 9

Polimaster Ltd. v. RAE Sys.,
   623 F.3d 832 (9th Cir. 2010) ......................................................................................................... 5

Republic of Argentina v. Weltover,
   504 U.S. 607 (1992) ..................................................................................................................... 20

République de Guinée Equatoriale et La Communauté Economique et Monétaire
   d'Afrique Centrale (CEMAC) c.  La Commercial Bank Guinea Ecuatorial (CBGE) ................... 7

Rubin v. The Islamic Republic of Iran,
   637 F.3d 783 (7th Cir. 2011) ....................................................................................................... 21

S & S Mach. Co. v. Masinexportimport,
   706 F.2d 411 (2d Cir. 1983) ........................................................................................................ 21

Sales v. Republic of Uganda,
   828 F. Supp. 1032 (S.D.N.Y. 1993) ............................................................................................ 21

Spier v. Calzaturificio Tecnica, S.p.A.,
   663 F. Supp. 871 (S.D.N.Y. 1987) ................................................................................................ 2

TermoRio S.A. E.S.P. v. Electranta S.P.,
   487 F.3d 928 (D.C. Cir. 2007) ...................................................................................................... 3

**Treaties, Statutes, & Rules**

28 U.S.C. § 1609 .............................................................................................................................. 20

28 U.S.C. §1610(d) ........................................................................................................................... 20

CCJA Rules Art. 29.3 ....................................................................................................................... 13

CCJA Rules Art. 30.2 ......................................................................................................................... 4

CCJA Rules Art. 30.6 .................................................................................................................. 4, 9, 17

*Convention on the Recognition and Enforcement of Foreign Arbitral Awards,
   21 U.S.T. 2517, T.I.A. S. No. 6997, 9 U.S.C. § 201, et seq. (1958) .................................................... 1

   Article V(1)(e) ............................................................................................................................... 3

   Article VI.................................................................................................................................. passim

OHADA Uniform Arbitration Act Art. 10................................................................................................ 14

Respondent The Republic of Guinea ("Guinea"), through its undersigned counsel, hereby submits this Reply Memorandum of Points and Authorities in further support of its motion, pursuant to Article VI of the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 21 U.S.T. 2517, T.I.A. S. No. 6997, 9 U.S.C. § 201, *et seq.* (1958) (the "New York Convention"), to stay this case pending the conclusion of proceedings at the arbitral seat to annul the arbitral award that Petitioner Getma International seeks to confirm in this Court.[1]

## I.    INTRODUCTION

Getma cannot challenge the key factual predicates to Guinea's motion to stay:

(i)      The Award was rendered in an OHADA member state and concerns a Concession Agreement to perform services in an OHADA member state that is governed by OHADA law and requires arbitration of any disputes under the CCJA Rules;

(ii)     Guinea submitted the Annulment Petition to the CCJA, the final arbiter of OHADA law, prior to Getma commencing this proceeding;

(iii)    The Annulment Petition and Guinea's opposition to Getma's Petition here raise serious issues arising under OHADA law, including, *inter alia*, the interpretation of the arbitration clause in the Concession Agreement and whether the Tribunal complied with the parties' arbitration agreement and the CCJA Rules;

(iv)    Under OHADA law, the Award is not enforceable in any OHADA member state pending conclusion of the annulment proceedings presently before the CCJA; and

(v)     The CCJA proceedings are well advanced and are likely to conclude in late 2015 or early 2016.

Courts faced with similar fact patterns routinely grant stays pursuant to Article VI of the New York Convention pending the conclusion of set-aside proceedings at the seat of arbitration.

---

[1] Unless otherwise noted, all capitalized terms herein have the meaning ascribed to them in the Memorandum of Points and Authorities in Support of Guinea's Motion to Stay (ECF No. 18) (herein cited as "Resp. Br."). Petitioner's Opposition to Guinea's Motion to Stay (ECF No. 22-1) is cited herein as "Pet. Opp." Guinea's Memorandum of Points and Authorities in Opposition to Getma International's Petition to Confirm (ECF. No. 19) is cited herein as "Resp. Opp. to Petition." Getma's Reply Memorandum in Further Support of its Petition (ECF No. 25) is cited herein as "Pet. Reply Br."

In response, Getma mischaracterizes the Annulment Petition as a meritless attempt to re-try issues that Guinea purportedly had a full opportunity to litigate before the Tribunal and claims that Guinea's motivation is to hinder resolution of this dispute.  However, Getma's arguments fail as a matter of fact and law.  As set out in Guinea's opposition to the Petition, the Tribunal unjustifiably refused to consider key evidence or continue proceedings concerning Guinea's allegations that the Concession Agreement was procured by corruption, which would render it null and void.  Accordingly, Guinea never had the opportunity to fully litigate the issue of corruption, which is a central issue in the Annulment Petition.  Additionally, Getma repeatedly ignores the serious issues raised in the Annulment Petition concerning the Tribunal's misconduct in respect of its fees, for which it was repeatedly admonished by the CCJA, which expressly stated that such conduct could provide the basis for the CCJA to annul the Award under applicable OHADA law.  Getma's opposition to Guinea's motion to stay is a transparent effort to render the CCJA proceedings moot to the substantial prejudice of Guinea.  Ultimately, however, Getma cannot distinguish the numerous cases—in this Circuit and elsewhere—that have ordered stays in similar circumstances, and its opposition provides no basis to deny Guinea's motion to stay.

## II.    ARGUMENT

The parties agree that the framework for analyzing a motion to stay under Article VI of the New York Convention is set out in the Second Circuit's ruling in *Europcar Italia, S.P.A. v. Maiellano Tours*, 156 F. 3d 310 (2d. Cir. 1998), which has largely been adopted by District Courts of this Circuit.[2]  As set forth below, Getma fails to squarely address the key facts and law

---

[2] Notwithstanding the parties' agreement in this regard, Getma wrongly contends that Guinea improperly relies on *Spier v. Calzaturificio Tecnica, S.p.A.*, 663 F. Supp. 871, 875 (S.D.N.Y. 1987) for the proposition that courts typically only refuse to grant a stay when set-aside proceedings at the seat of arbitration are "transparently frivolous."  Pet. Opp. at 4, n. 2.  Contrary to Getma's claim that *Spier* was overruled after *Europcar*, it remains good

demonstrating that the *Europcar* factors tip strongly in favor of staying this proceeding pending the CCJA's ruling on the Annulment Petition.

A.    *Europcar* **Factor No. 1: Getma Improperly Disregards the Significance of Annulment Proceedings and Ignores That a Stay Here Avoids the Potential for Protracted and Expensive Litigation**

As set forth in Guinea's opening brief, annulment proceedings pursuant to the OHADA Treaty and CCJA Rules are an integral part not only of the dispute resolution process that the parties contractually agreed would govern their disputes, but also of the enforcement regime envisaged by the New York Convention.  Resp. Br. at 6-7.  Moreover, a stay eliminates the potential for protracted and expensive litigation if the Court were to confirm the Award and the CCJA were to subsequently annul it.  *Id.* at 7-8.  In response, Getma asserts that (i) "annulment proceedings are not of any special significance to the arbitration process"; (ii) granting a stay would "seriously undermine" the objectives of arbitration; and (iii) Guinea's cited cases "did not appear to weigh" the *Europcar* factors.  Pet. Opp. at 5-10.  Getma is wrong on all counts.

*First,* Getma's argument that annulment proceedings at the seat of arbitration "are not of any special significance" is incorrect for numerous reasons.  As courts in this Circuit and elsewhere have made clear, that argument flies in the face of Article V(1)(e) of the New York Convention, which permits a court to refuse confirmation of an award that has been set aside by a competent authority at the seat of arbitration,[3] and Article VI of the Convention, which

_____

law and courts in this Circuit and elsewhere routinely cite it when granting stays pursuant to Article VI of the New York Convention.  *See, e.g.*, *CPConstruction Pioneers Baugesellschaft Anstalt (Liechtenstein) v. Gov't of the Republic of Ghana*, 578 F. Supp. 2d 48, 49 (D.D.C. 2008); *Higgins v. SPX Corp.*, No. 1:05-CV-846, 2006 U.S. Dist. LEXIS 20771, at *14 (W.D. Mich. Apr. 18, 2006).

[3] Indeed, as a general matter, courts in the United States refuse to confirm arbitral awards that have been vacated at the seat of arbitration, except in extraordinary circumstances.  *See, e.g.*, *TermoRio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928, 937-939 (D.C. Cir. 2007) (affirming district court's refusal to enforce arbitration award that had been annulled by a court at the arbitral seat, and holding that a secondary State is not "free as it sees fit to ignore the judgment of a court in a primary State."); *Baker Marine, Ltd. V. Chevron, Ltd.*, 191 F. 3d 194, 197 (2d Cir. 1999)

expressly contemplates adjournments of enforcement proceedings at the arbitral seat.  *See, e.g.*, *CP Construction Pioneers Baugesellschaft Anstalt (Liechtenstein) v. Gov't of the Republic of Ghana*, 578 F. Supp. 2d 50, 54 (D.D.C. 2008) ("[t]he Convention explicitly contemplates adjournment of enforcement proceedings under these circumstances.  Far from being at odds with the nature of arbitration confirmation proceedings, adjournments pending the completion of set-aside proceedings are an integral part of such proceedings.").  Getma claims not to dispute the "unremarkable and obvious proposition" that only the courts at the seat of arbitration have jurisdiction to annul an award under the New York Convention, and asserts that it "does not attempt to contravene the primary jurisdiction of local courts."  Pet. Opp. at 8.  To the contrary, by seeking to render the CCJA proceedings moot by obtaining confirmation of the Award here before the conclusion of those proceedings, Getma is effectively doing just that.

Moreover, Getma does not—and cannot—deny that the CCJA Rules, which the parties incorporated by reference into Article 31 of the Concession Agreement, explicitly provide for the review of arbitral awards by the CCJA, and furthermore, that the Award is unenforceable in the OHADA states pending any such review.  Declaration of Laurent Jaeger dated March 2, 2015 ("First Jaeger Decl.") ¶ 3, Ex. 2 at Arts. 29, 30.2, 30.6.  Because arbitration is, at its core, a matter of contract between the parties, permitting the CCJA to complete its work does not thwart the objectives of arbitration, but rather gives effect to the parties' agreement to resolve this dispute in accordance with the CCJA Rules.[4]

---

(similar); *Europcar,* 156 F.3d at 317 (stating that "under Article V of the Convention, *an award should not be enforced if it is set aside or suspended in the originating country.*") (emphasis added); *but see Chromalloy Aeroservices v. Arab Republic*, 939 F. Supp. 907, 913 (D.D.C. 1996) (confirming arbitral award, which an Egyptian court had set aside, where the parties' arbitration agreement expressly prohibited any post-arbitration appeals).

[4] *See, e.g.*, *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) (stating that "arbitration is simply a matter of contract between the parties. . .") ; *Dist. No. 1, Pac. Coast Dist., Marine Eng'rs' Beneficial Ass'n, AFL-CIO v. Liberty Mar. Corp.*, No. 11-cv-1795, 2014 U.S. Dist. LEXIS 138971, at *39 (D.D.C. Sept. 30, 2014) (noting

*Second,* in support of its assertion that a stay would "seriously undermine" the objectives of arbitration because it would purportedly delay enforcement of the Award, Getma cites a series of inapposite and easily distinguishable cases.  Pet. Opp. at 6-7.  For example, Getma relies heavily on *G.E. Transportation S.p.A. v. Republic of Albania*, 693 F. Supp. 2d 132 (D.D.C. 2010).  However, Getma omits that, in that case, the party seeking a stay had already been denied post-arbitration relief twice—once by the arbitral tribunal itself and again by the Court of Appeals of Rome, which refused to suspend the award on an interim basis pending an appeal.  *Id.* at 134-135.  Moreover, in that case, there was evidence that the proceedings in the Court of Appeals of Rome would not be finally resolved for four years.  *Id* at 135.  Here, by contrast, the Annulment Petition is the only post-arbitration relief that Guinea has sought concerning the Award and, as set forth below, the proceedings before the CCJA are well advanced and may conclude by the end of 2015.  Declaration of Laurent Jaeger, dated May 6, 2015 ("Second Jaeger Decl.") ¶ 5.

 *Chevron Corporation v. Republic of Ecuador*, 949 F. Supp. 2d 57 (D.D.C. 2013) is similarly distinguishable.  *See* Pet. Opp. at 7.  In that case, the dispute among the parties had been ongoing for more than twenty years.  *Chevron Corp.*, 949 F. Supp. 2d at 72.  Moreover, as with the *G.E. Transportation S.p.A. v. Republic of Albania* case, Getma omits that in *Chevron*, the respondent had already lost a set-aside proceeding at the arbitral seat more than a year prior to the respondent's request for a stay of confirmation proceedings in the United States.

*Third,* instead of confronting the fact that a stay here avoids the potential for protracted and expensive litigation if the Award were to be confirmed by this Court and subsequently set

---

that it is "well established that arbitration is a matter of contract…") (internal quotations and citations omitted); *see also Polimaster Ltd. v. RAE Sys., Inc.*, 623 F.3d 832, 841 (9th Cir. 2010) (denying enforcement of award where the tribunal refused to comply with the parties' arbitration agreement because the New York Convention favors enforcement of arbitration clauses "*according to the intent of the contracting parties.*") (emphasis in original).

aside by the CCJA (Resp. Br. at 7-8), Getma offers distraction.  It first tries to argue that

Guinea's cited cases "do not appear to weigh the *Europcar* factors."  Pet. Opp. at 9.  However,

those cases explicitly referred to and relied on the *Europcar* factors in holding that the risk of

inconsistent judgments and protracted litigation weighed in favor of a stay.  *See Jorf Lasfar*

*Energy Co., S.C.A. v. AMCI Exp. Corp.*, No. 05-0423, 2005 U.S. Dist. Lexis 34969, at \*6-7

(W.D. Pa. Dec. 22, 2005); *Alto Mar Girassol v. Lumbermens Mut. Cas. Co.*, No.-04-C-7731,

2005 U.S. Dist. Lexis 7479, at \*7-8 (N.D. Ill. April 12, 2005).  Next, Getma claims that granting

a stay based solely on the risk of inconsistent judgments undermines the *Europcar* analysis.  Pet.

Opp. at 9.  Guinea never claimed that the risk of inconsistent judgments should be the sole basis

for ordering a stay here.  However, that risk is directly relevant to the concern about "protracted

and expensive litigation" embodied in the first *Europcar* factor, which Getma itself asserts

"should weigh more heavily in the district court's determination."  Pet. Opp. at 5 (citing

*Europcar*, 156 F. 3d at 318).

**B.**    ***Europcar* Factor No. 2: The Status and Timing of the CCJA Proceeding Weighs Heavily in Favor of a Stay**

As set out in Guinea's opening brief, this *Europcar* factor weighs in favor of a stay

because the CCJA proceedings are nearly complete and, based on an analysis of available data, it

is likely that the CCJA will rule on the Annulment Petition by late 2015 or early 2016, resulting

in little or no delay in the resolution of the Petition.   Resp. Br. at 8-9; First Jaeger Decl. ¶ 42.

Indeed, since Guinea filed its motion to stay, Getma filed its reply brief with the CCJA, which

was the final written submission in the annulment proceedings.  Second Jaeger Decl. ¶¶ 3-4.  All

that remains is for the CCJA to set a date for oral argument and render a decision.  *See id.* at ¶ 4.

Getma claims that this factor weighs in favor of enforcement of the Award because (i) there is no

deadline for the CCJA to render an award; (ii) two annulment petitions brought before the CCJA

in recent years were not resolved in the average one and a half year timeframe noted by Guinea; and (iii) *MGM Production Group, Incorporated v. Aeroflot Russian Airlines*, 573 F. Supp. 2d 772 (S.D.N.Y. 2003) is controlling and counsels in favor of enforcement of the Award.  Pet. Opp. at 10-12.  Each of those arguments fails.

*First,* the fact that there is no deadline for the CCJA to rule on the Annulment Petition is unsurprising because courts, especially appellate courts, rarely operate with fixed deadlines to issue rulings.  More significantly, however, Getma cannot point to a single case holding that this *Europcar* factor weighs in favor of enforcement where there is no hard deadline for the resolution of set-aside proceedings, nor would such formalism make any sense in the context of the flexible, non-exhaustive *Europcar* factors.

*Second,* Getma attempts to dispute Guinea's estimated timetable for the CCJA's ruling on the Annulment Petition, not by offering its own evidence or analysis, but by misconstruing Guinea's.  Pet. Opp. at 11.  Indeed, Guinea demonstrated that, of the eight annulment petitions filed with the CCJA for which there is available data, six of those petitions were resolved in an average of a year and a half after the annulment petition was filed.  *See* First Jaeger Decl. Ex. 53. Two outlier cases took over two years to conclude.  *Id*.  Perhaps not surprisingly, Getma latches on to those two rulings in disputing Guinea's estimated timetable for the CCJA proceedings.[5]  At the same time, however, Getma ignores the six cases that support Guinea's estimate, including two from the same time period as the cases to which Getma refers, which were resolved in 11 months and 16 months, respectively.  Resp. Opp. to Petition at 11; *See* First Jaeger Decl. ¶ 42, Ex. 53.  Based on the available information, Guinea's estimated timetable is entirely reasonable.

---

[5] Notably, one of those cases—*République de Guinée Equatoriale et La Communauté Economique et Monétaire d'Afrique Centrale (CEMAC) c.  La Commercial Bank Guinea Ecuatorial (CBGE)*—consolidated three different proceedings into one, including an appeal lodged by a third party.  First Jaeger Decl. ¶ 42, Ex. 53, n.2.

*Third,* Getma's claim that *MGM Production Group, Incorporated v. Aeroflot Russian Airlines*, 573 F. Supp. 2d 772 (S.D.N.Y. 2003) is "remarkably similar" with "nearly identical facts" is wrong.  Pet. Opp. at 11-12.  In that case, the Court denied Aeroflot's request for a stay where: (i) Aeroflot sought to set aside the arbitral award at issue in Sweden *after* MGM Production Group sought to confirm the award in the United States; (ii) the Swedish court expressly denied MGM Production Group's request to stay enforcement of the award pending the conclusion of the set-aside proceedings; (iii) the appeal process in Sweden had just begun and MGM Production Group had not yet filed its response to Aeroflot's petition to set aside the award; and (iv) Aeroflot's appeal before the Swedish court sought a "broad review of the interpretation of the Agreement—issues the arbitration panel presumably already considered." *MGM Production Grp.*, 573 F. Supp. 2d at 778.

None of those facts that formed the basis of the Court's refusal to issue a stay in *MGM Production Group* is present here.  Guinea filed the Annulment Petition in the CCJA *before* Getma commenced this proceeding.  The CCJA has not denied a request by Guinea to stay enforcement of the Award pending resolution of the Annulment Petition—as explained above, the Award is currently unenforceable in any of the OHADA states in accordance with the CCJA Rules.  The proceedings before the CCJA are well advanced—all written submissions are complete—and Guinea does not seek a broad review of the Tribunal's interpretation of the Concession Agreement.  Rather, unlike Aeroflot in *MGM Production Group*, Guinea seeks review of the Tribunal's failure to consider evidence and allow Guinea to be heard on its claim that the Concession Agreement was procured by corruption, as well as the Tribunal's breach of the CCJA Rules concerning arbitrator compensation.  First Jaeger Dec. ¶ 40, Ex. 52.

Accordingly, Getma's reliance on *MGM Production Group* is entirely misplaced. This factor clearly weighs in favor of a stay given the procedural posture of the CCJA proceedings.

**C.** ***Europcar* Factor No. 3: Getma Mischaracterizes Guinea's Position That the Award may Receive Greater Scrutiny by the CCJA**

As set out in Guinea's opening brief, relevant commentary on OHADA law, as well as French cases closely scrutinizing arbitral awards involving allegations of corruption, suggest that the Award may receive greater scrutiny before the CCJA. Resp. Br. at 9-10.[6] Getma responds that both this Court and the CCJA will evaluate the award based on "international public policy" and that Guinea misstates French law. Pet. Opp. at 13-15.

*First,* while it is true that both the New York Convention and Article 30.6 of the CCJA Rules provide that an award may be vacated if it violates public policy, the relevant inquiry here is the level of scrutiny applied by a reviewing court in determining whether an award violates public policy. Accordingly, there is no inconsistency between Guinea's assertion that "fighting corruption is undoubtedly part of the United States' international public policy" (Opp. Br. at 28 n. 17) for purposes of reviewing the Award under the New York Convention, and its assertion that the CCJA will likely closely scrutinize the Award in light of the corruption allegations. Notably, Getma does not dispute the legal commentary cited by Guinea, which states that when reviewing annulment petitions based on alleged violations of international public law, the CCJA may conduct an in-depth examination of the merits of the dispute. Resp. Br. at 10.

*Second,* Getma wrongly claims that Guinea ignores the legal standard that French courts ordinarily apply in reviewing arbitral awards. *See* Pet. Opp. at 13-14. However, French courts' ordinary level of deference to arbitral tribunals in reviewing petitions to vacate awards is of little

---

[6] As Guinea has explained, and Getma acknowledges, (*see* Second Fischer Declaration at ¶ 82) French law is persuasive authority in OHADA proceedings because OHADA law is based on French law. Resp. Br. at 9, n.6.

relevance to the level of scrutiny the CCJA may apply in the circumstances here.  Indeed, the

relevant cases are those cited in Guinea's Annulment Petition, which demonstrate that French

courts closely review the underlying merits of a dispute when a petition to set aside an arbitral

award alleges serious violations of international public policy, such as corruption.  *See* First

Jaeger Decl. ¶ 40, Ex. 52 at 16-18.[7]

     *Third,* Getma's accusation that Guinea improperly ignored the so-called "leading" French

case on the standard for judicial review of arbitral awards is wrong for several reasons.  Pet. Opp.

at 14.[8]  As an initial matter, that case is plainly distinguishable from this one.  Indeed, in that

case, the party seeking to set aside an arbitral award had an opportunity to present its corruption

case to the arbitrators, who considered the matter and rejected the allegations of corruption.

Under those circumstances, the court held that it was inappropriate to conduct an entirely new

review of the merits of the corruption issue.  Second Prokop Decl. ¶ 2, Ex.1 at 2.  Here, to the

contrary, the Tribunal refused to consider compelling evidence of corruption and improperly

disregarded the evidence of corruption that it did permit to be entered into the record.  Resp.

Opp. to Petition at 25-28.  Moreover, contrary to Getma's claim that the French Cour de

---

[7] Getma's attempt to distinguish the *Gas Turbine* and *Thales Euromissile* cases cited by Guinea on the basis that they concerned contracts whose object was corruption, as opposed to contracts that were merely procured by corruption, is entirely unsupported.  Pet. Opp. at 15.  Getma cites no authority for its proffered distinction, and indeed, a recent French Court of Appeals decision held that "when it is claimed that an award gives effect to a contract *obtained by corruption*," the court reviewing a petition to vacate must closely scrutinize the award to determine if its enforcement would violate international public policy.  Declaration of Jeffrey M. Prokop, dated March 2, 2015 ("First Prokop Decl."), Ex. 2 at 11 (emphasis added).  Getma tries to further distinguish the *Thales* case by arguing that the tribunal there had not dealt with the issue of corruption.  Pet. Opp. at 15.  This, however, is precisely the scenario Guinea faces here, where the Tribunal denied Guinea a full and fair opportunity to pursue its corruption claim.  Resp. Opp. to Petition at 25-28.

[8] Getma provided an incorrect citation for that case, which it did not annex to its papers.  Getma cites the case as No. 10-17076, dated December 2, 2014, but case number 10-17076 is actually dated February 12, 2014.  Getma also cites to paragraph 80 of the Second Fisher Declaration in the same citation, but that paragraph says nothing about the case.  For the Court's convenience, the case to which Getma cites, together with an English translation thereof, is annexed as Exhibit 1 to the Declaration of Jeffrey M. Prokop dated May 6, 2015 ("Second Prokop Decl.").

cassation it cites is a "leading" case, it has been heavily criticized by French commentators. *See, e.g.*, Louis Christophe Delanoy, "L'arrêt M. Schneider du 12 février 2014: feu rouge pour la "révision", feu vert pour la corruption?" at ¶ 29 ("a reviewing court that closes its eyes to [allegations of corruption] on the sole grounds that the arbitrators denied it or were unaware of its existence would be providing an advantage to the perpetrators, inciting them to continue in the same manner…which would amount to moral or even criminal complicity.").[9]

Moreover, several subsequent French Court of Appeals decisions directly support Guinea's position that French courts closely review the underlying merits of an arbitral award where there is an allegation that the award gives effect to a contract procured by corruption. *See, e.g.,* First Prokop Decl. ¶ 3, Ex. 2 ("when it is claimed that an award gives effect to a contract obtained by corruption, it is the responsibility of the court hearing a claim for annulment…to examine, as a matter of law and of fact, all information needed to rule on the alleged illegality of the agreement and to evaluate whether recognition or enforcement of the award effectively and concretely violates international public policy.").

### D. *Europcar* **Factor No. 4: Getma Ignores the Voluminous Case Law Ordering Stays Based on Concerns of Comity and Efficiency That Are Present Here**

As explained in Guinea's opening brief, this factor weighs in favor of a stay because the Annulment Petition—which predates Getma's Petition here—raises issues of fact and OHADA law that have no connection to the United States whatsoever and should be decided by the CCJA in the first instance, and because there is no evidence that Guinea seeks to hinder resolution of the dispute. Resp. Br. at 10-13. In response, Getma claims that (i) Guinea mischaracterizes the analysis under this *Europcar* factor; (ii) international comity is not properly considered as part of

---

[9]  A copy of this article, and an English translation thereof, is attached to the Second Prokop Declaration as Exhibit 2.

the analysis, and the voluminous case law ordering stays in similar circumstances is somehow distinguishable; and (iii) Guinea intends to hinder resolution of the dispute by "relitigating" issues before the CCJA that were considered and decided by the Tribunal.  Pet. Opp. at 16-22. As set out below, each of those arguments is without merit and the fourth *Europcar* factor weighs in favor of a stay.

### 1.   Guinea Did Not Mischaracterize *Europcar* Factor No. 4.

Getma accuses Guinea of ignoring that, where proceedings to set aside an arbitral award have been brought in a foreign court—as opposed to an action to enforce—that fact tends to weigh against a stay for purposes of the first part of the fourth *Europcar* factor.  Pet. Opp. at 16. That is incorrect.  In its opening brief, Guinea acknowledges this point.  Resp. Br. at 10-11. However, whether the foreign action was brought to set aside an award or to enforce it is but one of several non-dispositive considerations under the fourth *Europcar* factor.  Indeed, it is Getma that mischaracterizes this *Europcar* factor by asserting that Guinea is "conflating this factor with the issue of comity."  Pet. Opp. at 16.  To the contrary, the fourth *Europcar* factor explicitly refers to "international comity" as a consideration entirely distinct from the issue of whether the foreign proceeding involves an application to set aside or enforce an arbitral award.  *Europcar*, 156 F.3d at 318 ("whether [the foreign proceedings] were initiated before the underlying enforcement proceeding so as to raise concerns of international comity.").

### 2.   Getma Cannot Sidestep Obvious and Significant International Comity Concerns.

Getma attempts to avoid the serious concerns of international comity that are present here by claiming that (i) Getma commenced this proceeding within a "reasonable time" after Guinea filed the Annulment Petition; (ii) the proceedings before the CCJA do not involve "intricate

issues" of foreign law; and (iii) Guinea's cited cases are somehow distinguishable.  Pet. Opp. at
16-19.  All of those arguments fail.

*First,* Getma incorrectly asserts that international comity concerns are not triggered here
because Getma commenced this proceeding only approximately two months after Guinea filed
the Annulment Petition before the CCJA.[10]  Pet. Opp. at 16-17.  The relevant question under this
*Europcar* factor, however, is not whether Getma submitted the Petition "within a reasonable
time" after Guinea filed the Annulment Petition with the CCJA, but simply whether the foreign
proceeding was initiated "before the underlying enforcement proceeding so as to raise concerns
of international comity." *Europcar*, 156 F.3d at 318.   Getma does not and cannot dispute that
Guinea filed the Annulment Petition before Getma commenced this action, thus raising concerns
of international comity and tipping this part of the fourth *Europcar* factor in favor of a stay.[11]

*Second,* Getma attempts to invent a requirement that a party opposing confirmation of an
award must raise "intricate points" of foreign law for comity concerns to arise, and argues that
there are no "intricate points" of OHADA law here.  Pet. Opp. at 17-18.  Getma is wrong on the
law and the facts.  Neither *Europcar* nor its progeny purport to impose any requirement that
"intricate points" of foreign law be present in order for international comity concerns to arise.
Getma's argument appears to be based on the Court's ruling in the *CP Construction Pioneers*

---

[10] Notably, however, Getma did not serve Guinea with the Petition for another two months after it commenced this
proceeding.  *See* Certificate of Clerk, ECF. No. 10.

[11] The timing of the French *exequatur* proceedings referred to by Getma (Pet. Opp. at 17) has no impact on this (or
any other) factor of the *Europcar* analysis, which focuses solely on the timing of the confirmation proceeding in the
U.S. relative to the foreign proceeding that is the basis for the requested stay.  In any event, Getma's assertion that
Guinea filed its Annulment Petition in response to the French *exequatur* judgment, which was purportedly served on
Guinea less than a week before Guinea filed the Annulment Petition, is entirely unsupported and incorrect.  *See* Pet.
Opp. at 17.  Guinea's Annulment Petition, which was over 40 pages in length and was accompanied by several
dozen exhibits, was filed on the deadline set by Article 29.3 of the CCJA Rules, and was obviously in process well
before that date.

*Baugesellschaft Anstalt* case, in which the Court ordered a stay where it "would have to decide an intricate point of Ghana law that is more properly decided by a Ghana court." 578 F. Supp. 2d 50, 54 (D.D.C. 2008). But neither the Court in *CPConstruction Pioneers Baugesellschaft Anstalt* nor any court interpreting that case purported to create the "intricate point of foreign law" requirement that Getma now espouses.

Nevertheless, if *CPConstruction Pioneers Baugesellschaft Anstalt* sets the standard for what constitutes an "intricate point" of foreign law, the Annulment Petition amply meets that standard. The issue in *CPConstruction Pioneers Baugesellschaft Anstalt* was whether a claim of fraud in connection with a public works contract executed and performed in Ghana fell within an arbitral tribunal's jurisdiction under the Ghana Arbitration Act. 578 F. Supp. 2d at 51-52. Similarly, the Award here concerned a dispute involving a public works contract that was negotiated and performed in an OHADA member state and was expressly governed by OHADA law. Both the Annulment Petition and Guinea's opposition to Getma's Petition here require the CCJA and this Court to determine, *inter alia*, whether the Tribunal complied with the CCJA Rules concerning arbitrator compensation or whether, as Getma now claims, the parties' arbitration clause, which itself is governed by OHADA law, evinced an intent to opt out of those CCJA Rules. *See* First Jaeger Decl., ¶ 40, Ex. 52 at ¶¶ 164-165; Resp. Opp. to Petition at 33-34. As set out in Guinea's Opposition to the Petition and Getma's Reply Memorandum in further support of the Petition, that question implicates Article 10 of the OHADA Uniform Arbitration Act. Resp. Opp. to Petition at 34-35; Pet. Reply Br. at 14-15.[12] Accordingly, it is beyond

---

[12] Specifically, Getma claims that Article 10 of the Uniform OHADA Arbitration Act permits parties to exclude the application of certain provisions of the applicable arbitration rules, and that the parties here expressly agreed in Article 31 of the Concession Agreement that the CCJA Rules concerning arbitrator compensation, including the requirement that the CCJA set the arbitrators' fees, would not apply. Pet. Opp. at 14-15. However, that claim is groundless not only because Article 31 of the Concession Agreement deals only with the apportionment of arbitration costs, not how the arbitrators' fees would be fixed, but because the parties and the Tribunal always

question that Guinea's challenge to the Award implicates issues of OHADA law, and the Court's

ruling in *CPConstruction Pioneers Baugesellschaft Anstal* underscores why a stay is appropriate

here.

*Third,* Getma fails to distinguish Guinea's other cited cases demonstrating that U.S.

courts routinely order stays based on the same comity concerns that are present here.  For

example, in *Higgins v. SPX Corporation*, the Court stayed confirmation proceeding pending the

conclusion of set-aside proceedings in Brazil where the seat of arbitration was Brazil and the

underlying case involved issues of Brazilian law.  No. 1:05-CV-846, 2006 WL 1008677, at * 14

(W.D. Mich. Apr. 18, 2006).  Getma weakly claims that the Court's ruling in *Higgins* was

"conclusory" and made "no effort to apply any law to any facts of the case."  Pet. Opp. at 18.

But that is simply incorrect.  The Court there specifically cited *Europcar* and numerous other

cases in analyzing the issue and ordering a stay.

Even less persuasive is Getma's attempts to distinguish *Caribbean Trading & Fidelity

Corporation v. Nigerian Nation Petroleum Corporation*, No. 90 Civ. 4169, 1990 U.S. Dist.

LEXIS 17198 (S.D.N.Y. Dec. 18, 1990) and *Fertilizer Corporation of India v. IDI Mgmt.* 517 F.

Supp. 948 (S.D. Ohio 1981) solely on the basis that they were both decided prior to *Europcar*.

Pet. Opp. at 18.  Getma ignores that both cases are still good law and that their holdings are

entirely consistent with the *Europcar* test.  Indeed, *Europcar* repeatedly cites to *Fertilizer

Corporation*, including in the court's discussion of the considerations that weigh in favor of

granting a stay.  156 F.3d at 317.  Getma simply refuses to engage with the holding in both

*Fertilizer Corporation* and *Caribbean Trading* that a stay is appropriate where the underlying

---

understood that the CCJA Rules concerning arbitrator compensation applied.  Resp. Opp. to Petition at 38.  Indeed, both the Tribunal and Getma's counsel repeatedly petitioned the CCJA to increase the arbitrators' fees, belying the notion that the parties contractually agreed to set the arbitrators' fees themselves.  *Id.*

arbitral award implicates issues of foreign law that are pending before a foreign court.  Indeed, in *Caribbean Trading*, the Court granted the stay because "[t]he contract is governed by the law of Nigeria, and the Nigerian courts are better equipped than this Court to determine the proper application of that law."  1990 U.S. Dist. LEXIS 17198, at *20-21.  Likewise, in *Fertilizer Corporation*, the Court "adjourn[ed] its decision on enforcement of the Nitrophosphate Award until the Indian courts decide with finality whether the award is correct under Indian law."  517 F. Supp. at 962.

Lastly, Getma's assertion that certain of Guinea's cited cases involved foreign proceedings initiated by the petitioner in the U.S. confirmation proceedings, while true, is of no significance.  Pet. Opp. at 18.  Under the third prong of the fourth *Europcar* factor, where a party seeking to enforce an award in the U.S. is the party that commenced the prior foreign proceedings that have created concerns of international comity, the argument for enforcement in the U.S. "loses force because … the consequent offense to international comity can be laid at the plaintiff's door."  *Europcar*, 156 F.3d at 317; *see id.* at 318 (stating that a court should consider "the characteristics of the foreign proceedings including … whether they were initiated by the party now seeking to enforce the award in federal court.").  But that part of the fourth *Europcar* factor is simply irrelevant here, where Guinea commenced the CCJA proceedings before Getma filed its Petition here, such that it is Getma that has created the "consequent offense to international comity," not Guinea.[13]

---

[13] Indeed, Getma attempts to claim that this aspect of the fourth *Europcar* factor "does not support issuance of a stay" and that Guinea purportedly agrees.  *See* Pet. Opp. at 19.  That is incorrect.  As Guinea has explained, the fact that Guinea initiated annulment proceedings before the CCJA prior to Getma's Petition here weighs in favor of a stay under the fourth *Europcar* factor.

**3.    There Is No Evidence That Guinea Intends to Hinder or Delay Resolution of the Dispute.**

As set out in Guinea's opening brief, there is simply no evidence that Guinea submitted the Annulment Petition with the intent to hinder or delay the resolution of the dispute.   Resp. Br. at 13.   The Annulment Petition raises serious and substantial issues concerning corruption in the procurement of the Concession Agreement, as well as whether the arbitrators complied with the CCJA Rules.   There can be no question that the Annulment Petition was brought in good faith in accordance with Article 30.6 of the CCJA Rules.   One need look no further than the CCJA's repeated reprimands of the Tribunal—including the CCJA's statement that the Tribunal's conduct in respect of its compensation could threaten the enforceability of the Award—to determine that the Annulment Petition is well-founded and not a tool to hinder resolution of the dispute.   Resp. Opp. to Petition at 19-20.

Nevertheless, Getma claims that the Annulment Petition is nothing more than an attempt to re-hash corruption issues that Guinea "had the opportunity to litigate."   Pet. Opp. at 20, 22. But that is precisely the problem—Guinea never had a full and fair opportunity to litigate the issue of corruption and Getma can only claim otherwise by mischaracterizing the record.   Indeed, as set forth in Guinea's opposition to the Petition, the Tribunal: (i) strictly limited the evidence of corruption Guinea could produce and when (Resp. Opp. to Petition at 26-27); (ii) disregarded Mr. Fox's detailed testimony on the basis that he was not a percipient witness to the bribery he described in his witness statement, yet refused to admit into the record and consider witness statements from two individuals who were direct participants in the bribery scheme (Resp. Opp. to Petition at 26-27); (iii) abruptly closed the record without any explanation (Resp. Opp. to

17

Petition at 26); and (iv) refused to permit a modest adjournment of the proceedings to allow

Guinea to further pursue its corruption claim (Resp. Opp. to Petition at 25-26).[14]

Moreover, Getma conveniently omits the other principal basis for Guinea's request that

the CCJA set aside the Award—that the arbitrators violated their duties by repeatedly breaching

the CCJA Rules concerning arbitrator compensation.  As set forth in detail in Guinea's

opposition to the Petition, the Tribunal's conduct in that regard was entirely inappropriate.  Resp.

Opp. at 33-42.  Under these circumstances, Getma cannot reasonably claim either that Guinea's

Annulment Petition is frivolous or that it is calculated to hinder resolution of this dispute.[15]

### E. *Europcar* Factor No. 5: Getma Ignores the Hardship to Guinea and Vastly Overstates Its Own Potential Hardship

The balance of hardships favors Guinea because the risk of substantial prejudice that

Guinea would suffer if the Court confirmed the Award and the CCJA later annulled it outweighs

what is likely a minor delay of this proceeding.  Resp. Br. at 13-14.  In evaluating this *Europcar*

factor, Getma does not balance the hardships at all.  Instead, it focuses solely on the purported

hardship to itself and ignores the significant hardship to Guinea.  Pet. Opp. at 23-24.  In doing so,

---

[14] Getma's claim that Guinea waived any objection to the Tribunal's handling of the corruption issue by not objecting to the conduct of the December 13, 2013 hearing at the hearing itself is groundless.  Pet. Opp. at 21; Pet. Reply Br. at 8.  It was not until *after* that hearing that the Tribunal revealed its intent to close the record and refuse to consider additional evidence or adjourn the proceedings to permit Guinea to put on its case concerning corruption. First Jaeger Decl., ¶ 30, Ex. 42.  At that point, Guinea promptly objected and requested that the Tribunal reconsider its ruling, stating that the Tribunal's decision "deprives [Guinea] of the possibility of producing essential evidence for its defense" and is contrary to the principle that "the parties have a right to be present and heard."  *Id.* at ¶ 31, Ex. 43.

[15] *Continental Transfer Technique Limited v. Federal Government of Nigeria*, 697 F. Supp, 2d 46 (D.D.C. 2010) demonstrates the sort of conduct that constitutes an intent to hinder resolution of a dispute and further undermines Getma's allegations against Guinea here.  In that case, Nigeria failed to timely move to set aside the award at the arbitral seat, initially defaulted in a confirmation proceeding brought in this Court and, only after it obtained a temporary stay of the confirmation proceeding, sought to annul the award at the arbitral seat.  *Id.* At 60.  In refusing a stay, the Court noted that the sequence of events clearly indicated "an intent to hinder or delay resolution of the dispute before this Court."  *Id.* (quoting Europcar, 156 F.3d at 318).  None of these facts are present here, where Guinea timely filed the Annulment Petition before the CCJA and has appeared and proceeded in this action in accordance with the applicable rules.

Getma disregards *Europcar*, which states that a court should balance the parties' respective hardships "keeping in mind that…under Article V of the Convention, *an award should not be enforced if it is set aside or suspended in the originating country.*"  *Europcar*, 156 F.3d at 318 (emphasis added); *see Jorf Lasfar Energy Co.*, 2005 U.S. District Lexis 34969 at *10 (finding that hardship to the plaintiff was outweighed by the "very real harm to defendant were we to confirm the award…and the French court were to later determine that the award was improper.").

Moreover, relying on *Chevron Corporation v. Republic of Ecuador*, Getma claims that the balance of hardships tips in its favor because of the purported "excessive delay" in concluding the dispute.  949 F.Supp.2d 57 at 72.  However, as explained above, *Chevron* involved a dispute spanning more than twenty years and involved a prior unsuccessful attempt by the respondent to set aside the award at the seat of arbitration.  Nothing here suggests that the time taken to resolve the parties' dispute has been unusual or excessive given the magnitude of the dispute or the significant sums at stake.  Indeed, the Tribunal delivered the Award to the parties less than one year ago and the parties have proceeded before the CCJA and before this Court in accordance with the procedural timetables established by the applicable rules and the CCJA's and this Court's orders.  Getma claims that the CCJA proceedings are running at a pace parallel to these proceedings (Pet. Opp. at 16), so awaiting the completion of the CCJA proceedings presents little, if any, hardship.  This is particularly true where the Award, if ultimately confirmed, provides for prejudgment interest.  *See* Award at ¶ 271.

Finally, Getma obliquely raises the issue of security, although it does not appear that Getma seeks an order from the Court directing Guinea to post security pursuant to Article VI of the New York Convention.[16]  Pet. Opp. at 23.  In any event, it would be entirely inappropriate to

---

[16] Indeed, neither Getma's Opposition to Respondent's Motion to Stay (ECF. No. 22-1), nor its Proposed Order (ECF No. 22-2) seeks such relief.

require a solvent foreign sovereign to post security, as one would treat a corporate defendant in danger of going bankrupt or otherwise using corporate formalities to insulate itself from judgment.  Getma has not cited any precedent—nor is Guinea aware of any—in which a U.S. court ordered a foreign sovereign to post pre-judgment security under Article VI of the New York Convention.  Indeed, as Getma appears to recognize (*see* Pet. Opp. at 23, n.12), Judge Friedman recently addressed this precise issue in *DRC, Incorporated v. Republic of Honduras*. In that case, the Republic of Honduras moved to stay proceedings pursuant to Article VI of the New York Convention.  774 F. Supp. 2d at 72.  In response, the petitioner requested that the Court order Honduras to post security in the full amount of the arbitral award.  *Id*. at 76.  Judge Friedman initially stayed the case, but denied the petitioner's request for security, stating that Honduras was "a sovereign state that presumably is solvent and will comply with legitimate orders issued by courts in this country or in Honduras." *Id*.  That reasoning is directly applicable here.[17]  Getma has not presented any evidence that Guinea is insolvent or that it will not comply with orders of this Court.

In addition, ordering security would raise very serious issues under the Foreign Sovereign Immunities Act (the "FSIA"), which prohibits pre-judgment attachment of a foreign sovereign's assets unless (i) the foreign sovereign explicitly waives immunity with respect to pre-judgment attachment of the assets; and (ii) the assets that are sought to be attached relate to a foreign sovereign's "commercial activity," which are "the types of actions by which a private party engages in trade and traffic or commerce."  28 U.S.C. §§ 1609, 1610(d); *Republic of Argentina v. Weltover*, 504 U.S. 607, 614 (1992).  Courts have found that an order requiring pre-judgment

---

[17] As Guinea noted in its opening papers, Judge Friedman later vacated the stay order when it was determined that the Republic of Honduras never actually commenced an action to set aside or modify the arbitration award in Honduras.  *See DRC, Inc. v. Republic of Honduras*, 999 F. Supp. 2d 1 (D.D.C. 2012).  However, his rationale in rejecting DRC's request for security is no less persuasive and applicable here.

security amounts to an attachment for purposes of the FSIA.  *See S & S Mach. Co. v. Masinexportimport*, 706 F.2d 411, 417 (2d Cir. 1983) (affirming trial court ruling vacating pre-judgment attachment of letters of credit because such attachment would violate the FSIA's prohibition against pre-judgment attachments); *see also Sales v. Republic of Uganda*, 828 F. Supp. 1032, 1037 (S.D.N.Y. 1993) ("The Second Circuit has also suggested that a district court order addressed to a foreign state to post security as a condition of adjourning the enforcement of a foreign arbitral award, as provided for by Article VI of the [New York Convention] may be regarded as the equivalent of an 'attachment' of a foreign state's property within the meaning of the FSIA.") (quoting *Caribbean Trading and Fidelity Corp. v. Nigerian National Petroleum Corp.*, 948 F.2d 111 (2d Cir. 1991)).

Here, Guinea has not waived sovereign immunity with respect to pre-judgment attachment, and ordering it to post security would therefore violate the FSIA's prohibition against prejudgment attachment.  Moreover, even if Guinea had explicitly waived its immunity to pre-judgment attachment, Getma has not even attempted to identify any non-immune assets held by Guinea in the United States, as is its burden.  28 U.S.C. §1610(d); *see Rubin v. The Islamic Republic of Iran*, 637 F.3d 783, 796 (7th Cir. 2011) ("the plaintiff must identify specific property upon which it is trying to act… [a] court cannot give a party a blank check when a foreign sovereign is involved.") (citing *Autotech Techs. LP v. Integral Research & Dev. Corp.*, 499 F.3d 737, 750 (7th Cir. 2007)).

F.     ***Europcar* Factor No. 6: Getma Improperly Disregards That the Award Is Unenforceable in the OHADA States**

As to the final *Europcar* factor, Guinea noted in its opening papers that the fact that the Award is not enforceable anywhere in the OHADA zone pending completion of the annulment proceedings is another consideration that tips in favor of a stay.  Resp. Br. at 14.  Getma

21

dismisses this consideration as "unremarkable" because, as Guinea has acknowledged, the unenforceability of the Award in the OHADA zone does not strictly preclude enforcement of the Award elsewhere.  Pet. Opp. at 24.  Getma misses the point.  The unenforceability of the Award in the OHADA zone serves to reinforce the significance of the CCJA's role in the enforcement scheme envisaged by both the CCJA Rules and the New York Convention.  Indeed, in *Jorf Lasfar Energy Company*, the Court held that it is "especially significant that under French law, defendant's appeal of the Arbitral Award automatically stayed execution of the award in that jurisdiction" and determined that this consideration weighed in favor of a stay.  2005 U.S. Dist. LEXIS 34969, at *9.

III.   **CONCLUSION**

For the reasons set out in Guinea's opposition to Getma's Petition to Confirm, the Court should deny the Petition in its entirety.  Alternatively, for the reasons set out above and in Guinea's opening brief, the Court should stay this case pending the conclusion of annulment proceedings before the CCJA.

Dated:  May 6, 2015
         Washington, D.C.

                                        ORRICK, HERRINGTON & SUTCLIFFE LLP


                                        By: /s/ Jeffrey M. Prokop
                                              Jeffrey M. Prokop (D.C. Bar. No. 992687)
                                              Brooke Daley (D.C. Bar. No. 1013387)
                                              1152 15th Street N.W.
                                              Washington, D.C. 20005
                                              Telephone: (202) 339-8400
                                              Fax: (202) 339-8500
                                              jprokop@orrick.com
                                              bdaley@orrick.com

                                              Jamie L. Shookman (admitted *pro hac vice*)
                                              51 West 52nd Street
                                              New York, NY 10019-6142
                                              Telephone: (212) 506-5141
                                              Fax: (212) 506-5000
                                              jshookman@orrick.com


                                              *Attorneys for Respondent*
                                              *The Republic of Guinea*

## CERTIFICATE OF SERVICE

I, Jeffrey M. Prokop, hereby certify that on this 6th day of May 2015, I electronically filed the

foregoing Reply In Further Support of Guinea's Motion to Stay this Proceeding via the Court's

CM/ECF system, which will automatically serve counsel of record as

follows:

Allen Barksdale Green
Ivan W. Bilaniuk
MCKENNA, LONG & ALDRIDGE, LLP
1900 K Street, NW
Suite 100
Washington, DC 20006-1110

/s/ Jeffrey M. Prokop
Jeffrey M. Prokop (D.C. Bar. No. 992687)
ORRICK HERRINGTON & SUTCLIFFE LLP
1152 15th St. N.W.
Washington, D.C. 20005
Telephone: (202) 339-8400
Fax: (202) 339-8500
jprokop@orrick.com

*Attorney for Respondent*
*The Republic of Guinea*