# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

———————————————————————
In the matter of the Arbitration of Certain
Controversies Between

GETMA INTERNATIONAL,

              Petitioner,

and

THE REPUBLIC OF GUINEA,

              Respondent.
———————————————————————

    Civil Action No. 14-1616 (RBW)

## MEMORANDUM OPINION

The petitioner, Getma International ("Getma"), commenced this civil action against the respondent, the Republic of Guinea ("Guinea"), seeking confirmation and enforcement of an arbitral award pursuant to the Federal Arbitration Act, 9 U.S.C. § 201 (2012).  See Petition to Confirm Arbitration Award and to Enter Judgment ("Confirm Pet.") at 1; id. ¶¶ 1-2, 8-10, 32-41. Currently before the Court is Guinea's motion to stay these proceedings, pending a foreign proceeding that it instituted to annul the award.  See Respondent the Republic of Guinea's Motion to Stay This Proceeding ("Stay Mot.") at 1.  Getma opposes the motion and insists that, notwithstanding the foreign annulment proceeding, the Court should confirm and enforce the arbitral award.  Opposition to Respondent's Motion to stay ("Stay Opp'n") at 1.  Upon careful consideration of the parties' submissions,[1] the Court concludes that it must grant Guinea's motion.

---

[1]  In addition to the filings already mentioned, the Court considered the following submissions in rendering its decision: (1) the Memorandum of Points and Authorities in Support of Petition to Confirm Arbitration Award and to

                       (continued . . . )

# I.   BACKGROUND

## A.  The Arbitration Proceeding

In 2008, Getma and Guinea entered into a Concession Agreement (or the "Agreement")

for Getma to develop Guinea's main port in Conakry, Guinea's capital city.  Confirm Pet. ¶ 13;

see also Confirm Opp'n at 1, 7.  The Agreement was amended in 2009, to "clarif[y] certain

contractual obligations, including a new schedule of payments and work."  Confirm Pet. ¶ 14.

The amendment "left unchanged the general terms and conditions of the Agreement[,] including

the dispute resolution provision."  Id.  In March 2011, Guinea terminated the Agreement, id. ¶

15; see also Confirm Opp'n at 2, 10, and "signed a new [C]oncession [A]greement with a

different company," Confirm Pet. ¶ 16; see also Confirm Opp'n at 10.  Shortly thereafter, Getma

invoked the dispute resolution clause in the Agreement to recover damages for Guinea's conduct.

See Confirm Pet. ¶¶ 16-20; see also Confirm Opp'n. at 2, 11.

The dispute resolution clause provides that any contractual disputes between the parties

would be resolved according to the Common Court of Justice and Arbitration ("CCJA")[2]

---

( . . . continued)
Enter Judgment ("Confirm Mem."); (2) the Republic of Guinea's Memorandum of Points and Authorities in
Opposition to Getma International's Petition to Confirm ("Confirm Opp'n"); (3) the Memorandum of Points and
Authorities in Support of the Republic of Guinea's Motion to Stay This Proceeding ("Stay Mem."); (4) the
[Memorandum in Support of the] Opposition to [the] Respondent's Motion to Stay ("Stay Opp'n Mem."); and (5)
the Reply Memorandum of Points and Authorities in Further Support of the Republic of Guinea's Motion to Stay
This Proceeding ("Stay Reply").

[2]  "[T]he treaty establishing the Organisation pour l'Harmonisation en Afrique du Droit des Affaires ('OHADA')
and its subsequent uniform acts, govern[] the [Concession] [A]greement."  Confirm Opp'n at 8; see also Confirm
Pet. ¶ 19.  "The OHADA Treaty was signed . . . for the purpose of creating a uniform system of business laws in
[certain] West and Central Africa[n] [states, such as Guinea,] in order to encourage investment and economic
expansion in the region."  Confirm Opp'n at 8 n.7.  "Subsequent to the execution of the OHADA Treaty, the
OHADA member states adopted a series of uniform acts that apply in each of the member states and supersede all
prior and future conflicting national laws."  Id.  Additionally, "[t]he OHADA Treaty established the CCJA as an
adjudicative body for OHADA law in the member states."  Id. at 8 n.8.  "The CCJA serves a dual role as both the
highest appellate court that adjudicates legal disputes in member states concerning interpretation or application of
the OHADA Uniform Acts and as an arbitration center administering arbitration proceedings brought under the
OHADA Treaty and subject to the [a]rbitration [r]ules of the CCJA . . . ."  Id.  The judges of the CCJA "have

(continued . . . )

arbitration rules.  Confirm Pet. ¶ 19; <u>see also</u> Confirm Opp'n at 8.  Getma filed a request for

arbitration with the CCJA in May 2011.  Confirm Pet. ¶ 20; <u>see also</u> Confirm Opp'n at 2, 11.

And in January 2012, a tribunal of three arbitrators (the "arbitral tribunal") was constituted to

resolve the parties' dispute.  Confirm Pet. ¶ 21; <u>see also</u> Confirm Opp'n at 11.  After considering

extensive discovery and numerous briefings from the parties, <u>see</u> Confirm Pet. ¶¶ 22-27, the

arbitral tribunal rendered a final decision in May 2014, ruling "in favor of Getma on several of

its claims" and awarding it more than €38.5 million, plus interest, <u>id.</u> ¶¶ 28-31; <u>see also</u> Confirm

Opp'n at 2, 20, 21.

### B.  The Annulment Proceeding

In July 2014, Guinea filed an annulment petition with the CCJA, seeking to have the

CCJA set aside the arbitral award.  Confirm Pet. ¶ 31; <u>see also</u> Confirm Opp'n at 22.  One of the

primary reasons identified in Guinea's annulment petition for the set aside is that the arbitral

tribunal did not fully consider evidence that allegedly demonstrated that Getma procured the

Agreement through "corruption."  Confirm Opp'n at 22; <u>see also</u> <u>id.</u> at 15-19.  The annulment

proceeding is currently ongoing, but both parties dispute when it will conclude.  <u>Compare</u> Stay

Mem. at 3 ("Guinea anticipates the CCJA to issue a[n] [annulment] ruling by the end of 2015 or

early 2016."), <u>with</u> Stay Opp'n Mem. at 2 ("It is unknown when this annulment petition will be

resolved.  There are no formal or informal CCJA rules establishing a timeline for resolution of

these proceedings, but anecdotal evidence shows resolution may take longer than two years.").

---

( . . . continued)

jurisdiction . . . to review and set aside an arbitral award rendered under the CCJA Rules."  <u>Id.</u>  For more
background about the CCJA, see Claire Moore Dickerson, <u>Harmonizing Business Laws in Africa: OHADA Calls</u>
<u>the Tune</u>, 44 Colum. J. Transnat'l L. 17, 55-58 (2005), and Gwenann Seznec, <u>The Role of the African State in</u>
<u>International Commercial Arbitration</u>, 8 Vindobona J. of Int'l Com. L. & Arb. 211, 215 (2004).

Because the annulment proceeding remains in progress, Guinea seeks a stay of this matter.  Stay Mot. at 1.

## II.    LEGAL STANDARD

The Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, also known as the "New York Convention," is enforced through the Federal Arbitration Act, 9 U.S.C. § 201 (2012).  See, e.g., G.E. Transp. S.P.A. v. Republic of Albania, 693 F. Supp. 2d 132, 136 & n.5 (D.D.C. 2010).  The New York Convention authorizes the recipient of a foreign arbitral award to seek confirmation and enforcement of the award in federal court.  See 9 U.S.C. §§ 202, 207.  The New York Convention provides that a Court "shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention."  Id. § 207.  Such grounds include the following: incapacity of the parties; invalidity of the underlying agreement; deficient notice of the arbitration proceedings; an award beyond the scope of the arbitration agreement; improper composition of the arbitration panel; and an award that has not yet become binding, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.  TermoRio S.A. E.S.P. v. Electranta S.P., 487 F.3d 928, 934-35 (D.C. Cir. 2007).  The New York Convention, however, also provides the Court with the discretion to defer confirmation and enforcement of the arbitral award if there is a pending action in another jurisdiction to set aside the award.  See Europcar Italia, S.p.A. v. Maiellano Tours, Inc., 156 F.3d 310, 316-17 (2d Cir. 1998) ("A court has discretion to adjourn enforcement proceedings where an application has been made in the originating country to have the arbitral award set aside or suspended. . . . [W]here a parallel proceeding is ongoing in the originating country and there is a possibility that the award will be set aside, a district court may be acting

improvidently by enforcing the award prior to the completion of the foreign proceedings."

(citations and ellipses omitted)); Cont'l Transfert Technique Ltd. v. Fed. Gov't of Nigeria, 697 F.

Supp. 2d 46, 59 (D.D.C. 2010) ("[I]t is within the discretion of the district court to decide

whether an action should be adjourned pursuant to . . . [the New York Convention].").  "A stay

of confirmation should not be lightly granted lest it encourage abusive tactics by the party that

lost in arbitration."  Europcar, 156 F.3d at 317.

### III.    ANALYSIS

As set forth in Europcar, courts should consider several factors in deciding whether to

grant a stay[3]:

> (1) the general objectives of arbitration—the expeditious resolution of disputes and the avoidance of protracted and expensive litigation;
> (2) the status of the foreign proceedings and the estimated time for those proceedings to be resolved;
> (3) whether the award sought to be enforced will receive greater scrutiny in the foreign proceedings under a less deferential standard of review;
> (4) the characteristics of the foreign proceedings including (i) whether they were brought to enforce an award (which would tend to weigh in favor of a stay) or to set the award aside (which would tend to weigh in favor of enforcement); (ii) whether they were initiated before the underlying enforcement proceeding so as to raise concerns of international comity; (iii) whether they were initiated by the party now seeking to enforce the award in federal court; and (iv) whether they were initiated under circumstances indicating an intent to hinder or delay resolution of the dispute;
> (5) a balance of the possible hardships to each of the parties, keeping in mind that if enforcement is postponed under . . . the [New York] Convention, the party seeking enforcement may receive "suitable security" and that, under . . . the Convention, an award should not be enforced if it is set aside or suspended in the originating country; and
> (6) any other circumstances that could tend to shift the balance in favor of or against adjournment.

---

[3]  The parties agree that Europcar should guide the Court's analysis of Guinea's motion, as Europcar has guided other members of this Court when confronting a motion to stay pending the outcome of a foreign arbitral proceeding.  See Stay Opp'n Mem. at 4 & n.1

156 F.3d at 317-18 (citation omitted).  Although the Second Circuit's pronouncement is not

binding on this Court, the Court agrees with its position and will therefore address each factor in

turn, cognizant that "the first and second factors . . . should weigh more heavily in . . . [its]

determination" of the propriety of a stay.  Id. at 318.

###    A.  The First Europcar Factor

The general objectives of arbitration weigh in favor of staying confirmation of the award.

Although a stay would immediate delay the resolution of the parties' dispute, it would still

"likely [be] shorter than the possible delay that would occur if this [C]ourt were to confirm the

award and the [CCJA were to] . . . then set it aside."  Jorf Lasfar Energy Co., S.C.A. v. AMCI

Exp. Corp., No. 05-CV-0423, 2005 WL 3533128, at *3 (W.D. Pa. Dec. 22, 2005).  "More

expensive litigation involving more complex issues would result from such a situation."  Id.; see

also Alto Mar Girassol v. Lumbermens Mut. Cas. Co., No. 04-CV-7731, 2005 WL 947126, at *4

(N.D. Ill. Apr. 12, 2005) ("While a stay will cause an immediate delay in the resolution of the

dispute, this delay is likely shorter than the possible delay that would occur if this Court confirms

the award and the . . . [foreign] court ultimately sets the award aside resulting in further litigation

likely involving more complex issues.  Waiting for the . . . [foreign] court to rule will also likely

aid in the avoidance of more expensive additional litigation that could arise.").  A stay would

also allow the arbitration process—contractually agreed to by the parties—to run its course.  See

CPConstuction Pioneers Baugesellschaft Anstalt v. Gov't of the Republic of Ghana, 578 F.

Supp. 2d 50, 54 (D.D.C. 2008) ("[F]ar from being at odds with the nature of arbitration

confirmation proceedings, adjournments pending the completion of set-aside proceeding are an

integral part of such proceedings.").

Further, although arbitration provides for the expeditious resolution of disputes, the Court will not ignore the fact that "the policy favoring arbitration 'is at bottom a policy guaranteeing the enforcement of private contractual arrangements,'" Polimaster Ltd. v. RAE Sys., Inc., 623 F.3d 832, 840 (9th Cir. 2010) (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 625 (1985)), and so the Court "must enforce the parties' agreement according to its terms, even if the result is inefficient," id. (citing Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 217-21 (1985)).  Accordingly, the Court cannot "'overlook agreed-upon arbitral procedures' in favor of the enforcement of an arbitration award."  Id. (quoting Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc., 403 F.3d 85, 91 (2d Cir. 2005)).  The parties here agreed to resolve disputes regarding the Concession Agreement in accordance with the CCJA arbitration rules.  E.g., Confirm Pet. ¶ 19.  Those rules explicitly provide that a party may challenge an arbitral award before the CCJA, unless that right has been waived.  See Stay Mem., First Declaration of Laurent Jaeger ("First Jaeger Decl.") ¶ 3, Exhibit ("Ex.") 2 (English Translation of CCJA Arbitration Rules ("CCJA Arbitration Rules")) at 16 (allowing challenge to validity of arbitral award).  Getma concedes that right has not been waived.  See Stay Opp'n Mem. at 8 (acknowledging that the Agreement contains standard dispute resolution provision that did not waive right to CCJA review, as the provision "does not mention annulment proceedings").  And Guinea's institution of the annulment proceeding before the CCJA is nothing more than an exercise of a bargained-for right under the Concession Agreement.[4]  Thus, to give effect to the parties' agreement and have the dispute resolved in accordance with the CCJA arbitration rules, Europcar's first factor weighs in favor of affording the CCJA the

---

[4] Getma surely understands the importance of contractual rights, as it commenced the arbitration proceeding against Guinea to enforce its rights under the Agreement.

opportunity to complete its review of the arbitral award before this Court considers whether to confirm and enforce it.

Getma's reliance on <u>Chevron Corp. v. Republic of Ecuador</u>, 949 F. Supp. 2d 57, 61 (D.D.C.), <u>judgment entered sub nom.</u> 987 F. Supp. 2d 82 (D.D.C. 2013), <u>aff'd sub nom.</u> 795 F.3d 200 (D.C. Cir. 2015), and <u>G.E. Transport</u> is unavailing.  <u>See</u> Stay Opp'n Mem. at 6-7.  These cases are easily distinguishable on the basis that at least one foreign tribunal in each case had already conducted a post-arbitration review of the arbitral award at issue and refused to set it aside.  <u>See</u> <u>Chevron Corp.</u>, 949 F. Supp. 2d at 72 ("[T]he District Court of the Hague issued a decision denying Ecuador's petition to set the award aside more than a year ago . . . ."); <u>G.E. Transp.</u>, 693 F. Supp. 2d at 139 ("Albania pursued a post-arbitration appeal . . . , which was rejected.").  By contrast, Guinea's annulment petition has not been rejected by the CCJA, and the CCJA has not completed its post-arbitration review of the award.

**B.  The Second <u>Europcar</u> Factor**

A stay is also the favorable outcome because the CCJA has commenced the annulment proceeding, with the parties having already filed written submissions with the CCHA, <u>see</u> Stay Mem. at 3, and Guinea has proffered evidence that the proceeding is likely to conclude by the end of this year or in the early part of the next year, <u>see</u> Stay Mem., First Jaeger Decl. ¶ 42, Ex. 53 (CCJA Annulment Petition Data ("CCJA Data")) at 1-3 (showing that between 2005 and 2011, in six out of eight cases, the CCJA rendered an annulment ruling in less than two years from the date when the annulment petition was filed).  With a likely possibility that the CCJA will render a decision well within a year from the issuance of this Opinion, the second <u>Europcar</u> factor also weighs in favor of granting a stay.  <u>See</u> <u>Jorf Lasfar Energy</u>, 2005 WL 3533128, at *8-

9 (staying confirmation and enforcement of arbitral award where a decision regarding whether to set aside the award was "expected from the . . . [foreign] court before the end of next year").

Getma contends that this factor weighs in its favor because the CCJA has no deadline to render a decision on Guinea's annulment petition[5] and that Guinea's CCJA data actually demonstrate that the timeline for resolution is highly variable and indefinite.  Stay Opp'n Mem. at 10-11 (highlighting data showing that two out of six cases took the CCJA significantly longer than two years to resolve).  With the limited data before the Court, which indisputably shows that there are more cases that were resolved in under two years than not, the Court is not convinced at this juncture that the CCJA will take more than two years to resolve the annulment proceeding.

Contrary to Getma's position, this case is not "remarkably similar" to MGM Production Group, Inc. v. Aeroflot Russian Airlines, 573 F. Supp. 2d 772 (S.D.N.Y. 2003), aff'd, 91 F. App'x 716 (2d Cir. 2004).  Stay Opp'n Mem. at 11.  In MGM Production Group, at least one foreign tribunal had denied a request to stay confirmation and enforcement of the arbitral award, and the post-arbitration review process had "only just begun."  573 F. Supp. 2d 772 at 778.  Here, unlike MGM Production Group, no foreign tribunal has denied a request to stay confirmation and enforcement of the arbitral award.  In fact, under the CCJA arbitration rules, Guinea's appeal of the arbitral award has automatically stayed confirmation and enforcement of the award in OHADA states.  See, e.g., Stay Opp'n Mem. at 24.  Although the Court is under no obligation to refrain from enforcement, it certainly is more prudent to do so.  See Jorf Lasfar Energy, 2005 WL 3533128, at *3 ("[T]he [C]ourt finds it especially significant that under . . . [relevant foreign] law, [the] defendant's appeal of the [a]rbitral [a]ward automatically stayed execution of the award in that jurisdiction.  While that stay of execution is not binding on this

---

[5] Guinea concedes this fact.  See Stay Mem. at 8.

[C]ourt, . . . it [is] highly relevant to a consideration of the overall nature and circumstances of the . . . [foreign] proceeding." (emphasis added) (citation omitted)).  And the annulment proceeding here is more advanced than in <u>MGM Production Group</u>, as almost all written submissions have been completed.  <u>See</u> Stay Mem. at 3.  Based on the status of the annulment proceeding and the likelihood that it will be resolved in the near future, the Court is not convinced that the second <u>Europcar</u> weighs against a stay.

### C.  The Third <u>Europcar</u> Factor

"Although it is not clear whether the [a]ward will receive greater scrutiny"[6] in the CCJA than in this Court, the possibility that the CCJA will set aside the award, "weighs mildly in favor of [granting a] stay." <u>In re Arbitration Between Interdigital Commc'ns Corp. & Samsung Elecs. Co.</u>, 528 F. Supp. 2d 340, 361 (S.D.N.Y. 2007) (denying stay, but nevertheless finding that "due to the <u>possibility</u> that the foreign proceeding at issue here will effectively set aside the dictates of the [a]ward, this factor mildly favors adjourning enforcement of the [a]ward pending resolution of the . . . [foreign proceeding]").

### D.  The Fourth <u>Europcar</u> Factor

In examining the characteristics of the annulment proceeding, the Court finds that this factor favors neither party.  See <u>Chevron Corp.</u>, 949 F. Supp. 2d at 72 ("The fourth factor does not carry much force either way.").  Guinea initiated the foreign proceeding to set aside the award, which weighs against a stay.  <u>See, e.g.</u>, <u>id.</u> ("[F]oreign proceedings . . . initiated to vacate [an] [a]ward, rather than confirm it . . . weigh against a stay.").  But Guinea did so before Getma filed this case against Guinea, so this transpiration of events favors a stay.  <u>See Europcar</u>, 156

---

[6]  Both parties agree that French precedent will serve as persuasive authority for the CCJA, <u>see, e.g.</u>, Stay Mem. at 9 n.6, but they disagree as to how that precedent will be applied to the annulment proceeding, <u>see, e.g.</u>, Stay Opp'n Mem. at 13-15.

F.3d at 318 (annulment proceeding "initiated before the underlying enforcement proceeding" can

"raise concerns of international comity"); see also Telcordia Techs., Inc. v. Telkom SA, Ltd., 95

F. App'x 361, 362-63 (D.C. Cir. 2004) (affirming district court decision to adjourn case pursuant

to New York Convention, where foreign set-aside proceeding was underway); CPConstruction

Pioneers Baugesellschaft Anstalt (Liechtenstein) v. Gov't of Republic of Ghana, Ministry of

Roads & Transp., 578 F. Supp. 2d 50, 54 (D.D.C. 2008) (staying confirmation and enforcement

of arbitral award because "it would have to decide an intricate point of Ghana law that is more

properly decided by a Ghana court"); Higgins v. SPX Corp., No. 05-CV-846, 2006 WL 1008677,

at *4 (W.D. Mich. Apr. 18, 2006) ("[C]omity and efficient use of judicial resources does strongly

favor staying this action to await the decision of the Brazilian courts as to the nullification

action."); Consorcio Rive v. Briggs of Cancun, Inc., No. 99-CV-2204, 1999 WL 1009806, at *2

(E.D. La. Nov. 5, 1999) (denying stay, but recognizing that because foreign "action to nullify the

award was filed before this enforcement action was filed," it "raise[d] concerns of comity"[7]);

Caribbean Trading & Fid. Corp. v. Nigerian Nat'l Petroleum Corp., No. 90-CV-4169(JFK), 1990

WL 213030, at *8 (S.D.N.Y. Dec. 18, 1990) (staying potential confirmation and enforcement of

arbitral award because "[t]he contract is governed by the law of Nigeria, and the Nigerian courts

are better equipped than this Court to determine the proper application of that law"); Fertilizer

Corp. of India v. IDI Mgmt., Inc., 517 F. Supp. 948, 962 (S.D. Ohio 1981) ("[I]n order to avoid

the possibility of an inconsistent result, this Court has determined to adjourn its decision on

---

[7] The Court initially denied the stay because the parties had not sufficiently briefed all of the Europcar factors. See Consorcio Rive, 1999 WL 1009806, at *2-3 (ordering additional memoranda regarding Europcar factors). Ultimately, the Court granted the stay. See Order and Reasons at 6-8, Consorcio Rive v. Briggs of Cancun, Inc., No. 99-CV-2204 (E.D. La. Jan. 26, 2000) ("The Mexican action to nullify the award involves issues of Mexican law, which the Mexican courts are better situated than this Court to resolve. This action should be stayed pending the outcome of the Mexican proceedings."), ECF No. 30.

enforcement of the . . . [a]ward until the Indian courts decide with finality whether the award is correct under Indian law.").[8]

　　And there is no indication that Guinea initiated the annulment proceeding to hinder or delay the resolution of this dispute—Guinea merely exercised its right to post-arbitration review as provided for in the Concession Agreement.  See, e.g., Consorcio Rive, 1999 WL 1009806, at *2 (finding that the filing of a Mexican action and appeal did not "necessarily indicate a groundless intent to hinder or delay resolution of the dispute").  Getma complains that Guinea is attempting to relitigate issues before the CCJA that the arbitral tribunal had already considered. Stay Opp'n Mem. at 19-20.  This complaint is misplaced.  It goes without saying that issues necessarily have to be "relitigated" in an appellate-like proceeding.[9]  And this is not a situation where Guinea is requesting that the arbitral tribunal reconsider its own decision.

## E.  The Fifth Europcar Factor

　　The balance of hardships also weighs in favor of a stay.  In evaluating this factor, a court should balance the parties' hardships, "keeping in mind that . . . under . . . the [New York] Convention, an award should not be enforced if it is set aside or suspended in the originating country." Europocar, 156 F.3d at 318.  The Court finds that "there would be very real harm to [Guinea] were [it] to confirm the award, [Getma] were take action to execute on the judgment, and the . . . [the foreign] court were to later determine that the award was improper." Jorf Lasfar

---

[8]  Getma unconvincingly asserts that certain cases cannot be relied on because they were rendered before the Europcar decision.  See Stay Opp'n Mem. at 18.  It makes no attempt to demonstrate how the reasoning and rulings in pre-Europcar cases are inconsistent with Europcar, let alone how the application of the Europcar factors to those cases would change their outcomes.

[9]  It does not appear that all of Guinea's evidence allegedly demonstrating Getma's procurement of the Agreement by corruption was fully considered by the arbitral tribunal.  See Confirm Pet., First Declaration of Cédric Fischer ("Fischer Decl."), Ex. 1 (English Translation of Arbitral Award ("Award")) ¶¶ 78-82.  Whether the corruption evidence should have been considered by the tribunal is a matter better suited for the CCJA.

<u>Energy</u>, 2005 WL 3533128, at *4.  Moreover, as explained above, a premature confirmation and enforcement of the award would essentially eviscerate Guinea's bargained-for right to have the arbitral award reviewed by the CCJA.  <u>See</u> <u>supra</u>.

Getma complains about the amount of time that has elapsed since the dispute began.  <u>See</u> Stay Opp'n Mem. at 23 ("The hardship of excessive delay . . . supports confirmation here with Getma having waited four years [to collect the arbitral award].").  Although Getma may not have anticipated how long the arbitration process would take, it is merely a natural consequence of the parties' agreement to arbitrate pursuant to CCJA arbitration rules.  The parties could have agreed to a speedier alternative dispute resolution clause, e.g., waiver of a right to post-arbitration review before the CCJA, but they did not.

Getma also asserts that the balance of hardships should tip in its favor because it has provided services without receipt of payment from Guinea.  <u>See</u> <u>id.</u>  But its claim of hardship is belied by its continued existence since the outset of its problems with Guinea back in March 2011, as there is no indication that it has incurred financial hardship as a result of not receiving payment from Guinea.  <u>See</u> <u>Jorf Lasfar Energy</u>, 2005 WL 3533128, at *4 ("There is no indication that plaintiff is suffering financial hardship as a result of its inability to collect immediately on this award.  We note that plaintiff has gone nearly a year without having access to this money.  Although we certainly do not doubt that plaintiff would like, and could use . . . [the award], there is no evidence that plaintiff is suffering any substantial harm as a direct result of not having access to the money.").

And the Court rejects Getma's attempt to draw parallels to <u>Chevron Corp.</u>  <u>See</u> Stay Opp'n Mem. at 22-23.  There, in finding hardship for the petitioner, the Court relied, in part, on the fact that the parties' "dispute [was] more than twenty[-]years old, and the arbitration itself

began more than six years ago."  Chevron Corp., 949 F. Supp. 2d at 72.  Compared to Chevron

Corp., this case is just concluding its infancy.[10]

### F.  The Sixth Europcar Factor

Finally, another circumstance that weighs in favor of a stay is that the arbitral award is

currently unenforceable in any OHADA member state, while the annulment petition is pending

before the CCJA.  See, e.g., Stay Opp'n Mem. at 24.  This reality counsels against confirming

and enforcing an arbitral award under circumstances where the states subject to the jurisdiction

of the CCJA themselves can do neither.  See Jorf Lasfar Energy, 2005 WL 3533128, at *3

(automatic stay of execution of award abroad counseled against confirmation and enforcement

by the Court).

## IV.    CONCLUSION

On balance, the Europcar factors lead the Court to the conclusion that the proceedings in

this case should be stayed.  But staying these proceedings indefinitely could be seen as an abuse

of discretion.  See Belize Soc. Dev. Ltd. v. Gov't of Belize, 668 F.3d 724, 732-33 (D.C. Cir.

2012) ("[N]o articulation of need, pressing or otherwise, accompanied issuance of the stay order

. . . . Therefore the order as issued, staying . . . [the] petition pending foreign litigation of

indefinite duration, exceeded the proper exercise of discretion by the district court . . . ."

(citations omitted)).  Accordingly, at this point the Court will grant a stay of this case only until

---

[10] Additionally, Getma asserts that "in cases granting a stay[,] [c]ourts often require posting of security due to the risk posed to the petitioner's interest."  Stay Opp'n Mem. at 23.  However, the cases Getma cites for this proposition do not involve respondents that were solvent sovereigns.  As another member of this Court has explained, "a sovereign state . . . [is] presumably . . . solvent and will comply with legitimate orders issued by courts in this country or . . . [abroad]."  DRC, Inc. v. Republic of Honduras, 774 F. Supp. 2d 66, 76 (D.D.C. 2011), vacated on other grounds, 999 F. Supp. 2d 1 (D.D.C. 2012).  The Court, therefore, declines to impose any security obligation on Guinea.

April 30, 2016.  At that time, based on Guinea's representations, the CCJA should have rendered

a decision on Guinea's annulment petition.[11]

      **SO ORDERED** on this 3rd day of November, 2015.[12]

REGGIE B. WALTON
United States District Judge

---

[11]  If this has not occurred, the Court will reassess whether Guinea's inaccurate assessment of the timeline for a decision from the CCJA regarding its annulment petition merits denying a further stay of the proceedings in this case.

[12]  The Court has contemporaneously issued an Order consistent with this Memorandum Opinion.