IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In the Matter of the Arbitration of Certain Controversies between<br><br>**GETMA INTERNATIONAL**,<br><br>Petitioner,<br><br>and<br><br>**THE REPUBLIC OF GUINEA**,<br><br>Respondent. | Civil Action No. 1:14-cv-01616-RBW<br><br>**THIRD DECLARATION OF LAURENT JAEGER IN OPPOSITION TO PETITIONER'S PETITION TO CONFIRM** |

LAURENT JAEGER declares the following to be true, pursuant to the provisions of 28 U.S.C. § 1746:

1.  I am a member of the bar of Paris, France and partner of the law firm Orrick, Herrington & Sutcliffe, LLP ("Orrick"), counsel to Respondent the Republic of Guinea ("Guinea") in the above-entitled action. I was lead counsel for Guinea in the arbitration proceedings that are the subject of this action, as well as the proceedings before the Cour Commune de Justice et d'Arbitrage (the Common Court of Justice and Arbitration, or "CCJA") in Abidjan, Côte d'Ivoire in which the CCJA annulled the arbitral award dated April 29, 2014 (the "Award") that Getma International ("Getma") seeks to enforce in this Court.

2.  I submit this Declaration in connection with Guinea's Revised Opposition to Petitioner Getma's Petition to Confirm the Award. I respectfully refer the Court to my declaration dated March 2, 2015 in support of Guinea's Opposition to the Petition (Dkt. 19-5, the "First Jaeger Declaration") and my declaration dated May 6, 2015 in support of Guinea's Motion to Stay (Dkt. 26-1, the "Second Jaeger Declaration"), both of which provide pertinent details of

1

the arbitration proceedings between the parties, as well as the annulment proceedings before the CCJA. I submit this declaration to (i) address certain additional issues raised by Getma and its counsel, Mr. Fischer, concerning the demands made by the arbitral tribunal (the "Tribunal") for additional fees in excess of those set by the CCJA in accordance with the Arbitration Rules of the CCJA (the "CCJA Rules"); and (ii) provide additional detail concerning the parties' submissions to the CCJA during the annulment proceedings.

**Getma's Contentions Concerning the Tribunal's Demand for Additional Fees**

3. As I explained in Paragraph 4 of my first declaration, on October 24, 2011, the CCJA fixed the total costs of the arbitration at CFA 100,480,332 (or approximately €153,181), of which CFA 40,480,332 (or approximately €61,711) was allocated to arbitrator fees. First Jaeger Decl., Ex. 4. Mr. Fischer, in his declaration dated April 20, 2015, states that these fees were merely provisional advances that are adjusted upward at a later date. Second Fischer Decl., ¶ 39. To be clear, at the outset of the arbitration, there was never any agreement, formal or informal, among the parties and the Tribunal, or the parties and the CCJA, that the arbitrators' fees would be revised upward at a later date. Rather, any adjustment of the arbitrators' fees was subject to Article 24.3 of the CCJA Rules, which provided that the Tribunal's fees could, in the CCJA's sole discretion, be set higher or lower "if the circumstances of the case make it exceptionally necessary." The CCJA never granted the Tribunal's applications to increase its fees.

4. By letter dated April 22, 2013, a year and a half after the CCJA fixed the Tribunal's fees and approximately one month before the scheduled evidentiary hearing, the President of the Tribunal wrote to the parties informing them he had asked the CCJA to increase the arbitrators' fees to €450,000. First Jaeger Decl., Ex. 14.

5.      Both parties responded to the Tribunal President's April 22, 2013 letter stating that they had no comment on the request for fees.  First Jaeger Decl., Exs. 18, 19.  After receiving those responses, the President of the Tribunal, in communications dated May 6, 2013, May 10, 2013 and May 23, 2013, continued to contact the parties concerning its proposed fee increase.  First Jaeger Decl., Exs. 15-17.

6.      On May 27, 2013, a three-day evidentiary hearing began in Paris.  The President of the Tribunal opened the hearing by noting that both parties had no comment on the arbitrators' requested fee, but that this was insufficient for the CCJA to rule on the Tribunal's request, and that either party must either agree or disagree with the Tribunal's proposed fee.  First Jaeger Decl., ¶ 10, Ex. 20.  The President of the Tribunal made it clear that if the parties did not agree to the fee increase, the Tribunal would have to reconsider its involvement in the case.  *Id*.

7.      Mr. Fischer asserts that he held an "off-the-record" conversation with me during a break in the aforementioned evidentiary hearing regarding the Tribunal's fee proposal, during which I purportedly stated that it was my "personal view" that the "fee amount requested by the Tribunal was appropriate for the case."  Second Fischer Decl., ¶ 43.  I have no recollection of making any such statements.  In any event, as I explained in my first declaration, Guinea's view was always that any "consent" to the requested fee given by the parties or induced by the Tribunal could not supplant the CCJA's authority under the CCJA Rules to determine, in its sole discretion, whether to increase the Tribunal's fee.  First Jaeger Decl., ¶ 13.

8.      By email dated June 25, 2013 to me and my colleagues, the President of the Tribunal stated that Getma had agreed to the €450,000 fee proposed by the Tribunal and again demanded to know whether Guinea would consent to that fee.  First Jaeger Decl., ¶ 12, Ex. 22.

3

The President claimed that Guinea's views were required to permit the CCJA to rule on the Tribunal's request for a fee increase. *Id*.

9. As I stated in Paragraph 13 of my first declaration, given that Getma had already consented to the Tribunal's requested fee, Guinea could not freely withhold its consent to that fee without taking the risk that the Tribunal would view Guinea in a negative light when it came time to rule on the merits of the dispute. Indeed, the Tribunal's demand that Guinea express a view on the requested fee came shortly after the conclusion of the final merits hearing and when the Tribunal was beginning its deliberations. First Jaeger Decl., ¶¶ 12, 13. Accordingly, on June 28, 2013, we responded to the President's June 25, 2013 email and stated that Guinea would consent to the Tribunal's proposed fee increase. First Jaeger Decl., Ex. 23. However, pursuant to Article 24.3 of the CCJA Rules and in line with the Tribunal's assertions that the parties' views were required for the CCJA to rule on the Tribunal's request for a fee increase, Guinea's provided its consent with a view toward enabling the CCJA to render such a ruling. First Jaeger Decl., ¶ 13.

10. Shortly after the CCJA rejected the Tribunal's request for a fee increase, the secretary to the Tribunal stated that the President of the Tribunal wished to hold a conference call with the parties on September 6, 2013. First Jaeger Decl., Ex. 27. I participated in that telephone conference, during which the President of the Tribunal asked the parties for their assistance in convincing the CCJA to increase the arbitrators' fees. Mr. Fischer claims that I concurred with the President of the Tribunal's opinion that the fees set by the CCJA were low considering the extent of the Tribunal's work on this case, and that I thought the amount proposed by the Tribunal was in line with international standards. Second Fischer Decl., ¶ 50. I do not recall making any such statements concerning the nature and amount of the fees set by the

4

CCJA.  Again, however, it was always Guinea's view that, regardless of the parties' views concerning the arbitrators' fees, the CCJA Rules to which the parties contractually agreed mandated that the CCJA had the sole authority to determine the amount of the arbitrators' fees. Indeed, this is how arbitrator compensation is universally handled in administered arbitration proceedings throughout the world.

11. In addition, Mr. Fischer states that the parties jointly agreed that Mr. Fischer would travel to Abidjan to lobby the President of the CCJA with respect to the Tribunal's request for additional fees, and that I did not protest or express any disagreement with this approach, suggesting that I endorsed these lobbying efforts.  Second Fischer Decl., ¶¶ 54, 55.  That is entirely incorrect.  As I have stated previously, when the President of the Tribunal asked whether Guinea would support the Tribunal's efforts to convince the CCJA to reconsider its rejection of the Tribunal's requested fee increase, I stated that I could not respond without my client's consent.  First Jaeger Decl., ¶ 16.  That consent was never given and as a result, Guinea never participated in the Tribunal's or Getma's efforts to lobby the CCJA to increase the Tribunal's fees.  Getma's claim that Guinea somehow endorsed that conduct by not affirmatively objecting to it is simply wrong.  Under the circumstances, where Getma was actively supporting the Tribunal before the CCJA and the Tribunal was in the process of deciding the merits of the case, Guinea could not freely object to such conduct without exposing itself to the risk that the Tribunal would retaliate against Guinea in rendering the Award.

**The Annulment Proceedings Before the CCJA**

12. As I explained in my first declaration, on July 23, 2014, pursuant to Article 29 of the CCJA Rules, Guinea filed a petition with the CCJA challenging the validity of the Award (the "Annulment Petition") on the grounds that (i) the Award is contrary to international public

5

policy because it gives effect to a contract procured by corruption; (ii) the Tribunal breached Guinea's rights to adduce evidence and to be heard by refusing to examine evidence of corruption and hold further proceedings on the matter; and (iii) the arbitrators breached their duties by failing to comply with the CCJA Rules, which prohibit fee arrangements between parties and preclude arbitrators from seeking payment of fees directly from the parties. First Jaeger Decl., Ex. 52.

13. On December 23, 2014, Getma filed its response to the Annulment Petition, which consisted of a 62-page brief, 51 factual exhibits and 23 legal exhibits. A true and correct copy of Getma's December 23, 2014 brief (the "Response") is attached hereto as Exhibit 1, together with an English translation thereof.

14. With the CCJA's permission, Guinea filed a reply submission on February 10, 2015. First Jaeger Decl. ¶ 41. The CCJA also granted Getma permission to submit a rejoinder, which it filed with the CCJA on April 16, 2015 (the "Rejoinder"). *Id.* That submission consisted of an 84-page brief, 64 factual exhibits and 31 legal exhibits. A true and correct copy of the Getma's April 16, 2015 brief is attached hereto as Exhibit 2, together with an English translation of the cover page and table of contents thereof, to which Guinea refers in its Revised Opposition to the Petition. If the Court wishes to receive a full translation of Getma's April 16, 2015 brief, Guinea would be pleased to provide one.

15. In its December 23, 2015 and April 16, 2015 submissions to the CCJA, Getma advanced the very same arguments that it now makes to this Court in seeking to confirm the Award. For example, it argued that the arbitrators did not violate the CCJA's mandatory rules concerning arbitrator compensation, but that, even if there were such a violation, it could not

6

constitute a basis to annul the Award under OHADA law because such a violation would not constitute a violation of the arbitrators' mission. *See* Response at 49-56; Rejoinder at 64-76.

16. Specifically, Getma asserted that the CCJA's initial arbitrator fee determination was a "minimum" under Article 11.1 of the CCJA Arbitration Rules (Response at 49, 52); that the fees should have been increased when the value of the dispute increased (*id.*); and that the parties expressly derogated from Article 24.1 of the CCJA Arbitration Rules by providing in their arbitration clause that each party would pay the cost of its own arbitrator (*id.* at 53-54).

17. Getma also asserted that the parties reached an agreement on the Tribunal's proposed fees (*id.* at 50); that the parties were "unanimous" that the court-ordered fees were insufficient (*id.* at 50); and that the court-ordered fees did not comply with international standards of arbitrator compensation (*id.* at 51).

18. In addition, just as it does in this proceeding, Getma argued that the CCJA could not annul the Award even if the Tribunal violated its obligation to respect the mandatory CCJA Arbitration Rules chosen by the parties. It contended that, because the arbitrators' violations did not concern the legal disputes that the parties submitted for resolution by the arbitrators, the CCJA did not have authority to annul the Award. *Id.* at 55-46. As the Court is aware, the CCJA rejected all of those arguments in its December 1, 2015 decision annulling the Award.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed in Paris, France on April 6, 2016.

_____
Laurent Jaeger